JEFF H. ECKLAND
jeckland@faegre.com
612.766.7060

October 27, 2003
*(filed with Clerk on November 4, 2003 at Court's request)*

The Honorable Francis M. Allegra
U.S. Court of Federal Claims
National Courts Bldg.
717 Madison Place NW
Washington, D.C. 20005

Re: *Franconia Assoc., et al., v. United States*, No. 97-381C

Dear Judge Allegra:

Near the end of trial in this matter your Honor asked whether it was possible to obtain a spreadsheet that essentially encapsulated the calculations that were yielded on Dr. Karvel's damage reports marked as exhibits and introduced as evidence at trial. Your Honor's purpose in making this request was that if the Court needed at some point to make an adjustment, based upon the evidence, it would be a lot easier for the Court to look at a preexisting spreadsheet as opposed to creating a spreadsheet which accomplished all the flows that the plaintiffs' experts conducted and then try to make an adjustment to that spreadsheet. Plaintiffs do not presume that the Court anticipated that this project would involve the creation of additional software, and the time and effort that such new development would entail, but that the experts' existing software would be used. Plaintiffs indicated at trial that they would try to determine if this was technologically feasible with their experts' damage software.

After trial plaintiffs determined that, with regard to both Dr. Karvel's breach of contract and takings damage models, the existing computer software that yielded the calculations admitted as evidence at trial was not in fact amenable to being modified for this purpose. The nature of the damage software is such that significant work is required in order to ensure that any changes properly flow, or "cascade," throughout each damage analysis. Thus, plaintiffs' experts believe that it is advisable for themselves to actually perform any data entry tasks required for the damage software, particularly because even "small" changes can require significant manual adjustments.

Although not contemplated by the Court at trial, and as an alternative to the Court's request, plaintiffs decided to see if it was possible to develop new software consisting of a simplified form of spreadsheet that would nonetheless accurately reflect the calculations that resulted in the damage figures contained on plaintiffs' trial exhibits. From the outset of these efforts, plaintiffs did not believe that simplified software could possibly be developed for plaintiffs' takings claims because the existing software for the takings claims was more complex than that for the breach of contract claims. Even with regard to their breach of contract claims, plaintiffs were concerned that the time and costs associated with developing simplified software might be prohibitively expensive. Nonetheless, plaintiffs decided to attempt to create simplified software that would come close to reflecting the calculations made by their experts' existing breach of contract software.

As indicated in our letter dated August 22, 2003, after much work plaintiffs were relatively successful in developing simplified spreadsheets for two properties at issue in this case, *i.e.,* Riverfront Apartments and Prairie Village of Grimes. However, we also had hoped to be able to provide the Court with software for each of the remaining thirty-five properties involved in this case. In addition, we had hoped to be able to develop a so-called "master" spreadsheet that would summarize all thirty-seven properties in the case and register any change in variables across all properties. Unfortunately, these tasks have proven to be much more significant and time intensive than originally anticipated and plaintiffs have been unable to complete these tasks. Moreover, we have determined that their completion likely would involve much more in terms of resources than plaintiffs reasonably should bear. We did not anticipate that these tasks would prove to be as significant for the breach of contract claims as we knew from the beginning that they would be for the takings claims.

We hope that the software previously provided has helped the Court obtain guidance on the appropriateness of the parameters selected by plaintiffs' experts for use in their damage reports and testimony. These parameters include discount rates, growth factors for income and expenses, and interest rates of conventional mortgages. If the Court would find it helpful, plaintiffs' experts stand ready to assist it in any way that they can, including adjusting any parameters used in their damage software that the Court may deem advisable.

Thank you for your attention to these matters.

Very truly yours,

**s/Jeff H. Eckland**

JHE:nelja/M2:20579261.02
cc: Shalom Brilliant, Esq.