**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| FRANCONIA ASSOCIATES,<br>a Limited Partnership, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **File No. 97-381C**<br>**Judge Francis M. Allegra** |

**DECLARATION OF MARGE ALDEN**

I, Marge Alden, declare as follows:

1. I am a general partner of, and the managing agent for, plaintiff Franconia Associates, a Limited Partnership, the owner of the following properties: Riverfront Apartments and Sunrise River Apartments. I make this Declaration in response to the defendant's motion for leave to supplement the evidentiary record. All facts stated herein are based upon my personal knowledge.

2. The government first began foreclosure proceedings on these two properties well before June 16, 2003, the date that our trial began in Des Moines, Iowa. For example, I first learned of the foreclosure proceedings in late December 2002.

3. My business partner and co-owner of these two properties, Mr. George Vitalis, passed away on September 29, 2003 from a rare form of cancer that unexpectedly and rapidly spread and advanced. Before he even knew about his illness, Mr. Vitalis and I both testified at the trial in Des Moines, Iowa on June 19, 2003. During my testimony, I was questioned about the facts behind the pending foreclosure proceedings but was never cross-examined by the government lawyer about those subjects.

4. Mr. Vitalis was not only my business partner in these properties, but he was the partnership's expert regarding project development and conversion strategies. I was the partnership's expert in the day to day management of the projects. Mr. Vitalis, as my business partner, would have been able to provide firsthand testimony regarding my abilities and skills in managing the properties.

5. Attached hereto as Exhibit A are true and correct copies of the two letters that I received dated December 31, 2002 from the Agency wherein the government notified me of its intent to accelerate the loans on these two properties. Attached hereto as Exhibit B is a true and correct copy of an USDA memorandum dated January 2, 2003 that I received from the Agency wherein the government confirmed its decision to accelerate these loans and directed Agency personnel not to accept further payments "unless the reasons for acceleration are cured or the loan will be paid in full subject to any restrictive-use provisions." Attached hereto as Exhibit C is a true and correct copy of a letter dated February 13, 2003 that I received from the Agency wherein the decision to accelerate the partnership's loans was again confirmed.

6. Although the end result of the government's foreclosure proceedings and sale on these two projects has allowed me to exit the 515 program, I have been damaged by the government's failure to abide by the terms of the contract into which we entered into with the government. For example, had we been permitted to pre-pay on these two properties when first intended, in 1992, we would have been able to invest money and time into converting these properties into valuable commercial real estate in locations where there is a growing demand for such real estate because of the expansion of the metropolitan area of the Twin Cities.

7. In addition, any rent increases that I may achieve later this year after leaving the program have been impeded by the government's failure to honor its contract in 1992 -- nearly twelve years ago -- when we first sought prepayment on these two properties. If the partnership had been permitted to prepay in 1992, the market rate rents we would have been able to collect this year would have been based upon nearly twelve years of conventional marketing and management practices. Without these factors, my ability to raise rents to achieve the real value of the relevant market will be limited.

8. Over the years the relationship between the local Agency officials in Minnesota and Mr. Vitalis and me deteriorated to a point where I now sincerely believe that they purposely permitted the partnership to prepay without restrictions – rather than hold a foreclosure sale – in a misguided attempt to undermine the partnership's ability to collect the damages to which I believe that it is entitled. For example, after thwarting our attempts to prepay for over a decade, Agency employees suddenly brought great pressure to bear on me to prepay without restrictions as soon as possible.

9. The situation in Minnesota became so bad that an USDA attorney in the Agency's national office suggested that the servicing of all properties that I manage, including Riverfront and Sunrise River, be transferred to the RD officials in the State of Wisconsin. (See my FAX messages to Arthur Garcia, RD Administrator, dated April 23, 2002 and May 28, 2002, attached hereto as Exhibits D and E, respectively.)

10. The State Director and Multi-Housing coordinator for the State of Wisconsin agreed to this transfer, but the final written authorization from the national headquarters never issued. (See my FAX message to Obediah Baker, dated May 28, 2002, attached hereto as Exhibit F.)

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 13, 2004 in Taylors Falls MN

Marge Alden