**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

FRANCONIA ASSOCIATES, a
Limited Partnership, et al.,

Plaintiffs,

**File No. 97-381C**
**Judge Francis M. Allegra**

v.

THE UNITED STATES,

Defendant.

# PLAINTIFFS' OPPOSITION TO MOTION FOR LEAVE TO SUPPLEMENT RECORD

Jeff H. Eckland
Attorney For Plaintiffs
FAEGRE & BENSON LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, Minnesota 55402-3901
Telephone: (612) 766-7000
Telecopy: (612) 766-1600

*Of Counsel:*
Mark J. Blando
FAEGRE & BENSON LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, Minnesota 55402-3901
Telephone: (612) 766-7000
Telecopy: (612) 766-1600

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................ iii
INDEX TO APPENDIX..............................................................iv

PLAINTIFFS' OPPOSITION TO MOTION FOR LEAVE TO SUPPLEMENT RECORD ........................................................................1

I. Defendant's Request Fails Under Rule 59 Analysis. ..............................2

II. Defendant's Request Should Be Denied On Its Merits...........................4

A. Defendant's Request Is Untimely...............................................4

B. The Proposed Supplemental Evidence Is Prejudicial..................6

C. The Evidence Is Without Probative Value. .................................8

CONCLUSION ........................................................................................13

## TABLE OF AUTHORITIES


**FEDERAL CASES**

*Cen. Bank of Washington City v. Nat'l Metro. Bank of Washington*, 31 App. D.C. 391 (D.C. 1908) .......... 4

*George v. Wiseman*, 98 F.2d 923 (10th Cir. 1938) .......... 4

*Hi-Shear Tech. Corp. v. United States*, 55 Fed. Cl. 418 (Fed. Cl. 2003) .......... 2

*Joseph v. Terminix Int'l Co.*, 17 F.3d 1282 (10th Cir. 1994) .......... 6

*Vermont Farm Mach. Co. v. Converse*, 10 F. 825 (D. Ct. 1882) .......... 2

*Wechsler v. Hunt Health Sys., Ltd.*, 2003 WL 22928735, *1 (S.D.N.Y. Dec. 10, 2003) .......... 4, 6

*Whitecotton v. Secretary of the Dept. of Health & Human Servs.*, 1992 WL 249777, at *1 (Fed. Cl. Sept. 15, 1992) .......... 2

**FEDERAL STATUTES**

7 C.F.R. § 1965.85 .......... 9

7 C.F.R. § 1955.15(d)(2)(v) .......... 9

7 C.F.R. § 1955.15(f) .......... 9

7 C.F.R. § 1955.18 .......... 10

**MISCELLANEOUS**

Fed. R. Evid. 403 .......... 8

75 Am. Jur. 2d Trial § 387 (May 2003) .......... 3

Fed. R. Ct. Cl. P. 59 .......... 2

**INDEX TO APPENDIX**


| | | Page |
|---|---|---|
| I. | Declaration of Marge Alden with the following attached exhibits………… | APP 1 |
| Exhibit A. | Letters dated December 31, 2002, from the Agency……………….. | APP 5 |
| Exhibit B. | USDA Memorandum dated January 2, 2003……………………….. | APP 15 |
| Exhibit C. | Letter dated February 13, 2003, from the Agency ………………….. | APP 16 |
| Exhibit D. | Fax message to the Agency dated April 23, 2002………………….. | APP 20 |
| Exhibit E. | Fax message to the Agency dated May 28, 2002…………………... | APP 21 |
| Exhibit F. | Fax message to the Agency dated May 28, 2002…………………... | APP 22 |

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| FRANCONIA ASSOCIATES,<br>a Limited Partnership, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **File No. 97-381C**<br>**Judge Francis M. Allegra** |

**PLAINTIFFS' OPPOSITION TO MOTION**
**FOR LEAVE TO SUPPLEMENT RECORD**

Plaintiffs Franconia Associates, *et al.*, oppose Defendant's motion for leave to supplement the evidentiary record for the following reasons. By its motion, Defendant seeks to supplement the record that was closed in this case upon the conclusion of trial on June 26, 2003. As demonstrated below, however, the government's motion is untimely. Furthermore, the "new" evidence that Defendant asks the Court to consider lacks probative value and would be prejudicial to Plaintiffs if admitted. The prejudice to Plaintiffs is particularly severe in light of the fact that Mr. George Vitalis – the witness who would have provided key testimony in response to the government's new evidence – passed away after the trial of this matter. Accordingly, Defendant's motion for leave should be denied.

## I. Defendant's Request Fails Under Rule 59 Analysis.

The government's request to reopen the evidentiary phase of this trial, months after the parties rested, is unusual and rare. It is most analogous to a Rule 59 motion to re-open a matter after judgment has been entered or for a re-hearing after a trial has closed. *See* Fed. R. Ct. Cl. P. 59. However, in order to prevail on a Rule 59 motion, a movant must be able to show that the new evidence it seeks to introduce was previously unavailable and that the request is necessary to prevent manifest injustice. *Hi-Shear Tech. Corp. v. United States*, 55 Fed. Cl. 418 (Fed. Cl. 2003). As discussed below, the government can meet neither one of these criteria. Moreover, manifest injustice would occur if the Court were to grant the government's request. Any such ruling would also prejudice the Plaintiffs because of their inability to rebut the new evidence in light of the untimely death of a key witness to the facts raised by Defendant's motion.

In addition, when weighing whether to treat evidence as "newly discovered," the Court should require the moving party to show not only that the evidence was actually "newly discovered," but that the movant exercised due diligence, and that such evidence is likely to produce a different outcome at trial. *See Whitecotton v. Secretary of the Dept. of Health & Human Servs.*, 1992 WL 249777, at * 1 (Fed. Cl. Sept. 15, 1992). Because the government is also unable to satisfy either of these criteria, the motion should be denied. The government's request pertains to evidence that was available to the government at trial -- long before it filed its motion. Moreover, Plaintiffs introduced testimony regarding the background facts relating to Defendant's motion at trial. The government opted to forego cross examination relating to that testimony and failed to introduce any evidence regarding

the same during its own case in chief. Clearly, the government cannot now claim that this is truly "newly discovered" evidence or that it has exercised due diligence. The government's motion therefore should be denied. *See Vermont Farm Mach. Co. v. Converse*, 10 F. 825 (D. Ct. 1882) (motion to re-open and take additional testimony denied where party did not show that evidence was not available at time of trial).

Finally, even if the Defendant's motion was granted, the Court would have to -- at a minimum -- permit Plaintiffs to not only cross-examine that evidence, but also to allow the Plaintiffs to present rebuttal evidence, in essence allowing for a "mini-trial." As one authority has observed, under such unusual circumstances as those presented here:

> In a bench trial, the judge may grant permission to reopen evidence, so long as the opposing party has a chance to rebut the new evidence. In such trials, a "new trial" usually consists of reopening the record to hear additional evidence and even new arguments not before the court.

75 Am. Jur. 2d Trial § 387 (May 2003).

Simply put, Defendant in its motion asks the Court to accept and consider its "new evidence" at face value, outside the confines of the courtroom. As a result, Defendant's proposed evidence lacks the reliability and credibility earned by evidence that is put through the rigors of trial.[1] Defendant's attempt to place this evidence before the Court by motion, rather than by properly seeking to reopen the evidence under the standards of Rule 59, requires denial of its request.

---

[1] Further, it simply would not be feasible to conduct a mini-trial at this point, especially in light of the passing of Mr. Vitalis. As explained further below, Mr. Vitalis is the primary witness who would have been in a position to rebut Defendant's proposed evidence.

## II. Defendant's Request Should Be Denied On Its Merits.

There can be no question that the government's request here falls within the sound discretion of this Court. *See George v. Wiseman*, 98 F.2d 923 (10th Cir. 1938); *Cen. Bank of Washington City v. Nat'l Metro. Bank of Washington*, 31 App. D.C. 391 (D.C. 1908). When asked to decide whether to reopen a case to admit additional evidence after a trial has closed and the parties have rested, courts will consider, among other things: (1) the reason for the moving party's failure to introduce the evidence earlier, (2) the possibility of prejudice to the non-moving party, and (3) the importance and probative value of the evidence. *See, e.g., Wechsler v. Hunt Health Sys., Ltd.*, 2003 WL 22928735, *1 (S.D.N.Y. Dec. 10, 2003) (quoting *Matthew Bender & Co. v. West Publishing, Inc.*, 158 F.3d 674, 679 (2nd Cir. 1998)). Defendant here fails to satisfy all three criteria.

### A. Defendant's Request Is Untimely.

In the present matter, Defendant fails to offer any justifiable reason why it waited nearly six months after the close of trial and several months after the submission of the post-trial briefs to request leave to submit additional evidence. The government rested its case on June 26, 2003. In addition, the parties initially submitted post-trial briefs on August 27, 2003 and each party also submitted responsive briefs on October 27, 2003. The government then brought the present motion on December 3, 2003.

The government was aware of this allegedly "new" evidence regarding the foreclosure proceedings well before the actual trial in this matter even took place. For example, in letters dated December 31, 2002, the government notified the owner, Franconia Associates, of its intent to accelerate the loans. (*See* Declaration of Marge Alden ("Alden Dec.") Ex. A.) This

decision was confirmed by a USDA memorandum dated January 2, 2003, wherein Agency personnel were directed not to accept further payments "unless the reasons for acceleration are cured or the loan will be paid in full subject to any restrictive use provisions." (Alden Dec. Ex. B.) This decision was yet again confirmed in another letter from the Agency dated February 13, 2003. (Alden Dec. Ex. C.) There can be no reasonable dispute that the government had knowledge of these basic facts relating to the pending foreclosures months before trial.

Moreover, Ms. Marge Alden testified at trial as to the background facts relating to the alleged violations that had resulted in the loan accelerations and ultimate foreclosures. (*See* Trial Tr. at 967-969.) The government could have cross-examined Ms. Alden on these subjects and could have further explored the facts underlying the accelerations and foreclosures during the presentation of its case-in-chief. It chose not to do so. At a bare minimum, the government should have addressed these issues in the significant post-trial briefing that the parties undertook.[2] The government should not now be permitted to have another chance to introduce evidence that it chose to forego at trial or the post-trial briefing. As one court pointed out:

---

[2] The foreclosure payment on the Sunrise River property occurred on July 25, 2003 – before the commencement of post-trial briefing. The foreclosure payment on the Riverfront property occurred on October 20, 2003, prior to the close of post-trial briefing in this matter.

> While the Court perceives the imprudence of a 'myopic insistence upon expeditiousness in the face of a justifiable request for delay', the Court likewise perceives the risk in reopening without justification a case that has already awaited resolution for . . . years. This litigation is not endless, and the trial's conclusion is not subject to second thoughts of the parties. [Citations omitted.]

*Wechsler,* at * 2.

Simply stated, Defendant should not now be permitted to "re-do" its trial strategy and supplement the record after the close of evidence, with factual matters that could have been raised before that time. The trial in this matter, or at a minimum, post-trial briefing, was the proper forum for this type of evidence, not by motion well after the close of both. By waiting until the proverbial "eleventh hour," Defendant has waived its right to submit this evidence. The Court should reject Defendant's request on this ground alone.

**B. The Proposed Supplemental Evidence Is Prejudicial.**

Second, the possibility of prejudice to Plaintiff s regarding this evidence is great. A trial court is afforded the discretion to reject additional evidence after the close of evidence when to do otherwise is likely to prejudice the non-moving party. *See, e.g., Joseph v. Terminix Int'l Co.*, 17 F.3d 1282, 1285 (10th Cir. 1994) (upholding trial court's ruling to exclude additional testimony because of its prejudicial impact).

The owner-representatives of the partnership that owns the two properties at issue here, Mr. George Vitalis and Ms. Marge Alden, were not only available during trial, but both testified at the trial on June 19, 2003. (*See* Trial Tr. at 936-1012.) The government had ample opportunity to cross-examine both of these witnesses at that time pertaining to the factual issues that it now seeks to introduce. While both of these witnesses were cross-examined by the government on certain topics, the government failed to raise the factual

issue that is the subject of the present motion. Significantly, Ms. Alden provided direct testimony on the relevant background facts underlying the government's assertions of mismanagement that ultimately led to the acceleration and foreclosure proceedings on these two projects. (*See* Trial Tr. at 967-969.) The government chose not to cross-examine Ms. Alden on those facts.

Unfortunately, since the trial, Mr. George Vitalis has passed away from a rare form of cancer that came on unexpectedly and progressed rapidly. (*See* Alden Dec. ¶ 3.) Mr. Vitalis was the Plaintiffs' witness with the primary knowledge and expertise on the issues relating to the evidence that the government seeks to introduce and who would have provided rebuttal testimony relating to the same. (*Id.* ¶ 4.) Mr. Vitalis was a CPA with an extensive career in the real estate field. He also had the chief responsibility within the Franconia partnership for overseeing the project development and conversion strategies. (*Id.* ¶ 4; *see* Tr. at 1000-1002.) In addition, the underlying facts behind the government's foreclosure proceedings regarding the projects here are centered upon an allegation that Ms. Alden, as manager of the properties, had failed to abide by certain regulatory requirements. In other words, the government alleged that Ms. Alden failed to manage the projects in accordance with the Agency's prerequisites. The primary rebuttal witness regarding these allegations would have been the co-owner of these properties who agreed to retain Ms. Alden as the manager -- Mr. Vitalis. (Alden Dec. ¶ 4.)

At bottom, not only *could* this evidence have been brought during trial, it *should* have been brought during trial. To bring it now months after the close of the evidence is not only improper, but is prejudicial to Plaintiffs because it undermines Plaintiffs' right to examine

such evidence in a trial setting and to present additional evidence in rebuttal. This prejudice is exacerbated by the sudden death and unavailability of Plaintiffs' chief rebuttal witness on the issues presented by Defendant's motion.

There can be no doubt that Plaintiffs would be prejudiced if the Court were to grant Defendant's request. Not only have the parties rested, but they have also submitted their post-trial briefs. These briefs are based on the evidence that was submitted at trial. To allow the government to now "end run" around that process is not only inherently unfair, it is highly prejudicial to Plaintiffs' case. The government's request should be denied.

**C. The Evidence Is Without Probative Value.**

In addition, even if Plaintiffs were not prejudiced by Defendant's waiver and delay as outlined above, this motion seeks to introduce evidence that lacks probative value. The evidence offered by the government appears to be intended to cast doubt upon the assumptions made in the damages analyses for the two properties at issue. However, the Agency's actions with respect to those two properties were so out-of-line with its standard procedures and its own regulations, and occurred amid such acrimony and unusual circumstances between the parties, that no reliable conclusions can be drawn from the government's proposed evidence. Thus, Defendant's evidence has no credible or material impact on Plaintiffs' damages calculations or any other issue.

It appears that the evidence that the government seeks to introduce was improperly generated by the Agency in contravention of its own regulations. *See, e.g.*, Fed. R. Evid. 403 ("relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ."). The Agency's regulations provide that "[l]iquidation,

whether by voluntary conveyance or foreclosure, will be handled in strict accordance with the provisions of subpart A of part 1955 . . . ." 7 C.F.R. § 1965.85. Section 1955.15, in turn, sets forth the foreclosure process, providing that:

> For MFH loans, the acceleration notice will advise the borrower of all applicable "prepayment" requirements, in accordance with subpart E of part 1965 of this chapter. The requirements include the application of restrictive-use provisions to loans made on or after December 21, 1979, prepaid in response to acceleration notices and all tenant and agency notifications. ...
>
> If the borrower wishes to prepay the project in response to the acceleration *and FmHA or its successor agency under Public Law 103-354 makes a determination that the housing is no longer needed*, a minimum of 180 days' notice to tenants is required before the project can be removed from the FmHA or its successor agency under Public Law 103-354 program.

7 C.F.R. § 1955.15(d)(2)(v) (emphasis added). Thus, an owner can be released from the program and maintain its property after foreclosure *only if* the Agency determines that the housing is no longer needed in any event.

In the absence of such a "no need" determination, the Agency's foreclosure regulations require it to put the property up for sale and place its own bid on the property. Through any resulting sale, the restrictions on the use of the property must be maintained. *See, e.g.*, 7 C.F.R. § 1955.15(f)(2) ("For MFH loans, the advertisement will state the restrictive-use provisions which will be included in any deed used to transfer title."). The Agency's regulations also detail the foreclosure proceeding that the Agency needs to go through in completing any such sale, including specifications for noticing the foreclosure sale, regulations relating to the amount of the government's bid, the bidding process, and certain Agency reporting requirements pertaining to the foreclosure sale. *See* 7 C.F.R.

§ 1955.15(f). The regulations also set forth the actions that the Agency must take after acquisition of the property through foreclosure. 7 C.F.R. § 1955.18.

Here, the Agency never made a determination that the projects were not needed in the communities where they are located. To the contrary, Plaintiffs introduced evidence at trial showing that the Agency was not able to make a "no need" determination regarding these two projects.[3] Thus, according to the Agency's own regulations, the Agency never should have permitted the partnership to short-circuit the foreclosure process by prepaying without restrictions. Certainly, the Agency never should have brought pressure to bear upon Ms. Alden to prepay without restrictions (as quickly as possible) during the foreclosure proceedings. (Alden Dec. ¶ 8.) Indeed, on January 2, 2003 – pursuant to Agency regulations – the Acting MFH Program Director properly directed Agency personnel not to accept any further payments on these properties "unless the reasons for acceleration are cured or the loan will be paid in full subject to any restrictive-use provisions." (Alden Dec. Ex. B.)

---

[3] The owner of both of the properties at issue submitted formal requests to prepay, and the Agency made clear that neither property could be prepaid without restrictions. In fact, after confirming that they desired to prepay both properties without restrictions, the owners conveyed to the Agency their understanding that the Agency had determined that a "no need" determination could not be made on either property. (Plaintiffs' Trial Exhibit ("PX") 19; PX 69) The partners also requested that the Agency notify them immediately if their understanding was incorrect, so that they could prepay without restrictions if possible. (*Id.*) On Riverfront Apartments, the owners received no further word from the Agency, confirming their understanding that, given the continued demand for affordable housing, it would not be possible for a "no need" determination to be made. (Trial Tr. 988) With regard to Sunrise River Apartments, the Agency went a step further and expressly confirmed that it had already determined that a "no need" determination could not be made, and that, as a result, the property could only be prepaid subject to restrictions. (PX 827)

Had the Agency continued to follow the proper procedures in foreclosing on the two properties at issue, the owner would actually stand in a *worse* position today than that assumed in Plaintiffs' damages models. Specifically, if the government had sold the properties to a third party or purchased them itself through the foreclosure process, as required by the Agency's regulations, then the subject owner would have lost possession of the properties entirely. In that scenario, the owners would lose not only the opportunity to earn market rents through prepayment, but also would lose the ability to obtain even the modest annual return permitted under the program.

Moreover, the Agency's actions were not only directly contrary to its own regulations, but were also contrary to its overall mandate to preserve affordable rural housing. Any careful reading of the above-cited regulations clearly demonstrates that they are geared to preserve affordable rural housing and to keep projects in the Section 515 program. The government's actions here, in allowing the two properties to be purchased out of the program even though they are still needed, flies in the face of that mandate. This mandate to preserve housing is perhaps best underscored by Rural Development AN No. 3770(1965-E) (July 2, 2002), which instructs state Multi-Family Housing Directors to avoid exactly the type of situation that has arisen with respect to these two properties:

> When the State Office is considering acceleration of a project loan, the problem case review should also consider the possibility that the borrower is forcing an acceleration to circumvent the prepayment process established by RD Instruction 1965-E. The review should consider the strength of the local housing market and the potential for conversion to conventional housing. If this is found to be a possible motivation, the State Office should work with the Office of the General Counsel (OGC) to determine if there are alternatives to acceleration, such as legal recourse for specific performance under loan and management documents.

Thus, any notion that the Agency's unique actions with respect to the properties at issue impacts Plaintiffs' damages analyses is flatly wrong. The government appears to have used an extraordinary and improper method to accelerate the loans on properties needed within the Section 515 Program and then ejected them from the program. As such, this evidence is without probative value and should be disregarded by the Court.

Furthermore, any evidence of the foreclosure proceedings, for it to be fairly weighed by the Court and as matter of due process, should be afforded the full procedural formalities of evidence at trial and be permitted to be presented in its full context. At a minimum, plaintiffs should be allowed to cross-examine this evidence and submit their own rebuttal evidence. In other words, if the Court were to consider granting Defendant's motion, in fairness to Plaintiffs and in the interest of due process, Plaintiffs would have to be afforded the right to conduct a "mini-trial" focused on these issues.

In such a proceeding, Ms. Alden would provide testimony demonstrating, among other things, the years of bad relations that she and Mr. Vitalis have endured with the local Agency officials and her belief that the Agency's actions here have a basis deeper than what they initially appear to be. (*See* Alden Dec. ¶ 8.) Indeed, the relationship between Mr. Vitalis and Ms. Alden and the Agency deteriorated to the point that Ms. Alden requested that the Minnesota properties be transferred to the supervision of the Wisconsin state office, where her management capabilities were held in high regard. (*Id.* ¶ 9.) At a minimum, Plaintiffs would have to be permitted to introduce rebuttal evidence supporting Plaintiffs' assertions of bad faith on the government's part. This bad faith is evidenced by improperly

motivated acts by Agency officials designed to undermine Ms. Alden's ability to collect damages on behalf of the partnership.

At bottom, this matter is far more complex than Defendant's brief has indicated and, as such, should not be dealt with by the simple granting of Defendant's motion. While Plaintiffs maintain, for all the reasons discussed above, that Defendant's motion should denied, if the Court were inclined to allow this additional evidence, the Court should also allow Plaintiffs the opportunity to rebut and introduce their own evidence relating to the facts underlying the Agency's actions.

## CONCLUSION

For the foregoing reasons, Plaintiffs request that Defendant's Motion for Leave to Supplement the Evidentiary Record in this matter be denied.

Dated: January 15, 2004

Refiled: February 9, 2004 (per Court's Order of January 23, 2004)

**Filed Electronically**

Respectfully submitted,

**s/ Jeff H. Eckland**

Mark J. Blando, Of Counsel
FAEGRE & BENSON LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, Minnesota 55402-3901
Telephone: (612) 766-7000
Telecopy: (612) 766-1600

M2:20600857.01