**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

---

FRANCONIA ASSOCIATES, a
Limited Partnership, et al.,

Plaintiffs,

**File No. 97-381C**
**Judge Francis M. Allegra**

v.

THE UNITED STATES,

Defendant.

---

# APPENDIX TO PLAINTIFFS' OPPOSITION TO MOTION FOR LEAVE TO SUPPLEMENT RECORD

---

Jeff H. Eckland
Attorney For Plaintiffs
FAEGRE & BENSON LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, Minnesota 55402-3901
Telephone: (612) 766-7000
Telecopy: (612) 766-1600

Of Counsel:
Mark J. Blando
FAEGRE & BENSON LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, Minnesota 55402-3901
Telephone: (612) 766-7000
Telecopy: (612) 766-1600

# INDEX TO APPENDIX


| | | Page |
|---|---|---|
| I. | Declaration of Marge Alden with the following attached exhibits………… | APP 1 |
| Exhibit A. | Letters dated December 31, 2002, from the Agency……………….. | APP 5 |
| Exhibit B. | USDA Memorandum dated January 2, 2003……………………….. | APP 15 |
| Exhibit C. | Letter dated February 13, 2003, from the Agency …………………. | APP 16 |
| Exhibit D. | Fax message to the Agency dated April 23, 2002………………….. | APP 20 |
| Exhibit E. | Fax message to the Agency dated May 28, 2002…………………... | APP 21 |
| Exhibit F. | Fax message to the Agency dated May 28, 2002…………………... | APP 22 |

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| FRANCONIA ASSOCIATES, a Limited Partnership, et al., Plaintiffs, | ) | **File No. 97-381C** **Judge Francis M. Allegra** |
| v. | ) | |
| THE UNITED STATES, Defendant. | ) | |

**DECLARATION OF MARGE ALDEN**

I, Marge Alden, declare as follows:

1. I am a general partner of, and the managing agent for, plaintiff Franconia Associates, a Limited Partnership, the owner of the following properties: Riverfront Apartments and Sunrise River Apartments. I make this Declaration in response to the defendant's motion for leave to supplement the evidentiary record. All facts stated herein are based upon my personal knowledge.

2. The government first began foreclosure proceedings on these two properties well before June 16, 2003, the date that our trial began in Des Moines, Iowa. For example, I first learned of the foreclosure proceedings in late December 2002.

3. My business partner and co-owner of these two properties, Mr. George Vitalis, passed away on September 29, 2003 from a rare form of cancer that unexpectedly and rapidly spread and advanced. Before he even knew about his illness, Mr. Vitalis and I both testified at the trial in Des Moines, Iowa on June 19, 2003. During my testimony, I was questioned about the facts behind the pending foreclosure proceedings but was never cross-examined by the government lawyer about those subjects.

4. Mr. Vitalis was not only my business partner in these properties, but he was the partnership's expert regarding project development and conversion strategies. I was the partnership's expert in the day to day management of the projects. Mr. Vitalis, as my business partner, would have been able to provide firsthand testimony regarding my abilities and skills in managing the properties.

5. Attached hereto as Exhibit A are true and correct copies of the two letters that I received dated December 31, 2002 from the Agency wherein the government notified me of its intent to accelerate the loans on these two properties. Attached hereto as Exhibit B is a true and correct copy of an USDA memorandum dated January 2, 2003 that I received from the Agency wherein the government confirmed its decision to accelerate these loans and directed Agency personnel not to accept further payments "unless the reasons for acceleration are cured or the loan will be paid in full subject to any restrictive-use provisions." Attached hereto as Exhibit C is a true and correct copy of a letter dated February 13, 2003 that I received from the Agency wherein the decision to accelerate the partnership's loans was again confirmed.

6. Although the end result of the government's foreclosure proceedings and sale on these two projects has allowed me to exit the 515 program, I have been damaged by the government's failure to abide by the terms of the contract into which we entered into with the government. For example, had we been permitted to pre-pay on these two properties when first intended, in 1992, we would have been able to invest money and time into converting these properties into valuable commercial real estate in locations where there is a growing demand for such real estate because of the expansion of the metropolitan area of the Twin Cities.

7. In addition, any rent increases that I may achieve later this year after leaving the program have been impeded by the government's failure to honor its contract in 1992 -- nearly twelve years ago -- when we first sought prepayment on these two properties. If the partnership had been permitted to prepay in 1992, the market rate rents we would have been able to collect this year would have been based upon nearly twelve years of conventional marketing and management practices. Without these factors, my ability to raise rents to achieve the real value of the relevant market will be limited.

8. Over the years the relationship between the local Agency officials in Minnesota and Mr. Vitalis and me deteriorated to a point where I now sincerely believe that they purposely permitted the partnership to prepay without restrictions – rather than hold a foreclosure sale – in a misguided attempt to undermine the partnership's ability to collect the damages to which I believe that it is entitled. For example, after thwarting our attempts to prepay for over a decade, Agency employees suddenly brought great pressure to bear on me to prepay without restrictions as soon as possible.

9. The situation in Minnesota became so bad that an USDA attorney in the Agency's national office suggested that the servicing of all properties that I manage, including Riverfront and Sunrise River, be transferred to the RD officials in the State of Wisconsin. (See my FAX messages to Arthur Garcia, RD Administrator, dated April 23, 2002 and May 28, 2002, attached hereto as Exhibits D and E, respectively.)

10. The State Director and Multi-Housing coordinator for the State of Wisconsin agreed to this transfer, but the final written authorization from the national headquarters never issued. (See my FAX message to Obediah Baker, dated May 28, 2002, attached hereto as Exhibit F.)

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 13, 2004 in Taylors Falls MN

Marge Alden

USDA United States Department of Agriculture

Rural Development

375 Jackson Street
410 Farm Credit Building
Saint Paul, Minnesota 55101
Phone: 651-602-7822
FAX: 651-602-7825
TTY: 651-602-7830

*Building the Dream*

December 31, 2002

**CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Franconia Associates
P O Box 236
Taylors Falls, MN 55084

George Vitalis
28025 St. Croix Trail
Shafer, MN 55074

Marge Alden
c/o Croix Management Co.
P.O. Box 236
Taylors Falls, MN 55084

SUBJECT: NOTICE OF ACCELERATION OF YOUR DEBT TO THE RURAL HOUSING SERVICE, DEMAND FOR PAYMENT OF THAT DEBT, AND NOTICE OF YOUR OPPORTUNITY TO HAVE A HEARING CONCERNING THIS ACTION

To Whom It May Concern:

PLEASE TAKE NOTE that the entire indebtedness due on the promissory note(s) and/or assumption agreement(s) which evidence the loan(s) received by you from the United States of America, acting through the Rural Housing Service, United States Department of Agriculture, is now declared immediately due and payable. The loan is described as follows:

| DATE OF INSTRUMENT | AMOUNT |
| --- | --- |
| November 29, 1974 | $304,000.00 |

The promissory note(s) and/or assumption agreement(s) is(are) secured by a real estate mortgage described as follows:

| DATE OF INSTRUMENT | PLACE OF RECORDATION | MICROFILM NO. |
| --- | --- | --- |
| November 29, 1974 | Office of County Recorder Chisago County, Minnesota | 143986 |

Exhibit A

Page Two
Franconia Associates
Riverfront Apartments

This acceleration of your indebtedness is made in accordance with the authority granted in the above-described real estate instrument(s).

The reasons for this acceleration of your indebtedness are as follows:

Failure to provide adequate management
Failure to meet reporting requirements
Permitting the encumbrance of the title by allowing a junior lien to be placed against the property without prior written consent

The indebtedness due is $142,191.89 unpaid principal, and $112.97 unpaid interest, as of December 31, 2002, plus additional interest accruing at the rate of $3.51 per day thereafter, plus any advances to be made by the United States for the protection of its security and interest accruing on any such advances.

Unless full payment of your indebtedness is received and all actions as outlined in the attachment entitled "Tenant Protection Actions" are taken within 30 days of the date of this letter, the United States will take action to foreclose the above described real estate instrument, take possession of any project accounts, suspend any rental assistance, cancel any interest credit, notify tenants that foreclosure will be pursued, and pursue any other available remedies. Project rent rate levels shall not be increased due to loss of subsidies.

The local Servicing Office should be contacted immediately to discuss the steps to take to remedy the deficiencies of the account or pay the loan in full. Payment should be made by cashier's check, certified check, or postal money orders to the order of the USDA, Rural Housing Service at your local Servicing Office. If you do not comply with all requirements to prepay, or do not submit to the United States any payment sufficient to pay the entire indebtedness, or comply with any arrangements agreed to between the Rural Housing Service and yourself, the action or payment WILL NOT CANCEL the effect of this notice. Acceptance of such payment will be subject to agency regulations governing payments in full [and the provisions of the Housing and Community Development Act of 1987. Such provisions normally require restrictive-use covenants be placed in effect at the time of the prepayment.] **Note: The preceding within brackets will be omitted for projects whose loans were made before December 22, 1979, unless less than one year has elapsed since the date the borrower had submitted a request to prepay the loans(s) under the provisions of RD Instruction 1965-E.**

If insufficient payments are received and credited to your account, or payment without tenant displacement protection actions are accepted, no waiver or prejudice of any rights which the United States may have for breach of any promissory note or covenant in the real estate instrument will result, and the Rural Housing Service may proceed as though no such payment had been made.

**APP 6**

Page 3
Franconia Associates
Riverfront Apartments

The above described real estate instrument provides that the United States may foreclose without Court action by selling the real estate at public sale after **June 30, 2003.** The Government intends to sell the property in this manner. No further notice is required to be given you concerning this foreclosure.

However, you have the opportunity to have an informal meeting with the decision-maker (the undersigned) and/or an administrative appeal hearing before the foreclosure takes place. This is an opportunity to discuss why you believe the United States is in error in accelerating your account and proceeding with foreclosure. If you request an informal meeting with the decision-maker or have any questions concerning the decision and/or facts used in making our decision, you should contact this office in writing to request a meeting. The request for an informal meeting must be sent to the undersigned no later than **January 15, 2003.** Requests which are postmarked by the US Postal Service on or before that date will be considered as timely received. You also have the right to an administrative appeal hearing with a hearing officer in lieu of, or in addition to, a meeting with this office. If you request an informal meeting with the decision maker, and the meeting does not result in a decision in which you concur, you will be given a separate time frame in which to submit your request for an administrative appeal. See the attachment for your appeal rights.

If you do *not* wish to have an informal meeting with the decision maker as outlined above, you may request an administrative appeal hearing with a member of the National Appeals Division. The request for an administrative appeal must be sent to the National Appeals Division, Eastern Regional Office, William A. Crutchfield, Sr., Area Supervisor, 8909 Purdue Road, Suite 240, Indianapolis, IN 46268, no later than **January 30, 2003.** Requests which are postmarked by the U.S. Postal Service on or before that date will be considered as timely received. If requesting an administrative appeal, please include a copy of this letter with your request.

In addition to an informal meeting, you have the right to request mediation or other form of Alternative Dispute Resolution (ADR) to resolve the adverse decision. There will be a cost for this service. The request to use mediation or other form of ADR may be made at any time prior to a formal appeal hearing. A request to exercise this option to settle the dispute on the denial will stop the running of the 30-day period you have to request an appeal.

If you request an appeal, and prior to the appeal hearing, decide to request this option, you have waived your right to an appeal hearing until after conclusion of mediation or other ADR; however, you have the right to an appeal hearing within 45 days of the conclusion of mediation or ADR.

If you fail to comply with the requirements outlined herein, the United States plans to proceed with foreclosure.

**APP 7**

Page 4
Franconia Associates
Riverfront Apartments

The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, handicap, or age (provided that the applicant has the capacity to enter into a binding contract), because all or part of the applicant's income derives from any public assistance program, or because the applicant has, in good faith, exercised any right under the Consumer Credit Protection Act. The Federal agency that administers compliance with the law concerning this creditor is the Federal Trade Commission, Equal Credit Opportunity, Washington, D.C. 20580.

UNITED STATES OF AMERICA

By: [signature]
Stephen G. Wenzel
State Director
Rural Development,
acting on behalf of the
Rural Housing Service,
(successor in interest to the
Farmers Home Administration)
State of Minnesota
U.S. Department of Agriculture

APP 8

## TENANT PROTECTION ACTIONS

- Provide the local Servicing Office with a current list of all tenants showing their adjusted incomes. The Servicing Office will:

  (a) Notify tenants that the project is being prepaid;

  (b) Send eligible tenants in the project *"Letters of Priority Entitlement (LOPE)"*, for priority placement in other Rural Housing Service projects.

- Extend all tenant leases for 180 days after the date the accelerated loan was paid off at the same rental rates and terms that were in effect on the day of the acceleration. (If tenant is receiving RA, the tenants' share of the rent will be reflected on the lease.)

- Execute restrictive-use provisions, as appropriate, for incorporation into releases of security instruments to be filed. (If the loan was made prior to December 21, 1979, no restrictive-use provisions will be included in the releases of security instruments, unless less than one year has elapsed since the date the borrower had submitted a request to prepay the loan(s) under the provisions of RD Instruction 1965-E.) (NOTE: Any tenants or applicants for occupancy protected by these restrictions may not have total shelter costs (rent and utilities) raised above 30 percent of adjusted income or current shelter costs, whichever is higher.) If the loan on this project to build or acquire new units was made on or after December 15, 1989, the restrictive-use provisions will remain for the term of the loan.

USDA United Sta... Department of Agriculture

Rural Development

375 Jackson Street
410 Farm Credit Building
Saint Paul, Minnesota 55101
Phone: 651-602-7822
FAX: 651-602-7825
TTY: 651-602-7830

*Building the Dream*

December 31, 2002

**CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Franconia Associates
P O Box 236
Taylors Falls, MN 55084

George Vitalis
28025 St. Croix Trail
Shafer, MN 55074

Marge Alden
c/o Croix Management Co.
P.O. Box 236
Taylors Falls, MN 55084

SUBJECT: NOTICE OF ACCELERATION OF YOUR DEBT TO THE RURAL HOUSING SERVICE, DEMAND FOR PAYMENT OF THAT DEBT, AND NOTICE OF YOUR OPPORTUNITY TO HAVE A HEARING CONCERNING THIS ACTION

To Whom It May Concern:

PLEASE TAKE NOTE that the entire indebtedness due on the promissory note(s) and/or assumption agreement(s) which evidence the loan(s) received by you from the United States of America, acting through the Rural Housing Service, United States Department of Agriculture, is now declared immediately due and payable. The loan is described as follows:

| DATE OF INSTRUMENT | AMOUNT |
|---|---|
| May 17, 1978 | $341,200.00 |

The promissory note(s) and/or assumption agreement(s) is(are) secured by a real estate mortgage described as follows:

| DATE OF INSTRUMENT | PLACE OF RECORDATION | MICROFILM NO. |
|---|---|---|
| May 17, 1978 | Office of County Recorder Chisago County, Minnesota | 158186 |

Rural Development is an Equal Opportunity Lender, Provider, and Employer
Complaints of discrimination should be sent to:
USDA, Director, Office of Civil Rights, Washington, D.C. 20250-9410

Page Two
Franconia Associates
Sunrise River

This acceleration of your indebtedness is made in accordance with the authority granted in the above-described real estate instrument(s).

*The reasons for this acceleration of your indebtedness are as follows:*
Failure to provide adequate management
Failure to meet reporting requirements
Permitting the encumbrance of the title by allowing a junior lien to be placed against the property without prior written consent

The indebtedness due is $191,836.20 unpaid principal, and $152.42 unpaid interest, as of December 31, 2002, plus additional interest accruing at the rate of $4.34 per day thereafter, plus any advances to be made by the United States for the protection of its security and interest accruing on any such advances.

Unless full payment of your indebtedness is received and all actions as outlined in the attachment entitled "Tenant Protection Actions" are taken within 30 days of the date of this letter, the United States will take action to foreclose the above described real estate instrument, take possession of any project accounts, suspend any rental assistance, cancel any interest credit, notify tenants that foreclosure will be pursued, and pursue any other available remedies. Project rent rate levels shall not be increased due to loss of subsidies.

The local Servicing Office should be contacted immediately to discuss the steps to take to remedy the deficiencies of the account or pay the loan in full. Payment should be made by cashier's check, certified check, or postal money orders to the order of the USDA, Rural Housing Service at your local Servicing Office. If you do not comply with all requirements to prepay, or do not submit to the United States any payment sufficient to pay the entire indebtedness, or comply with any arrangements agreed to between the Rural Housing Service and yourself, the action or payment WILL NOT CANCEL the effect of this notice. Acceptance of such payment will be subject to agency regulations governing payments in full [and the provisions of the Housing and Community Development Act of 1987. Such provisions normally require restrictive-use covenants be placed in effect at the time of the prepayment.] Note: **The preceding within brackets will be omitted for projects whose loans were made before December 22, 1979, unless less than one year has elapsed since the date the borrower had submitted a request to prepay the loans(s) under the provisions of RD Instruction 1965-E.**

If insufficient payments are received and credited to your account, or payment without tenant displacement protection actions are accepted, no waiver or prejudice of any rights which the United States may have for breach of any promissory note or covenant in the real estate instrument will result, and the Rural Housing Service may proceed as though no such payment had been made.

Page 3
Franconia Associates
Sunrise River

The above described real estate instrument provides that the United States may foreclose without Court action by selling the real estate at public sale after **June 30, 2003.** The Government intends to sell the property in this manner. No further notice is required to be given you concerning this foreclosure.

However, you have the opportunity to have an informal meeting with the decision-maker (the undersigned) and/or an administrative appeal hearing before the foreclosure takes place. This is an opportunity to discuss why you believe the United States is in error in accelerating your account and proceeding with foreclosure. If you request an informal meeting with the decision-maker or have any questions concerning the decision and/or facts used in making our decision, you should contact this office in writing to request a meeting. The request for an informal meeting must be sent to the undersigned no later than **January 15, 2003.** Requests which are postmarked by the US Postal Service on or before that date will be considered as timely received. You also have the right to an administrative appeal hearing with a hearing officer in lieu of, or in addition to, a meeting with this office. If you request an informal meeting with the decision maker, and the meeting does not result in a decision in which you concur, you will be given a separate time frame in which to submit your request for an administrative appeal. See the attachment for your appeal rights.

If you do not wish to have an informal meeting with the decision maker as outlined above, you may request an administrative appeal hearing with a member of the National Appeals Division. The request for an administrative appeal must be sent to the National Appeals Division, Eastern Regional Office, William A. Crutchfield, Sr., Area Supervisor, 8909 Purdue Road, Suite 240, Indianapolis, IN 46268, no later than **January 30, 2003.** Requests which are postmarked by the U.S. Postal Service on or before that date will be considered as timely received. If requesting an administrative appeal, please include a copy of this letter with your request.

In addition to an informal meeting, you have the right to request mediation or other form of Alternative Dispute Resolution (ADR) to resolve the adverse decision. There will be a cost for this service. The request to use mediation or other form of ADR may be made at any time prior to a formal appeal hearing. A request to exercise this option to settle the dispute on the denial will stop the running of the 30-day period you have to request an appeal.

If you request an appeal, and prior to the appeal hearing, decide to request this option, you have waived your right to an appeal hearing until after conclusion of mediation or other ADR; however, you have the right to an appeal hearing within 45 days of the conclusion of mediation or ADR.

If you fail to comply with the requirements outlined herein, the United States plans to proceed with foreclosure.

Page 4
Franconia Associates
Sunrise River

The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, handicap, or age (provided that the applicant has the capacity to enter into a binding contract), because all or part of the applicant's income derives from any public assistance program, or because the applicant has, in good faith, exercised any right under the Consumer Credit Protection Act. The Federal agency that administers compliance with the law concerning this creditor is the Federal Trade Commission, Equal Credit Opportunity, Washington, D.C. 20580.

UNITED STATES OF AMERICA

By: Stephen G. Wenzel
Stephen G. Wenzel
State Director
Rural Development,
acting on behalf of the
Rural Housing Service,
(successor in interest to the
Farmers Home Administration)
State of Minnesota
U.S. Department of Agriculture

## TENANT PROTECTION ACTIONS

- Provide the local Servicing Office with a current list of all tenants showing their adjusted incomes. The Servicing Office will:

  (a) Notify tenants that the project is being prepaid;

  (b) Send eligible tenants in the project *"Letters of Priority Entitlement (LOPE)"*, for priority placement in other Rural Housing Service projects.

- Extend all tenant leases for 180 days after the date the accelerated loan was paid off at the same rental rates and terms that were in effect on the day of the acceleration. (If tenant is receiving RA, the tenants' share of the rent will be reflected on the lease.)

- Execute restrictive-use provisions, as appropriate, for incorporation into releases of security instruments to be filed. (If the loan was made prior to December 21, 1979, no *restrictive-use provisions will be included in the releases of security instruments,* <u>unless</u> less than one year has elapsed since the date the borrower had submitted a request to prepay the loan(s) under the provisions of RD Instruction 1965-E.) (NOTE: Any tenants or applicants for occupancy protected by these restrictions may not have total shelter costs (rent and utilities) raised above 30 percent of adjusted income or current shelter costs, whichever is higher.) If the loan on this project to build or acquire new units was made on or after December 15, 1989, the restrictive-use provisions will remain for the term of the loan.

USDA United States Department of Agriculture

Rural Development

375 Jackson Street
410 Farm Credit Building
St. Paul, Minnesota 55101
Phone: 651-602-7822
FAX: 651-602-7826
TTY: 651-602-7830

RECEIVED JAN 0 8 2003

*Building the Dream*

January 2, 2003

SUBJECT: Franconia Associates
Notice of Acceleration

TO: Lenee Hoffman, MFH Specialist
Waite Park Area Office

Enclosed are copies of the Notice of Acceleration sent to Franconia Associates and the general partners. Further payments should not be accepted on this account unless the reasons for acceleration are cured or the loan will be paid in full subject to any restrictive-use provisions.

Please notify the tenants using Guide Letter 1965-E-2, E-3, or E-5, modified as appropriate, that the Agency is pursuing foreclosure and that prepayment may occur.

If foreclosure proceeds, we will send further processing instructions after all appeal rights have expired or the appeal is concluded.

for [signature]
Scott Knutson
Acting MFH Program Director

cc: Rodney Jackson RDM East Central Area

Rural Development is an Equal Opportunity Lender, Provider, and Employer
Complaints of discrimination should be sent to:
USDA, Director, Office of Civil Rights, Washington, D.C. 20250-9410

Exhibit B

River Bank

USDA United States Department of Agriculture

Rural Development

380 South Garfield Street
Cambridge MN 55008
Phone 763-689-3354 Ext 4
Fax 763-689-2309
TDD 651-602-7830

February 13, 2003

**CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Franconia Associates
PO Box 236
Taylors Falls MN 55084

George Vitalis
28025 St Croix Trail
Shafer MN 55074

Marge Alden
% Croix Management
PO Box 236
Taylors Falls MN 55084

Subject: Informal Meeting Review

To Whom It May Concern:

We appreciated the opportunity to review the facts relative to the acceleration of your loan account. We regret that we are unable to change our original decision of December 31, 2002. The specific reasons for the acceleration of your loan account can be found in that December 31, 2002 letter. (attached) If you believe that facts used in this case are in error, you may pursue any or all of the following two options.

**Option 1 - Mediation or Alternative Dispute Resolution (ADR)**

You have the right to request mediation, the form of Alternative Dispute Resolution (ADR) authorized by the United States Department of Agriculture for the issues that are available for mediation. The University of Minnesota Extension Service, through its Farmer-Lender Mediation Program will conduct mediations. ***You will have to pay for 50 percent of the cost of mediation.*** Rural Development will pay for the other 50 percent of the cost.

You have 30 days from the date of this letter to request mediation. Once you request mediation, it stops the running of the 30-day period in which you may request an appeal (described in Option 2). If mediation does not result in resolution of these issues, you have the right to continue with a request for an appeal hearing as set forth in Option 2.

USDA Rural Development is an Equal Opportunity Lender, Provider, and Employer.
Complaints of discrimination should be sent to:
USDA, Director, Office of Civil Rights, Washington DC 20250-9410

**Exhibit C**

When mediation is concluded, you will be notified of the result and advised that you must appeal within whatever remains of your original 30 day appeal period if you wish further review of the adverse decision. If you request mediation prior to filing for an appeal, the number of days you will have to request an appeal will be 30 days from the adverse decision minus the number of days you took to request mediation. Mediation does not take the place of, or limit your rights to, an appeal to the National Appeals Division (NAD); however, an NAD appeal hearing would take place after mediation. You may skip the informal meeting and mediation and request an appeal hearing. However, in doing so, you will automatically waive your rights to mediation once an NAD appeal hearing is held.

**If you elect to seek mediation, your written request for this service must be sent to the Farmer-Lender Mediation Program using the coupon-style application in the brochure, "Mediation at the University of Minnesota", which is attached to this letter. You must make your request no later than 30 calendar days from the date of this letter.**

Mediation Program Address

Mary Nell Preisler
Statewide Mediation Coordinator
Farmer-Lender Mediation
1526 170th Avenue
Bejou, MN 56516-9736
Phone: (218) 935-5785

Please send a copy of your request to the Rural Development Alternate Dispute Resolution Coordinator.

Rural Development Address

Bill Slininger
USDA Rural Development
Alternate Dispute Resolution Coordinator
823 Lief Erickson Place
St. Cloud, MN 56301-5987
Phone: (320) 259-8507

**Option 2 – Request an Appeal**

You may request an appeal hearing by the National Appeals Division (NAD) rather than an informal review or mediation. ***There is no cost for an appeal.*** Your request for an appeal must be made no later than 30 days from the date you received the this letter. You must write the Assistant Director, NAD.

NAD Address

Mr. William Crutchfield, Regional Assistant Director
Eastern Regional Office, National Appeals Division
8909 Purdue Road, Suite 240
Indianapolis, Indiana 46268
Phone: (317) 871-3025

Your request for a NAD hearing must state the reasons why you believe the decision is incorrect, be personally signed by you, and must include a copy of this letter.

Please also send a copy of your request to the Rural Development State Appeals Coordinator.

Rural Development Address

Bill Slininger
USDA Rural Development
State Appeals Coordinator
823 Lief Erickson Place
St. Cloud, MN 56301-5987
Phone: (320) 259-8507

You have the right to an appeal hearing within 45 days of the receipt of your request. You or your representative or counsel may contact this office anytime during regular office hours in the 10 days following the receipt of your request for a hearing to examine or copy relevant non-confidential material in your file. Photocopies will be provided to you. Your representative or counsel should have your written authorization to represent you and review your file.

The NAD Hearing Officer will contact you regarding a time and place for the hearing. You may also request a teleconference hearing in lieu of the face-to-face hearing. At any time before the scheduled hearing you may also request that the Hearing Officer make a decision without a hearing. If you do, the Hearing officer's decision will be based on the Rural Development file, any written statements or evidence you may provide and any additional information the Hearing Officer thinks necessary.

The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, handicap, age (provided that the applicant has the capacity to enter into a binding contract), or because all or part of the applicant's income derives from any public assistance program. Department of Agriculture regulations provide that no agency, officer, or employee of the United States Department of Agriculture shall exclude from participation in, deny the benefits of, or subject to discrimination any person based on race, color, religion, sex, age, disability, or national origin under any program or activity administered by such agency, officer, or employee. The Fair Housing Act prohibits discrimination in real estate-related transactions, or in the terms and conditions of such a transaction, because of race, color, religion, sex, disability, familial status, or national origin. If an applicant or borrower believes he or she has been discriminated against for any other reasons, that person can write the Secretary of Agriculture, Washington, D.C. 20250. Applicants also cannot be denied a loan because the applicant has in good faith exercised his or her right under the consumer Credit Protection Act. If an applicant believes he or she was denied a loan for this reason, the applicant should contact the Federal Trade Commission, Washington, D.C. 20580.

Sincerely,

RODNEY A. JACKSON
Rural Development Manager

Attach: "Mediation at the University of Minnesota"

BOX 238 TAYLORS FALLS, MN 55084
651 465-6841 FAX 651 465-3080

**Croix Management Company**

# Fax

| | | | |
|---|---|---|---|
| **To:** | Arthur Garcia | **From:** | MARGE ALDEN |
| **Fax:** | 202 690-3444 | **Pages:** | 1 |
| **Phone:** | 651-465-6841 | **Date:** | April 23, 2002 |
| **Re:** | | **CC:** | |

☐ **For Review** ☐ **Please Comment** ☐ **Please Reply** ☐ **Please Urgent**

First I want to say how much we appreciated the chance to meet with you on April 15, 2002. I greatly appreciate your willingness to review the Minnesota RD situation and what there actions are doing to my company and me personally.

At the time we met I suggested transferring servicing of all properties I handle in MN to Wisconsin. This originally was a suggestion of your attorney since it is a federal program any state can handle servicing.

Time is of the essence. I am requesting I be allowed to immediately proceed with transferring servicing and/or a moritorium be imposed on MN RD to cease harrassment of owners and halt any change of management until this is resolved.

At the demand of RD by threats to owners I fee manage 515's for I have now lost 66% of my business in Minnesota. If your office doesn't intercede this week, I will loose another 19% by the end of the month. This is a total of 85% of my fee management business.

Thank you in advance for your assistance. I am in my office all day today at 651 465-6841. If I don't hear from you today, I will call you tomorrow to discuss any suggestions you may have or answer any questions.

**Exhibit D**

BOX 236 TAYLORS FALLS, MN 55084
651 465-6841 FAX 651 465-3080

**Croix Management Company**

# Fax

| | | | |
|---|---|---|---|
| **To:** | Arthur Garcia | **From:** | MARGE ALDEN |
| **Fax:** | 202 690-3444 | **Pages:** | 1 |
| **Phone:** | 651-465-6841 | **Date:** | May 28, 2002 |
| **Re:** | | **CC:** | Michael Neruda & Obidiah Baker |

☐ **For Review** ☐ **Please Comment** ☐ **Please Reply** ☐ Please Urgent

I know, according to a message left by Wayne Rogers, that your office is investigating the situation with MN RD and that you are aware that there are some serious deficiencies. It has been six weeks since we met and I don't mean to be impatient but I have now lost 85% of my fee management 515 business in Minnesota. Rural Development continues threatening owners with foreclosure if they don't change management and do whatever they want. Since there is no RD hierarchy structure and no one in charge to talk to, the owners are reluctantly reacting to the threats. They see what MN Rural Development staff have done to destroy my business and the harassment that takes place in Minnesota to owners, managers, and the good Rural Development staff that they are frightened.

I requested at our meeting and in my follow up fax and conversations to have servicing of all complexes I manage handled out of the Wisconsin office. The State Director and Multi-housing coordinator in Wisconsin have agreed and all I need is a letter from Washington authorizing the change in servicing offices. This was originally suggested through a Dept of Agriculture attorney. Since this is a federal program servicing can be handled from any state. All I need is written authorization from Washington. This is an immediate remedy until you have time to continue your investigation and resolve the issues.

I have been served papers at the demand of the Duluth office and will have a court appearance in a few days if this can not be resolved. The RD staff demanded an owner take me to court and waste my time and money or they will foreclose on his 515 properties. This situation is very serious. I have tried to work with Washington and have attempted to keep this out of court and out of the press. I have no were else to turn. Please forward authorization to move everything I am involved with to Wisconsin by return fax or tell me who we in Minnesota can turn to for a level playing field. There are a hand full of RD staff in Minnesota that are destroying the program and credibility of the 515 program and have seriously damaged my company.

Thank you in advance for your assistance.

**Exhibit E**

BOX 236 TAYLORS FALLS, MN 55084
651 465-6841 FAX 651 465-3080

**Croix Management Company**

# Fax

| | | | |
|---|---|---|---|
| **To:** | Obidiah Baker | **From:** | MARGE ALDEN |
| **Fax:** | 202 690-3444 | **Pages:** | 2 |
| **Phone:** | 651-465-6841 | **Date:** | May 28, 2002 |
| **Re:** | | **CC:** | |

☐ **For Review** ☐ **Please Comment** ☐ **Please Reply** ☐ **Please Urgent**

---

Welcome back! I am glad to hear you are back and doing well.

The Minnesota Rural Development situation continues to escalate. Since we last talked they have threatened all 515 owners I manage for with foreclosure and the owners have reluctantly pulled 85% of my Minnesota business. This is very serious.

I am requesting a letter from whoever the appropriate staff person is in your office to allow me to transfer the rest of the properties t o Wisconsin for servicing. Since it is a federal program. I have been assured this is a simple procedure letter. Wisconsin is agreeable. I manage property there and have never had a problem with their customer friendly professional staff.

The Minnesota situation is critical. Your immediate response is appreciated. Thanks, Obe.

**Exhibit F**

Dated: January 15, 2004

Refiled: February 9, 2004 (per Court's Order of January 23, 2004)

**Filed Electronically**

Respectfully submitted,

**s/ Jeff H. Eckland**

Mark J. Blando, Of Counsel
FAEGRE & BENSON LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, Minnesota 55402-3901
Telephone: (612) 766-7000
Telecopy: (612) 766-1600

M2:20600240.01