IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| FRANCONIA ASSOCIATES,<br>A Limited Partnership, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 97-381C<br>(Judge Allegra) |

DEFENDANT'S MOTION TO STRIKE
PLAINTIFFS' STATUS REPORT IN RESPONSE
TO THE COURT'S ORDER OF MARCH 5, 2004

Defendant respectfully requests that the Court strike Plaintiffs' Status Report in Response To the Court's Order of March 5, 2004, upon the grounds that, apart from its first paragraph, it is not a status report at all but a sur-reply brief in opposition to Defendant's Motion for Leave to Supplement Record Based upon Post-trial Events. Leave to file such a brief has not been requested, much less granted, and the filing of such a brief at this time is inconsistent with the Court's March 5, 2004 order.

DEFENDANT'S BRIEF

In its March 5, 2004 order, the Court made reference to the briefs filed by the parties in connection with the Government's motion for leave to supplement the record, and stated:

> Based on these filings, the court is of the view that the record should be supplemented with the information defendant has identified. To avoid any problems, the parties are hereby ordered to attempt to enter into a stipulation that incorporates the cited information. . . . In the event that the parties cannot agree regarding this stipulation, the court will admit the information in the form it deems appropriate.

In the first paragraph of their status report, plaintiffs state: "The parties have attempted to prepare the requested stipulation, but have not been able to agree upon the terms of any such

filing." This is true. Plaintiffs then add, however, that "the parties agreed to file separate statements in response to the Court's Order." This is not true. The Government did not agree to the filing of anything other than a stipulation as described in the Court's order, or a simple notification to the Court that the parties were unable to agree regarding this stipulation.[1]

Plaintiffs' purported status report, apart from its first paragraph, consists of ten pages of argument aimed at the conclusion that "the Court has the options of excluding defendant's proposed evidence entirely or simply providing it very little weight." Plaintiffs' Status Report 10. This argument is, essentially, a veiled request for reconsideration of the Court's March 5, 2004 order, in which the Court stated that "that the record should be supplemented with the information defendant has identified." Indeed, to a large extent, plaintiffs' argument is simply a recycling of the argument it presented in its opposition to our motion for leave to supplement the record – i.e., an argument that the Court considered before it issued the March 5, 2004 order. And, as in their previous argument, plaintiffs do not dispute the truth of the facts that we seek to establish with the documents in question: that two of the loans at issue in this case, which were made to plaintiff Franconia Associates for Riverfront Apartments and Sunrise River Apartments under section 515(b) of the Housing Act of 1949, were paid in full subsequent to the trial. Instead, plaintiffs raise a smokescreen of extraneous matters that do not negate the admissibility of the supplemental evidence we have offered or the materiality of the facts they are offered to prove, but only confuse the issues.

---

[1] What Government counsel stated to plaintiffs' counsel concerning the filing of separate statements was that: (1) if plaintiffs wished to present any arguments concerning the information identified in our motion to supplement the record, or to raise new factual or legal matters, a joint filing was the proper place in which to do so; and (2) if plaintiffs were to file a separate statement containing arguments or raising new matters, the Government reserved the right to file a separate statement as well.

For example, in our motion to supplement the record, we demonstrated that the payment of the Riverfront and Sunrise River the loans was pertinent, because, among other things, plaintiffs' calculation of damages in connection with these properties was based upon the premise that the loans would not be fully paid until the end of the applicable loan term, and that, as a result, these properties would remain in and continue to be subject to the restrictions imposed by the section 515 program until the end of that period. The fact that these loans have been paid proves otherwise. In response, plaintiffs assert that "the future of these properties remains unsettled" because a third party might challenge the validity of the payment. Plaintiffs' Status Report 4. The future, of course, is always unsettled, and one can always speculate about the possibility of unspecified challenges by unidentified challengers.[2] One can also speculate that all of the plaintiffs will leave the section 515 program in the near future because of a variety of foreseeable eventualities. Plaintiffs' experts calculated damages without analyzing what might happen in the future (even what actions plaintiffs themselves might take); these experts considered only what they understood to have actually happened. Tr. 459:22-460:9 (see also Tr. 450:13-453:23; 454:25-455:10; 456:20-457:19; 458:7-9). The payment of the Riverfront and Sunrise River the loans, and the release of these projects from the section 515 program, are events that have in fact happened, and are as relevant as any of the other facts underlying plaintiffs' damages model.

Plaintiffs also repeat their argument that the payments in question were not consistent with the agency's foreclosure regulations. We repeat that, while we disagree with plaintiffs' characterization of the referenced Government actions, this characterization is irrelevant to the

[2] The only specific suit mentioned by plaintiffs is a state court suit that does not involve the Government and does not appear to involve a challenge to the loan payments. It allegedly involves a temporary court-ordered prohibition against rent increases at one of the two properties, for unspecified reasons.

issues in this case in general and to the probative value of the evidence in question in particular. Plaintiffs attempt to clothe this characterization with relevance by voicing a suspicion "that the Agency deliberately permitted [Franconia Associates] to pay said loans in an attempt to jeopardize its right to recover compensatory damages in this action." Plaintiffs' Status Report 5. Plaintiffs further suggest that the Government's motive must be explored before evidence of he payment can be considered because "[i]f, for example, it can be established that the government has attempted to manufacture evidence in an attempt to lessen plaintiffs' damages, certainly that evidence could not be relied upon by the Court." Id. Yet, even assuming that the Government's actions were motivated by a desire to "lessen plaintiffs' damages," this would constitute mitigation, not something sinister. Plaintiffs' characterization of such action as an attempt "to manufacture evidence" is less an enhancement of plaintiffs' argument than a sign of desperation.

Plaintiffs also cite various cases for various principles that have nothing to do with the nature or purpose of the evidence with which we have sought to supplement the record. Plaintiffs' invocation of these principles simply obscures the issues. Thus, plaintiffs argue that "'the wrongdoer [should] bear the risk of the uncertainty which is his own wrong has created.'" Plaintiffs' Status Report 6, quoting Bigelow v. RKO Radio Pictures, 327 U.S. 251, 264 (1946). Plaintiffs fail, however, to state what Government-created uncertainties are involved here. Plaintiffs argue that damages should not be reduced based upon "'unrelated events' and 'remote consequences' of the breach," Plaintiffs' Status Report 6, and argue that the payment of the Riverfront and Sunrise River the loans was not a consequence of or related to the breach at all. Rather, plaintiffs assert, "the government's decision to compel prepayment of the loans . . . constitutes activity that is directly contrary to the Government's initial breach . . . ." Id. at 7 (emphasis in original). This last statement is actually on the mark, but defeats plaintiffs'

argument instead of supporting it. If the breach was "to reject plaintiffs' attempt to exercise their contractual right of prepayment," id., and damages flowed from not being able to prepay and be released from the section 515 program, as plaintiffs have argued, then the acts of requiring prepayment and releasing the properties in question from the program are events critical to determining the consequences of the breach and the period during which damages were incurred. Nothing in the authorities plaintiffs cite suggests that the Court should ignore these events.

Finally, plaintiffs argue that the supplemental evidence we have offered cannot be afforded any weight in the absence of a full evidentiary hearing. Plaintiffs do not suggest what disputed facts such a hearing would explore, and what purpose of such a hearing would serve, other than to state that, "absent a formal proceeding . . . , defendant cannot even lay a foundation for the documents at issue to be admitted into evidence." Plaintiffs' Status Report 9-10. Yet, the documents in question consist of Government records accompanied by a declaration of a Government official describing, from personal knowledge, the nature of these documents and the circumstances that they reflect. Moreover – and most important – the facts that these documents have been offered to prove are within the plaintiffs' personal knowledge, and plaintiffs do not suggest that these facts are not true. The arguments contained in plaintiffs' purported status report are simply an additional attempt by plaintiffs to exclude from consideration facts that are highly relevant and undisputedly true, after the Court already determined that these facts should be considered.

## CONCLUSION

For the foregoing reasons, the Court should strike plaintiffs' status report.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

s/David M. Cohen
DAVID M. COHEN
Director

Filed electronically

s/Shalom Brilliant
SHALOM BRILLIANT
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Telephone: (202) 305-7561
Facsimile: (202) 305-7643

Attorneys for Defendant

May 3, 2004