IN THE UNITED STATES COURT OF FEDERAL CLAIMS

FRANCONIA ASSOCIATES,
a Limited Partnership, et al.,

Plaintiffs,

**Case Nos. 97-381C & 97-3814C**
**Judge Francis M. Allegra**

v.

THE UNITED STATES

Defendant.

**PLAINTIFF FOX RIDGE II'S MOTION FOR LEAVE TO SUPPLEMENT RECORD**

Plaintiff, Fox Ridge Phase II (Fox Ridge II) (plaintiff no. 4), respectfully requests leave to supplement the record in order to admit information regarding its financial ability to prepay the FmHA mortgage on the Fox Ridge II property. Although the government has never sought dismissal of Fox Ridge II's claims on the grounds that the partnership lacked the ability to prepay its FmHA mortgage – and in fact never challenged the evidence that Fox Ridge II would have prepaid its mortgage if permitted to do so – the Court disallowed damages for Fox Ridge II's claims *sua sponte*, finding insufficient proof of the partnership's financial ability to prepay. *See Franconia Assocs. v. United States*, 61 Fed.Cl. 718 (Aug. 30, 2004) ("Order"). Under the circumstances, fundamental principles of fairness dictate that the Court should use its discretionary power to reopen the record admit the additional evidence. In the alternative, Plaintiff asserts the evidence presented at trial is sufficient to conclude that Plaintiff had the ability to prepay the mortgage, and thus suffered damages as a result of the government's breach of contract.

## BACKGROUND

Ronald Powers, a partner of Fox Ridge Phase II L.P., testified on behalf of the partnership at the trial of this matter held during June 2003 in Des Moines, Iowa. At trial, Mr. Powers testified that he attempted to prepay the FmHA mortgage for Fox Ridge II, without restriction, in 1992 with the intent to shift to a conventional type property. V/1167. The FmHA representative told Mr. Powers that his request was out of the question, and he dropped the matter. *Id.* On May 30, 1997, Mr. Powers initiated this action for breach of contract. In 1998, Mr. Powers wrote to Rural Development and again requested permission to prepay the mortgage on Fox Ridge II. PX 690. As stated at trial, Mr. Powers was ready and willing to prepay the mortgage. V/1167-68. The agency, however, informed Mr. Powers that prepayment must be accompanied by restrictions, thus the partnership's desired course of action was unavailable. PX 692.

Plaintiff's expert witness, Dr. Karvel, conducted an analysis for Fox Ridge II. PX 693. At trial, Dr. Karvel stated, "under a restricted-rent scenario, all of the properties I've analyzed would not be worth their original cost." I/351. Dr. Karvel explained the analyses he conducted for each property in detail, using the Pine Needle Limited Partnership as an exemplar.[1] Dr. Karvel's analysis established that none of the Plaintiffs would be able to recoup their initial investments in their properties absent the ability to prepay the FmHA mortgage. I/352; *See also* VII/1559 ("With the owners that I've met, and I believe that I've met with all of them for each of the 37 subject properties, the only thing I've heard consistently from them is that they want to prepay."). In short, Dr. Karvel's economic analysis revealed that "[the property is] worth more than you paid for it if you had a market rent property, and it's worth less than you paid for it if

[1] It was clear that the Pine Needle analysis was intended to represent the analyses of other properties. The Court stated, "I assume … the testimony we got from Dr. Karvel initially [is] illustrative of his analysis of the other properties." VI/1470.

you have a restricted rent property." II/494. Dr. Karvel's analysis concluded that the lost cash flows suffered by Fox Ridge II as a result of the government's conduct totaled $1,155,948. PX 693, p.8.

The government never challenged Plaintiff's desire or ability to prepay the FmHA mortgage at trial. On cross examination, counsel never questioned that Plaintiff was trying to prepay nor did he questioned Mr. Powers' ability to obtain financing in order to do so. IV/886; *See* note 2 *infra*. Further, the ability of Fox Ridge II to prepay its mortgage was not challenged in Defendant's post-trial briefs. This issue was simply never raised by the government at any point prior to, during, or after trial. This Court, however, disallowed damages for Fox Ridge II's claims, finding "the record essentially devoid of any indication that their owners had the capacity to prepay at any point prior to trial." Order at 39.

Plaintiff, Fox Ridge II, L.P., seeks herein to supplement the record with documents demonstrating the partnership's ability to prepay the FmHA mortgage. Powers Decl. ¶ 4, 8, 10. After receiving this Court's order, the partnership attempted the locate documents establishing its previously uncontested ability to prepay. *Id.* As a result of that effort, Plaintiff has located certain financial documents including financial statements summarizing the Fox Ridge II partners' assets covering the time period of attempted prepayment. Ex. A; Ex. B. The documents are entirely consistent with Mr. Powers' testimony at trial, and all the documents support the conclusion that Mr. Powers was able to obtain financing and prepay the FmHA mortgage on Fox Ridge II. Powers Decl. ¶ 4, 8, 10.

## ARGUMENT

### I. Considerations of Judicial Economy and Fairness to Plaintiff Warrant Reopening the Record to Admit the Additional Evidence.

A motion to reopen to submit additional proof is addressed to the sound discretion of the court. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 331 (1971). In making its decision to reopen, the court should consider the following factors: (1) the timing of the motion, (2) the nature of the additional evidence, and (3) the potential for prejudice to the nonmoving party. *Smith v. Rogers Galvanizing Co.*, 148 F.3d 1196, 1198 (10th Cir. 1998); *see also Rochez Bros., Inc. v. Rhoades*, 527 F.2d 891, 894 n.6 (3rd Cir. 1975). "Ultimately, 'fairness is the key criterion in determining whether to reopen.'" *Id.* at 1198 (citing *Blinzler v. Marriott Int'l, Inc.*, 81 F.3d 1160 (1st Cir. 1996)). Stated another way, "[g]reat flexibility is accorded the District Court in its determination to supplement the record, though it must avoid perpetrating any type of injustice in so doing. *Gibson v. Mayor and Council of the City of Wilmington*, 355 F.3d 215, 229 (3rd Cir. 2003) (citation omitted).

*Gibson* is illustrative of the application of the factors of timing, nature of the evidence, and possible prejudice to opposing parties, and ultimate considerations of fairness when considering a motion to reopen the case. In *Gibson*, the Third Circuit held that the trial court did not abuse its discretion in reopening a case that had already gone to the jury and admitting evidence that was not presented at trial. 355 F.3d at 229. In that case, a police officer was terminated for dishonesty, and the City presented at trial a video recording of an administrative hearing during which the audio tapes of certain phone conversations (which contained the alleged dishonest statements) were played. *Id.* During closing arguments, defense counsel challenged the audio quality of the phone line, and argued the defendant could not hear well enough to knowingly make dishonest statements. *Id.* After the case was given to the jury, but

before judgment was entered, the trial court reopened the case and admitted the original audio tapes of the defendant's dishonest statements. *Id.* The *Gibson* Court noted that the evidence was consistent with that presented at trial and a verdict had not been returned. *Id.* Further, the *Gibson* Court was not persuaded by the arguments of prejudice to the adverse party since the officer challenged the evidence himself. *Id.*

**A. Plaintiff's Motion to Supplement the Record is Timely.**

The trial of this matter has been completed but no judgment has been entered for any of the plaintiffs. The parties are submitting this date a Joint Status Report setting forth agreed-upon damage amounts for each of the remaining properties. Those revised damages figures reflect various adjustments required by the Court in its decision of August 30, 2004. Thus, the case has not yet reached final judgment and the time for appeal has not yet begun to run. *See Gibson*, 355 F.3d at 229 (additional evidence admitted after trial and prior to final judgment).

Under the Court's rules, any order or decision of the Court "is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all parties." RCFC 54(b); *see also Mendenhall v. Barber-Greene Co.*, 26 F.3d 1573, 1582 (Fed. Cir. 1994). Indeed, even the entry of judgment does not prohibit the Court making additional findings of fact after trial. *See* RCFC 59(a); *see also* RCFC 60(b) (allowing relief from a judgment or order for up to one year after the issuance of the judgment or order). In this case, plaintiff is responding promptly to the Court's decision to disallow damages for its claim on a ground not raised by the defendant at trial. Accordingly, the timing of plaintiff's motion supports supplementing the record with the proposed additional evidence.

### B. The Nature of the Evidence Warrants Supplementing the Record.

The evidence plaintiff seeks to introduce consists of financial documents and other evidence of the partnership's financial ability to prepay. None of the proposed evidence is subject to serious dispute, as to authenticity or otherwise. The evidence undoubtedly would have been admitted at trial without objection had the issue of plaintiff's ability to prepay ever been questioned by defendant.

Moreover, the evidence that plaintiff seeks to admit is entirely consistent with the evidence presented at trial. At trial, Mr. Powers testified as to the partnership's long-held plans to prepay and its efforts to do so. V/1167-8. Contemporaneous documents confirm that plaintiff actively sought to prepay the mortgage. PX 690. Mr. Powers was subjected to cross-examination, and defense counsel never challenged the partnership's ability, or intent, to prepay; nor did defendant raise the issue in its subsequent briefs.[2] Mr. Powers' testimony also was corroborated by expert testimony that any reasonable investor would have prepaid due to the fact the partnership could not even recover its initial investment in the property unless it prepaid. II/494 ("it's worth more than you paid for it if you had a market rent property, and it's worth less than you paid for it if you have a restricted rent property."). In addition, the evidence shows the equity in Fox Ridge II at the time of intended prepayment was between $700,000 to $400,000, which supports the conclusion that the partnership would have been able to obtain a conventional loan in an amount sufficient to pay off the FmHA mortgage balance of $904,957. Powers Decl.

---

[2] On cross-examination regarding Fox Ridge II, defense counsel inquired exclusively into the subject of whether rehabilitation was required for the project. In fact, defense counsel did not question the accuracy of the information in Plaintiff's Exhibit 690, which evidences Mr. Powers intention to prepay the loan, but instead inquired about the context of certain portions of the text. V/1186 ("Okay. Moving from that, regarding Fox Ridge, Plaintiffs' Exhibit 690. It's not so much a question necessarily about the document, but it's a frame of reference.").

¶ 9; *see also* PX 693, p.10. (mortgage balance was $904,957); PX 698 (Fox Ridge II value was $1,279,558).

The proposed evidence shows the partners of Fox Ridge II had a financial portfolio valued at $905,519 in November 1993. Ex. A. In November 1998, the partnership had a financial portfolio worth $1,523,072. Powers Decl. ¶ 10; Ex. B. These records indicate that the partners were able to personally cover the outstanding mortgage of $904,957. This evidence supports Mr. Powers' unchallenged trial testimony, and shows the partnership had the financial wherewithal to prepay the FmHA mortgage for Fox Ridge II.

Thus, plaintiff's proposed supplemental evidence does not introduce any new or novel theories into the case and harmonizes with the evidence already in the record. In addition, the evidence is necessary to respond to the Court's *sua sponte* decision to disallow damages for plaintiff's claim on a ground not raised at trial. Accordingly, the nature of the evidence supports the conclusion that it should be admitted into the record.

**C. The Lack of Prejudice to Defendant Warrants Supplementing the Record.**

Accepting the proposed evidence into the record would not be prejudicial to defendant in any way. As noted above, the evidence is not subject to serous dispute and is fully consistent with plaintiff's testimony at trial. In addition, the government was well aware throughout the course of this litigation that plaintiff intended to prepay its mortgage and was seeking damages based on the agency's refusal to permit it to do so. Given that defendant never challenged the partnership's ability to prepay, on cross-examination or otherwise, and never sought dismissal of plaintiff's claims on any alleged inability to prepay, it can hardly argue that it would be prejudiced by the introduction of the evidence at issue. It goes without saying that the government cannot be prejudiced by evidence supporting a claim that it never questioned.

**D. Equity Supports Supplementing the Record.**

As noted above, courts have observed that the most important factor in deciding whether to reopen the record to admit additional evidence is consideration of fairness to the parties. *See Smith v. Rogers Galvanizing Co.*, 148 F.3d 1196, 1198 (10th Cir. 1998); *Gibson v. Mayor and Council of the City of Wilmington*, 355 F.3d 215, 229 (3d Cir. 2004) (citation omitted). In this case, compelling equitable considerations support supplementing the record.

When a court acts on its own initiative, there is a danger of circumventing the adversarial process and additional procedural safeguards, such as notice requirements, must be implemented to protect the parties' interests. For example, when a court grants summary judgment *sua sponte*, notice should be given to the party adversely affected so that a response may be offered. *Armour v. County of Beaver*, 271 F.3d 417, 434 (3d Cir. 2001); *Massey v. Congress Life Ins. Co.*, 116 F.3d 1414 (11th Cir. 1994) (holding that district court's failure to give sufficient notice that it might grant summary judgment precluded summary judgment for breach of contract claim); *Hanson v. Polk County Land, Inc.*, 608 F.2d 129, 131 (5th Cir. 1979) (finding reversible error in trial court's grant of summary judgment *sua sponte* without proper notice). Similarly, *sua sponte* dismissal for failure to state a claim also requires notice and an opportunity to respond. *Futura Dev. of Puerto Rico, Inc. v. Estado Libre Asociado de Puerto Rico*, 144 F.3d 7 (1st Cir. 1998).[3]

Here, the Court disallowed damages for Fox Ridge II's claims *sua sponte* based on the lack of evidence of plaintiff's ability to prepay. Significantly, if this issue had been raised by defendant or the Court at trial, the evidence at issue could have been presented on rebuttal. Indeed, considering the severe financial challenges of participating in the Section 515 program

---

[3] For the same reasons, when a court uses its inherent power to issue sanctions *sua sponte*, the court should provide notice and afford the party time to respond. *See Goldin v. Bartholow*, 166 F.3d 710 (5th Cir. 1999); *Moates v. Barkley*, 147 F.3d 207 (2d Cir. 1998) (per curiam); *Johnson v. Waddell & Reed, Inc.*, 74 F.3d 147 (7th Cir. 1996).

without the right to prepay – as explained by Dr. Karvel and evidenced by the extent of plaintiff's damages – it is not surprising that the government never questioned the fact that plaintiffs would have, and could have, found a way to pay off its FmHA mortgage. Given that this potential ground for dismissal was first introduced by the Court's decision of August 30, 2004, fundamental considerations of fairness require that plaintiff be provided the opportunity to respond by submitting the attached evidence of its previously undisputed ability to prepay.

Finally, failure to accept plaintiff's proposed evidence will result in depriving Fox Ridge II of any remedy for the government's breach of contract. In its decision, the Court concluded that that defendant breached plaintiff's contract by refusing to permit plaintiff to exercise its right to prepay its FmHA mortgage without restrictions and bring its rents up to market levels. Based on Dr. Karvel's analysis of the property, which the Court in large part adopted, the partnership suffered damages totaling $1,155,948 as a result of defendant's breach. PX 693, p.8. Based on the Court's *sua sponte* action, however, Fox Ridge II will recover nothing. Accordingly, justice requires that plaintiff be permitted to prove its ability to prepay so that it will not go uncompensated for the injuries it has suffered as a result of the government's wrongful conduct.

## II. Alternatively, The Evidence Admitted At Trial Is Sufficient To Conclude That Plaintiff Was Able To Prepay Its Mortgage.

As an alternative to reopening the record, the Court could conclude that the evidence already introduced at trial is sufficient to hold that Fox Ridge II was able to prepay its mortgage upon its intended prepayment date. Absent a poor credibility determination, testamentary evidence along with some indicia of reliability is sufficient for the court to conclude that a fact has been proven. *See DP Solutions, Inc. v. Rollins, Inc.*, 353 F.3d 421, 428 (5th Cir. 2003) (oral testimony and voicemail where party "arguably assumed that [contractual] relationship would continue" is sufficient to find that contract was extended); *Focus on the Family v. Pinellas*

*Suncoast Transit Authority*, 344 F.3d 1263, 1274 (11th Cir. 2003) ("[proffered] testimony undermines the district court's suggestion that [plaintiff] presented no evidence that the advertisements would have been denied pursuant to the contract, and is more than sufficient to establish a fairly traceable connection between the injury-in-fact alleged by [plaintiff] and appellees' alleged conduct").

A parties' failure to contradict or even challenge evidence can lead to a decision in favor of the opposing party. *Sabatino v. Curtiss Nat'l Bank of Miami Springs*, 446 F.2d 1046, 1055 (5th Cir. 1971) (although the burden of proof never shifts, when a party having the burden of proof makes a prima facie case, the opposing party is required to "come forward with some evidence to rebut that prima facie case"); *Willingham v. Secretary of Health, Ed. and Welfare*, 377 F. Supp. 1254, 1257 (S.D. Fla. 1974) ("It is said that although a plaintiff always has the burden of persuasion, which never shifts, he may produce sufficient evidence that his opponent's failure to adduce contradictory proof either may lead to a decision for plaintiff, or must lead to such a ruling."). Thus, credible, unchallenged testimony is given great weight by the courts and should not lightly be dismissed.

In this case, the Court accepted testimony from Mr. Powers demonstrating the partnership's intent, desire, and efforts to prepay the FmHA mortgage. V/1167-68. The Court did not find the testimony to be lacking credibility. Although oral testimony may not be sufficient alone, other indices of reliability are present in this case. Expert witness testimony demonstrates that remaining in the program, subject to its restrictions, was not an economically viable option for plaintiff. I/352; II/494; *see also* PX 693. As a result, prepayment was the only reasonable course of action for the partnership. The extent of the partnership's equity in the property also supports the conclusion that it would have been able to obtain a conventional loan

to prepay the mortgage balance. Powers Decl. ¶ 9; PX 693; PX 700. In addition, contemporaneous documents were admitted at trial which demonstrate Plaintiff's attempts to prepay the FmHA mortgage. PX 690. If Fox Ridge II did not have the ability to act upon its request to prepay, its efforts would have amounted to a meaningless bureaucratic exercise. Further, there is no evidence or suggestion that the partnership's attempts to prepay were made in bad faith or that the partnership would not have followed through with its long-held prepayment plans had its request been granted by the agency.

Thus, considering the testimony and corroborating evidence, and the complete lack of contradictory evidence by defendant, the evidence presented at trial is sufficient for the Court to conclude that plaintiff had the ability to prepay its mortgage and would have done so but for the government's wrongful breach.

## CONCLUSION

For the foregoing reasons, Plaintiff Fox Ridge Phase II, respectfully requests that the Court grant it leave to supplement the record and admit the additional evidence cited herein, or in the alternative, that the Court hold that the evidence of record is sufficient to support Plaintiff's claim for damages.

Dated: October 29, 2004

**Filed Electronically**

**s/Jeff H. Eckland**

Mark J. Blando, Of Counsel
ECKLAND & BLANDO, LLP
700 Lumber Exchange
10 South Fifth Street
Minneapolis, MN 55402
612-305-4444