IN THE UNITED STATES COURT OF FEDERAL CLAIMS

FRANCONIA ASSOCIATES,
a Limited Partnership, et al.,

Plaintiffs,

**Case Nos. 97-381C & 97-38124C**
**(Judge Francis M. Allegra)**

v.

THE UNITED STATES

Defendant.

**PLAINTIFF SCENIC VALLEY ASSOCIATES' MOTION FOR LEAVE TO SUPPLEMENT RECORD**

Plaintiff, Scenic Valley Associates, a Wisconsin partnership ("Scenic Valley"), respectfully requests leave to supplement the record in order to admit information regarding the Scenic Valley property that was unavailable to plaintiffs at the time of trial. Although the government has never sought dismissal of Scenic Valley's claims on the grounds that the partnership lacked the ability to prepay its FmHA mortgage – and in fact never challenged the evidence that Scenic Valley would have prepaid its mortgage if permitted to do so – the Court dismissed Scenic Valley's claims *sua sponte,* finding insufficient proof of the partnership's financial ability to prepay. *See Franconia Assocs. v. United States*, 61 Fed.Cl. 718 (Aug. 30, 2004) ("Order"). As demonstrated by the attached affidavit and documents, the exercise of reasonable due diligence on the part of the Plaintiff prior to trial did not result in the discovery of evidence which was material to the calculation of damages. Under the circumstances, fundamental principles of fairness dictate that the Court should use its discretionary power to admit the newly discovered evidence. In the alternative, Plaintiff asserts that the evidence

presented at trial is sufficient to conclude that Plaintiff had the ability to prepay its mortgage and thus suffered damages as a result of the government's breach of contract.

## BACKGROUND

Mr. George Vitalis, now deceased, testified on behalf the partnership at the trial of this matter held during June 2003 in Des Moines, Iowa. As stated at trial, the partnership desired to prepay and exit the program. IV/1003, 1007. One of the partners, Mr. Slattengren, submitted a written prepayment request to the FmHA sometime between August 23, 1994 and April 12, 1995. IV/1008; Maki Decl. ¶ 5; PX 47 at pp.5-6. No copy of that prepayment request has been found by either party, but the prepayment request itself is referred to in a government letter. IV/1008; PX 47 (explaining what is needed to complete Mr. Slattengren's prepayment request).

Plaintiff's expert witness, Dr. Karvel, conducted a damages analysis for Scenic Valley. PX 48; PX 49. At trial, Dr. Karvel stated, "under a restricted-rent scenario, all of the properties I've analyzed would not be worth their original cost." I/351. In short, Dr. Karvel's economic analysis revealed that "[the property is] worth more than you paid for it if you had a market rent property, and it's worth less than you paid for it if you have a restricted rent property." II/494. Dr. Karvel's analysis concluded that the lost cash flows suffered by Scenic Valley as a result of the government's conduct totaled $609,814. PX 48 at p.8.

Plaintiff, Scenic Valley seeks herein to admit new evidence that was recently obtained. Although sworn testimony was presented at trial, this Court dismissed, *sua sponte*, the damages award for this property, citing insufficient evidence supporting Plaintiff's ability to prepay the mortgage. Order, p. 39-40, Aug. 30, 2004. The newly acquired evidence consists of documents from the Bank of Osceola which demonstrates Plaintiff's contemporaneous desire and ability to prepay the FmHA mortgage on the Scenic Valley property in late 1994 or early 1995. Further,

the affidavit of Allen Maki details the reasonable effort made to obtain the documents that are now presented to the Court. *See* Declaration of Allen Maki ("Maki Decl.").

Mr. Vitalis, now deceased, began searching for all relevant documents in 1997, prior to filing a complaint in this matter, and continued for the six years prior to trial. Maki Decl. ¶ 4. Prior to trial in 2002, Mr. Vitalis searched for documents from the Bank of Osceola indicating its willingness to provide a conventional loan that would allow the partnership to prepay the FmHA mortgage. Maki Decl. ¶ 6. At that time, the Bank could find no such documentation in its files. Maki Decl. ¶ 8.

Since the Court's August 30, 2004 order in this matter, the surviving partners of Scenic Valley have made yet another series of attempts to locate missing documents. Mr. Allan Maki, after obtaining a power of attorney from Mr. Slattengren, visited the Bank of Osceola in another attempt to find relevant documents in the bank's files. Maki Decl. ¶ 9. Fortunately, this time the Bank was successful in locating the following documents: financial statements for each of the partners, a financial statement for the Scenic Valley property, and an internal bank document which indicates the bank quoted loan rates to partner, Linn Slattengren. Maki Decl. ¶ 9. A bank officer apologized for the Bank's inability to find the attached documents prior to trial, and attributed the Bank's failure to find them in large part to its move during 2002. Maki Decl. ¶ 10. The documents show that the partnership was able, in the view of Bank of Osceola, to prepay the FmHA mortgage based on either the property value or the personal finances of the partners.[1] Maki Decl. ¶ 11-13. The declaration and the documents further show that the efforts of Plaintiff

[1] Using either property equity or personal finances of the partners would have been sufficient to secure a loan.

cannot be faulted, for even the Bank's failure to locate the documents is excusable in light of the Bank's move.

## ARGUMENT

### I. Considerations of Judicial Economy and Fairness to Plaintiff Warrant Reopening the Record To Admit the Additional Evidence.

A motion to reopen the record to submit additional evidence is addressed to the sound discretion of the trial court. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 331 (1971). Before judgment is final, a court can enter amended findings and additional conclusions even though the effect is to require a different judgment. *Cohn v. United States*, 259 F.2d 371, 376 (6th Cir. 1958); *See also United States v. Jerry*, 487 F.2d 600, 604 (3rd Cir. 1973) ("In short, the power to grant relief from erroneous interlocutory orders, exercised in justice and good conscience, has long been recognized as within the plenary power of courts until entry of final judgment and is not inconsistent with any of the Rules."); *Frantz Mfg. Co. v. Phenix Mfg. Co.*, 314 F.Supp. 99 (D.C. Wis. 1970) (When only an opinion has been filed, and no judgment has been rendered, this rule allowing the amendment of findings or making of new findings within ten days after the judgment did not bar an offer to add a new exhibit).

In making its decision to reopen, courts should consider the following factors: (1) the timing of the motion, (2) the nature of the additional evidence, and (3) the potential for prejudice to the nonmoving party. *Smith v. Rogers Galvanizing Co.*, 148 F.3d 1196, 1198 (10th Cir. 1998); *see also Rochez Bros., Inc. v. Rhoades*, 527 F.2d 891, 894 n.6 (3d Cir. 1975). "Ultimately, 'fairness is the key criterion in determining whether to reopen.'" *Id.* at 1198 (citing *Blinzler v. Marriott Int'l, Inc.*, 81 F.3d 1160 (1st Cir. 1996)). Stated another way, "[g]reat flexibility is accorded the District Court in its determination to supplement the record, though it must avoid perpetrating any type of injustice in so doing." *Gibson v. Mayor and Council of the*

*City of Wilmington*, 355 F.3d 215, 229 (3d Cir. 2004) (citation omitted). Under the circumstances at issue here, the admission of new evidence will prevent further injustice and should be allowed.[2]

**A. Plaintiff's Motion to Supplement the Record Is Timely.**

The trial of this matter has been completed but no judgment has been entered for any of the plaintiffs. The parties are submitting this date a Joint Status Report setting forth agreed-upon damage amounts for each of the remaining properties. Those revised damages figures reflect various adjustments required by the Court in its decision of August 30, 2004. Thus, the case has not yet reached final judgment and the time for appeal has not yet begun to run. *See Gibson*, 355 F.3d at 229 (additional evidence admitted after trial and prior to final judgment).

Under the Court's rules, any order or decision of the Court "is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all parties." RCFC 54(b); *see also Mendenhall v. Barber-Greene Co.*, 26 F.3d 1573, 1582 (Fed. Cir. 1994). Indeed, even the entry of judgment does not prohibit the Court making additional findings of fact after trial. *See* RCFC 59(a); *see also* RCFC 60(b) (allowing relief from a judgment or order for up to one year after the issuance of the judgment or order). In this case, Plaintiff is responding promptly to the Court's decision to disallow damages on a ground not raised by the defendant at trial. Accordingly, the timing of Plaintiff's motion supports supplementing the record with the proposed additional evidence.

**B. The Nature of the Evidence Warrants Supplementing the Record.**

---

[2] Even if the judgment was final, the Court still retains the ability to reopen the case and admit new evidence. *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558 (Fed. Cir. 1994) (Motion may be granted so that a party can, after judgment, introduce newly discovered or previously unavailable evidence); *See also* R. CT. FED. CL. 52(b).

The evidence Plaintiff seeks to introduce consists of financial documents and other evidence of the partnership's financial ability to prepay. None of the proposed evidence is subject to serious dispute, as to authenticity or otherwise. The evidence undoubtedly would have been admitted at trial without objection had the issue of Plaintiff's ability to prepay ever been questioned by defendant.

Moreover, Plaintiff exercised reasonable due diligence and still was unable to obtain the documents which demonstrate Plaintiff's ability to prepay the FmHA mortgage. At the time of trial, the documents were not in the possession of either the Defendant or Plaintiff, and thus were not included in discovery responses. The documents were unavailable for trial due to the failure of the Bank of Osceola to locate them before trial. When asked prior to trial in 2002, the Bank of Osceola mistakenly reported that no documentation existed in its files. Maki Dec. ¶ 8. As a result of the lack of written evidence, Plaintiff offered detailed testimony, which was subject to cross-examination, regarding the partnership's plan to prepay. In retrospect, it appears that the Bank of Osceola was in the process of moving at that time, a situation which interfered with document production. Maki Dec. ¶ 7. It is not reasonable to punish Plaintiffs by excluding relevant evidence for inopportune circumstances. The desired documents were in the control of a third party that had a reasonable explanation for its own mistake. Plaintiff had no reason not to rely upon the Bank's statements, and therefore Plaintiff should not be faulted for the late production of the documents.

Finally, the evidence that Plaintiff seeks to admit is entirely consistent with the evidence presented at trial. Mr. Vitalis testified as to the partnership's long-held plans to prepay and its effort to do so. IV/1003, 1007. Contemporaneous documents confirm that Plaintiff actively sought to prepay the mortgage. PX 47; Maki Decl. ¶ 5. Mr. Vitalis was subjected to

cross-examination, and defense counsel never challenged the partnership's ability, or intent, to prepay; nor did counsel raise the issue in its subsequent briefs. Mr. Vitalis' testimony also was corroborated by expert testimony that any reasonable investor in the partnership's position would have prepaid due to the fact the partnership could not even recover its initial investment in the property unless it prepaid. I/352; II/494 ("it's worth more than you paid for it if you had a market rent property, and it's worth less than you paid for it if you have a restricted rent property."). In addition, the evidence shows that the assessed value of the property and related land parcel, along with its reserve account, was more than enough to support a conventional mortgage capable of paying off the outstanding mortgage. Maki Decl. ¶ 12. Finally, wholly apart from the reserve funds and equity in the property, the personal assets of any one of the partners was sufficient to prepay the mortgage. Maki Decl. ¶ 13.

Thus, Plaintiff's proposed supplemental evidence does not introduce any new or novel theories into the case and harmonizes with the evidence already in the record. In addition, the evidence is necessary to respond to the Court's *sua sponte* decision to dismiss Plaintiff's claim on a ground not raised at trial. Accordingly, the nature of the evidence supports the conclusion that it should be admitted into the record.

**C. The Lack of Prejudice to Defendant Warrants Supplementing the Record.**

Accepting the proposed evidence into the record would not be prejudicial to defendant in any way. As noted above, the evidence is not subject to serous dispute and is fully consistent with Plaintiff's testimony at trial. In addition, the government was well aware throughout the course of this litigation that Plaintiff intended to prepay its mortgage and was seeking damages based on the agency's refusal to permit it to do so. Given that defendant never challenged the partnership's ability to prepay, on cross-examination or otherwise, and never sought dismissal of

Plaintiff's claims on any alleged inability to prepay, it can hardly argue that it would be prejudiced by the introduction of the evidence at issue. It goes without saying that the government cannot be prejudiced by evidence supporting a claim that it never questioned.

**D. Equity Supports Supplementing the Record.**

As noted above, courts have observed that the most important factor in deciding whether to reopen the record to admit additional evidence is consideration of fairness to the parties. *See Smith v. Rogers Galvanizing Co.*, 148 F.3d 1196, 1198 (10th Cir. 1998); *Gibson v. Mayor and Council of the City of Wilmington*, 355 F.3d 215, 229 (3d Cir. 2004) (citation omitted). In this case, compelling equitable considerations support supplementing the record.

When a court acts on its own initiative, there is a danger of circumventing the adversarial process and additional procedural safeguards, such as notice requirements, must be implemented to protect the parties' interests. For example, when a court grants summary judgment *sua sponte*, notice should be given to the party adversely affected so that a response may be offered. *Armour v. County of Beaver*, 271 F.3d 417, 434 (3d Cir. 2001); *Massey v. Congress Life Ins. Co.*, 116 F.3d 1414 (11th Cir. 1994) (holding that district court's failure to give sufficient notice that it might grant summary judgment precluded summary judgment for breach of contract claim); *Hanson v. Polk County Land, Inc.*, 608 F.2d 129, 131 (5th Cir. 1979) (finding reversible error in trial court's grant of summary judgment *sua sponte* without proper notice). Similarly, *sua sponte* dismissal for failure to state a claim also requires notice and an opportunity to respond. *Futura Dev. of Puerto Rico, Inc. v. Estado Libre Asociado de Puerto Rico*, 144 F.3d 7 (1st Cir. 1998).[3]

[3] For the same reasons, when a court uses its inherent power to issue sanctions *sua sponte*, the court should provide notice and afford the party time to respond. *See Goldin v. Bartholow*, 166 F.3d 710 (5th Cir. 1999); *Moates v. Barkley*, 147 F.3d 207 (2d Cir. 1998) (per curiam); *Johnson v. Waddell & Reed, Inc.*, 74 F.3d 147 (7th Cir. 1996).

Here, the Court dismissed Scenic Valley's claims *sua sponte* based on the lack of evidence of Plaintiff's ability to prepay. Significantly, if this issue had been raised by defendant or the Court at trial, the evidence at issue could have been presented on rebuttal. Indeed, considering the severe financial challenges of participating in the Section 515 program without the right to prepay – as explained by Dr. Karvel and evidenced by the extent of Plaintiff's damages – it is not surprising that the government never questioned the fact that Plaintiffs would have, and could have, found a way to pay off its FmHA mortgage. Given that this potential ground for dismissal was first introduced by the Court's decision of August 30, 2004, fundamental considerations of fairness require that Plaintiff be provided the opportunity to respond by submitting the attached evidence of its previously undisputed ability to prepay.

Finally, failure to accept Plaintiff's proposed evidence will result in depriving Scenic Valley of any remedy for the government's breach of contract. In its decision, the Court concluded that that defendant breached Plaintiff's contract by refusing to permit Plaintiff to exercise its right to prepay its FmHA mortgage without restrictions and bring its rents up to market levels. Based on Dr. Karvel's analysis of the property, which the Court in large part adopted, the partnership suffered damages totaling $609,814 as a result of defendant's breach. PX 48 at p.8. Based on the Court's *sua sponte* dismissal, however, Scenic Valley will recover nothing. Accordingly, justice requires that Plaintiff be permitted to prove its ability to prepay so that it will not go uncompensated for the injuries it has suffered as a result of the government's wrongful conduct.

## II. Alternatively, The Evidence Admitted At Trial Is Sufficient To Conclude That Plaintiff Was Able To Prepay Its Mortgage.

As an alternative to reopening the record, the Court could conclude that the evidence already introduced at trial is sufficient to hold that Scenic Valley was able to prepay its mortgage

upon its intended prepayment date. Absent a poor credibility determination, testamentary evidence along with some indicia of reliability is sufficient for the court to conclude that a fact has been proven. *See DP Solutions, Inc. v. Rollins, Inc.*, 353 F.3d 421, 428 (5th Cir. 2003) (oral testimony and voicemail where party "arguably assumed that [contractual] relationship would continue" is sufficient to find that contract was extended); *Focus on the Family v. Pinellas Suncoast Transit Authority*, 344 F.3d 1263, 1274 (11th Cir. 2003) ("[proffered] testimony undermines the district court's suggestion that [plaintiff] presented no evidence that the advertisements would have been denied pursuant to the contract, and is more than sufficient to establish a fairly traceable connection between the injury-in-fact alleged by [plaintiff] and appellees' alleged conduct").

A parties' failure to contradict or even challenge evidence can lead to a decision in favor of the opposing party. *Sabatino v. Curtiss Nat'l Bank of Miami Springs*, 446 F.2d 1046, 1055 (5th Cir. 1971) (although the burden of proof never shifts, when a party having the burden of proof makes a prima facie case, the opposing party is required to "come forward with some evidence to rebut that prima facie case"); *Willingham v. Secretary of Health, Ed. and Welfare*, 377 F. Supp. 1254, 1257 (S.D. Fla. 1974) ("It is said that although a plaintiff always has the burden of persuasion, which never shifts, he may produce sufficient evidence that his opponent's failure to adduce contradictory proof either may lead to a decision for plaintiff, or must lead to such a ruling."). Thus, credible, unchallenged testimony is given great weight by the courts and should not lightly be dismissed.

In this case, the Court accepted testimony from Mr. Vitalis demonstrating the partnership's intent, desire, and effort to prepay the FmHA mortgage. IV/1010. The Court did not find the testimony to be lacking credibility. Although oral testimony alone may not be

sufficient in all cases, other indices of reliability are present here. Expert witness testimony demonstrates that remaining in the program subject to its restrictions was not an economically viable option for Plaintiff. I/352; II/494; *see also* PX 49. As a result, prepayment was the only reasonable course of action for the partnership.

The extent of the partnership's available financing also supports the conclusion that it would have been able to obtain a conventional loan to prepay its FmHA mortgage balance. Maki Decl. ¶ 11-13. In addition, contemporaneous documents were admitted at trial demonstrating Plaintiff's attempt to prepay the FmHA mortgage. PX 47. If Scenic Valley did not have the ability to act upon its request to prepay, its efforts would have amounted to a meaningless bureaucratic exercise. Further, there is no evidence or suggestion that the partnership's attempts to prepay were made in bad faith or that the partnership would not have followed through with its long-held prepayment plans had its request been granted by the agency.

Considering the testimony with the corroborating evidence, and the utter lack of contradictory evidence or assertions, Plaintiff has demonstrated the ability to prepay the mortgage is more likely than not.[4] Additionally, the already admitted documents unequivocally demonstrate that Plaintiff actively sought to prepay the mortgage. Although no formal loan commitment was produced, the Court should conclude the Plaintiff was able to prepay if the evidence makes it more likely true than not true. The internal bank document strongly supports Mr. Slattengren's recollection that the bank would provide a conventional loan. Maki Decl. ¶ 6. In fact, the internal Bank notes include a statement from the bank officer asking to receive his commission for making a loan commitment. Ex. A. Absent a finding of bad faith, the documents support the conclusion that the Plaintiff was able to prepay the mortgage.

---

[4] This is an accurate statement even if the newly discovered evidence is not considered.

Thus, considering the testimony and corroborating evidence, and the complete lack of contradictory evidence by defendant, the evidence presented at trial is sufficient for the Court to conclude that Plaintiff had the ability to prepay its mortgage and would have done so but for the government's wrongful breach.

## CONCLUSION

For the foregoing reasons, Plaintiff Scenic Valley Associates respectfully requests that the Court grant it leave to supplement the record and admit the newly discovered evidence cited herein, or, in the alternative, that the Court hold that the evidence of record is sufficient to support Plaintiff's claim for damages.

Dated: October 29, 2004

**Filed Electronically**

**s/Jeff H. Eckland**

Mark J. Blando, Of Counsel
ECKLAND & BLANDO LLP
700 Lumber Exchange
10 South Fifth Street
Minneapolis, MN 55402
612-305-4440