IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| FRANCONIA ASSOCIATES, A Limited Partnership, et al., | ) | |
| Plaintiffs, | ) | No. 97-381C & 97-38124C (Judge Allegra) |
| v. | ) | |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

DEFENDANT'S OPPOSITION TO PLAINTIFF
SCENIC VALLEY ASSOCIATES' MOTION TO SUPPLEMENT RECORD

INTRODUCTION

In this Court's Opinion and Order of August 30, 2004, the Court dismissed the claim relating to several of the housing complexes involved in this case, including the complex owned by plaintiff Scenic Valley Associates ("Scenic Valley"), finding that the trial record was "essentially devoid of any indication that their owners had the capacity to prepay at any point prior to trial." Franconia Associates v. United States, 61 Fed. Cl. 718, 748 (2004). The Court added that "the evidence produced as to the prepayment capacity of the other complexes only serves to highlight the failure of proof as to the four properties in question." Id. Now – 16 months after the trial in this case was concluded and two months after the issuance of the Court's opinion, Scenic Valley seeks to supplement the record with additional evidence to fill this gap in its proof.

Scenic Valley contends that this evidence was "recently obtained," Scenic Valley Motion 2, and that "the exercise of reasonable due diligence on the part of the Plaintiff prior to trial did not result in the discovery of [this] evidence . . . ." Id. at 1. However, the only support offered for this claim of due diligence is a declaration describing efforts made almost exclusively by

persons other than the declarant. The testimony is, on its face, inadmissible hearsay. See Fed. R. Evid. 801, 802. Further, to the extent that the proffered evidence is admissible at all, it consists primarily of financial statements that purport to have been made by the Scenic Valley partners themselves, presumably from their personal knowledge, concerning their financial resources. Even if these partners truly could not have found and offered these documents at trial, there is no apparent reason why they could not have testified at trial concerning their own financial resources. It appears that the Scenic Valley simply did not consider proving its capacity to prepay to be worth the effort until the Court ruled that it was. This is not an appropriate basis for reopening the record for new evidence. And, in any event, the proffered new evidence fails, on its face, to prove that Scenic Valley had the capacity to prepay. Scenic Valley's motion to supplement the record should be denied.

## ARGUMENT

Scenic Valley correctly states that "a motion to reopen to submit additional proof is addressed to sound discretion of the court." Scenic Valley Motion 4, citing Zenith Radio Corp. v. Hazeltine Research Inc., 401 U.S. 321, 331 (1971). Citing decisions from courts of appeals for various circuits (but not the Federal Circuit), Scenic Valley also identifies three of the factors that courts have considered in deciding such motions: the timing of the motion, the nature of the additional evidence, and the potential for prejudice to the nonmoving party. Scenic Valley omits, however, another important factor: the movant's reason for not offering the evidence earlier. See Blinzler v. Marriott Int., Inc., 81 F.3d 1148, 1160 (1st Cir.1996) ("specific factors to be assessed include . . . the proponent's explanation for failing to offer the evidence earlier . . .").

The Federal Circuit, among others, has recognized that a party is ordinarily not entitled to reopen the record to offer evidence that available and could have been offered during the trial. See Enzo Biochem, Inc. v. Calgene, Inc., 188 F.3d 1362, 1379-1380 (Fed. Cir. 1999) (denial of motion to reopen affirmed where, among other things, "the evidence was not newly discovered by Enzo, and Enzo offers no reason why it did not produce it at trial"). Similarly, other Circuits have recognized that " 'a plaintiff's failure to call available witnesses or produce existing evidence does not ordinarily constitute grounds to reopen a case.'" Gathright v. St. Louis Teacher's Credit Union, 97 F.3d 266, 268 (8th Cir.1996), quoting Wilson v. Good Humor Corp., 757 F.2d 1293, 1300 (D.C. Cir. 1985). "[I]f the failure of the party to submit the evidentiary materials in question is attributable solely to the negligence or carelessness of that party's attorney, then it would be an abuse of discretion for the court to reopen the case and consider the evidence." Downey v. Denton County, Tex., 119 F.3d 381, 387 (5th Cir. 1997), quoting Lavespere v. Niagara Mach. & Tool Works, Inc., 910 F.2d 167, 173 (5th Cir. 1990), reh'g denied, 920 F.2d 259 (1990), cert. denied, 510 U.S. 859 (1993).[1]

---

[1] See also Continental Sand & Gravel, Inc. v. K & K Sand & Gravel, Inc., 755 F.2d 87, 92 (7th Cir. 1985) (whether plaintiff's delay in offering sales records into evidence was the result of a tactical decision or oversight, trial court did not abuse its discretion in refusing to consider them when belatedly offered at the close of defendants' case); Blytheville Cotton Oil Company v. Kurn, 155 F.2d 467, 470.(6th Cir. 1946) (trial judge did not abuse his discretion in denying motion to reopen case for additional testimony, where motion was not based on newly discovered evidence, and the evidence could have been readily submitted at the trial); Armstrong v. Charlotte County Bd. of County Com'rs, 273 F. Supp.2d 1312, 1316 n.1 (M.D. Fla. 2003) (title VII plaintiff 's request for post-trial hearing to present additional evidence on value of her benefits denied because it was "evidence that should have been introduced during the trial . . . "); Korea First Bank v. Lee, 14 F. Supp. 2d 530, 531 (S.D.N.Y. 1998) (party seeking to reopen a closed trial record must establish that it failed to adduce the evidence sought to be added notwithstanding its own due diligence).

Scenic Valley relies heavily upon Gibson v. Mayor and Council of the City and Wilmington, 355 F.3d 215 (3d Cir. 2004). Although the trial court in Gibson reopened the trial record to admit evidence that existed at the time of trial, the evidence was not admitted to fill a gap in a party's proof, or to prove facts that weren't already in evidence. The new evidence consisted of audio tapes of certain telephone conversations. The trial evidence already included videotapes made of an administrative hearing in which the same audio tapes were played. In viewing those videotapes, the jury heard these audio recordings, but their audibility was poor. During jury deliberations, the jury requested the original tapes, and the request was granted. Here, Scenic Valley does not seek to offer the trier of fact a clearer version of evidence already in the record, prior to a decision; it seeks, 16 months after the trial, to offer evidence that it simply failed to offer during the trial. Gibson lends no support to this effort.

Scenic Valley asserts that it "seeks to herein to admit new evidence that was recently obtained," Scenic Valley Motion 2, that "the exercise of reasonable due diligence on the part of the Plaintiff prior to trial did not result in the discovery of [this] evidence," id. at 1, and "the affidavit of Allen Maki details the reasonable effort made to obtain the documents that are presented to the Court." Id. at 3. In the cited declaration, however, Mr. Maki states that the efforts made prior to trial were made by another Scenic Valley partner, Mr. Linn Slattengren, and that Mr. Maki learned of these efforts"[f]rom recent discussions [he] had with Mr. Slattengren . . . ." Maki Decl. ¶ 7. This is inadmissible hearsay. See Fed. R. Evid. 801, 802.

Further, with the exception of one document (Maki Decl. Exhibit A), the proposed new evidence consists of what appear to be financial statements of Scenic Valley and the partners. The partners' financial statements purport to have been made by the partners, presumably from

their personal knowledge, concerning their financial resources. Maki Decl. Exhibits B-E. The source of the information contained in the Scenic Valley financial statement (Maki Decl. Exhibit F) also is, presumably, the partners. To the extent that these documents might have been admissible at trial to prove the financial resources of Scenic Valley and its partners, there is no apparent reason why the partners could not have testified at trial concerning their own financial resources and those of Scenic Valley. Moreover, it simply strains credulity to suggest that these particular documents were the only existing records reflecting the financial resources of the partners and Scenic Valley, and that no bank statements, tax returns, or other financial records were available.

Scenic Valley also asserts that "[n]one of the proposed evidence is subject to serious dispute, as to authenticity or otherwise. The evidence undoubtedly would have been admitted at trial without objection had the issue of plaintiff's ability to prepay ever been questioned by defendant." Scenic Valley Motion 6. This assertion is unfounded. We were not aware of any of the proposed evidence prior to the filing of the motion to reopen the record, and we have not had an opportunity to test the foundation for its purported admissibility or its probative value.[2]

Scenic Valley argues that accepting the proposed evidence into the record would not prejudice the Government. To support this assertion, Scenic Valley notes that the Government did not expressly challenge Scenic Valley's ability to prepay at trial.[3] This is no more an

---

[2] "[O]nce the record is closed, a district court, absent waiver or consent, ordinarily may not receive additional factual information of a kind not susceptible to judicial notice unless it fully reopens the record and animates the panoply of evidentiary rules and procedural safeguards customarily available to litigants." Lussier v. Runyon, 50 F.3d 1103, 1105-06 (1st Cir.1995).

[3] Scenic Valley makes much of the fact that, during the cross-examination of Scenic Valley's witness, George Vitalis, the Government did not challenge Scenic Valley's capacity to
(continued...)

indication of lack of prejudice to the Government, however, than Scenic Valley's failure to offer evidence of capacity to prepay at trial is an indication of lack of prejudice to Scenic Valley from the exclusion of such evidence now. Admitting the proposed evidence now would prejudice the Government no less than excluding it would prejudice Scenic Valley.

Scenic Valley argues that equity supports accepting the proposed evidence into the record, because the Court acted "sua sponte" in finding that Scenic Valley failed to meet its burden of proving its capacity to prepay. Scenic Valley Motion 9. Scenic Valley appears to mean that the Court unfairly surprised Scenic Valley by relying upon this failure without its having been brought to Scenic Valley's attention during the trial; that "if this issue had been raised by defendant or the Court at trial, the evidence at issue could have been presented on rebuttal." Id. Neither defendant nor the Court, however, was obligated to remind the plaintiffs of what they had to prove to in order to establish liability and damages. If such evidence "could have been presented on rebuttal," it should have been presented in plaintiffs' case in chief. Further, the need to offer evidence of capacity to prepay in fact did not come as a surprise at all. As this Court noted in its opinion, such evidence was offered with respect to most of the other properties at issue in this case.

Finally, to the extent that the proffered documents are even potentially admissible, they fail, on their face, to prove that Scenic Valley had the capacity to prepay, for the following reasons.

---

[3](...continued)
prepay its loan. It was not the Government's responsibility, however, to raise on cross-examination what was omitted on direct, or to invite the witness to fill in a gap in the plaintiff's proof.

The first document is purportedly a note in a bank file, indicating that in July 1994 the unidentified author of the note met with Mr. Slattengren; that the latter expressed an interest in in obtaining a commitment letter from the bank for use in obtaining a loan not from the bank, but from the Government ("Lynn will in turn take our commitment to the FHA and use it to qualify for the FHA interest subsidy program for low income housing"); and that the bank was considering issuing such a letter. Maki Decl. Exhibit A[4] The note does not state or imply that the bank was prepared to make an actual loan, much less one sufficient to finance prepayment.

The second document appears to be the first page of a two-page financial statement[5] of Linn and Helen Slattengren, prepared for the purpose of obtaining credit, and describing the Slattengrens' financial condition as of July 1, 1994. Maki Decl. Exhibit B. Although the document indicates a net worth of $1.6 million, the identified assets consist almost entirely of "Homestead and Real Estate Owned," including "Equity in Partnership" – assets that the Slattengren's were not likely to liquidate in order to raise funds for prepayment of Scenic Valley's FmHA loan.[6] Apart from "Homestead and Real Estate Owned," the document indicates only

---

[4] This is consistent with the trial evidence indicating that, in 1994, Mr. Slatterngren was interested not in obtaining a conventional loan to finance prepayment of Scenic Valley's FmHA loan, but in obtaining from the agency a subsidized equity loan with which to buy out the other partners. PX 47, p.5; Tr. 1006:13-1007:1.

[5] A comparison of Exhibit B with Exhibit C indicates that the statement consists of a two-page form, the second of which should contain additional financial information as well as applicant signatures.

[6] There is no evidence that "Homestead and Real Estate Owned" included anything other than the Slattengren's residence and Mr. Slattengren's interest in Scenic Valley. And, if Mr. Slattengren had sold his interest in Scenic Valley, he would no longer have had any interest in financing the prepayment of Scenic Valley's loan.

$117,500, most of which consists of personal property and unidentified investments. "Cash on Hand in financial Institutions" is given as only $3,500.

The third document appears to be a financial statement Allan and Joanne Maki, also prepared for the purpose of obtaining credit, and describing the Makis' financial condition as of January 31, 1997. Maki Decl. Exhibit C. Although the document indicates a net worth of $749,710, the identified assets consist almost entirely of "Homestead and Real Estate Owned,"[7] IRA accounts, personal property, and investments. "Cash on Hand in financial Institutions" is given as $10,500. Maki Decl. Exhibit C, p.1.

The fourth document – George Vitalis's "Personal Statement of Financial Condition as of August 15, 1992" (Maki Decl. Exhibit D) – indicates a net worth of $761,400. The assets, however, consist almost entirely of "equities in real estate partnerships" (including Scenic Valley and other partnerships that are plaintiffs in this case: Franconia Associates and Valley Associates),[8] land, stock, and personal property. Cash is given as $2,200.

The fifth document – a statement of financial condition of Robert and Beverly Rawlings as of January 11, 1993 (Maki Decl. Exhibit E) – indicates a net worth of $441,400. The assets, however, consist primarily of a residence, a business, interests in partnerships including Scenic Valley, personal property, and IRA accounts. Cash is given as $5,200.

---

[7] This includes the Makis' residence ($445,000) and Mr. Maki's interest in Scenic Valley ($50,000). Maki Decl. Exhibit C, p.2.

[8] In a motion similar to this one, filed contemporaneously by plaintiff Valley Associates, Mr. Vitalis's Personal Statement of Financial Condition as of December 30, 1990, is offered as proof of that plaintiff's capacity to prepay. Most of the assets described by Mr. Vitalis in that statement and in the one filed here are the same. See Plaintiff Valley Associates' Motion to Supplement Record and Declaration of Marge Alden, Exhibit B. Yet, if Mr. Vitalis's assets had been utilized for prepayment of one plaintiff's loan, the same assets could not then have been reutilized for prepayment of the other plaintiff's loan.

The sixth document – Scenic Valley's balance sheet for December 31, 1994 (Maki Decl. Exhibit F) – identifies assets, but not liabilities. Total assets are stated to be $273,397.22, of which $213,090.54 consists of land, buildings, and other fixed assets. The stated values of the latter assets appear to be book values; the document does not address market values. The same is true of many if the assets described in the partners' financial statements.

The unpaid balance of Scenic Valley's FmHA loan at the end of 1994 was $355,798.46. PX 51. This is amount is substantially greater than Scenic Valley's net worth at that time, as stated in Maki Decl. Exhibit F. The latter exhibit does not indicate that Scenic Valley could have either prepaid from its own assets or obtained a conventional loan to finance prepayment, in 1994 or at any other time. Exhibits B through E do not indicate that the partners, individually or collectively, could or would have ever financed prepayment of Scenic Valley's loan. And, as we have demonstrated, Exhibit A does not indicate that a bank was ever prepared to finance prepayment.

## CONCLUSION

For the foregoing reasons, the plaintiff Scenic Valley's motion to supplement the record should be denied.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

s/David M. Cohen
DAVID M. COHEN
Director

Filed electronically

s/Shalom Brilliant
SHALOM BRILLIANT
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Telephone: (202) 305-7561
Facsimile: (202) 305-7643

Attorneys for Defendant

November 15, 2004