**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

FRANCONIA ASSOCIATES,
a Limited Partnership, et al.,

Plaintiffs,

**Case Nos. 97-381C & 97-3812C**
**Judge Francis M. Allegra**

v.

THE UNITED STATES

Defendant.

**REPLY BRIEF IN SUPPORT OF PLAINTIFF EASTWOOD APARTMENT L.P.'S MOTION TO SUPPLEMENT RECORD**

**INTRODUCTION**

Plaintiff Eastwood Apartments, L.P. ("Eastwood") (plaintiff no. 2), filed a motion to supplement the record (hereinafter "Pl. Mot.") in response to this Court's order disallowing damages for Eastwood, finding insufficient proof of the partnership's financial ability to prepay its FmHA mortgage. *See Franconia Assocs. v. United States*, 61 Fed.Cl. 718 (Aug. 30, 2004) ("Order" or "Slip Op."). Defendant United States raised for the first time in its response the argument that Plaintiff did not demonstrate an ability to prepay. *See* Defendant's Opposition To Plaintiff Eastwood Apartments, L.P.'s Motion To Supplement Record (hereinafter "Def. Brief").

Eastwood presented evidence at trial, in the form of testimony from a partner, contemporaneous documents, and expert testimony, that directly supports the conclusion that Eastwood was able and planned to prepay the FmHA mortgage. The government has never sought dismissal of Eastwood's claim on the grounds that the partnership lacked the ability to prepay its FmHA mortgage – and in fact never challenged the evidence that Plaintiff would have

prepaid its mortgage if permitted to do so – until the Order from this Court was published. Permitting supplemental evidence is entirely within this Court's discretion, and using that discretion is warranted in order to confirm whether Plaintiff could in fact have prepaid its mortgage if allowed by the government.

Plaintiff Eastwood respectfully requests leave to supplement the record in order to admit information regarding its financial ability to prepay the FmHA mortgage; or, in the alternative, the Court should conclude that the evidence presented at trial was sufficient to determine that Plaintiff had the ability to prepay its mortgage and thus suffered damages as a result of the government's breach of contract.

## ARGUMENT

### A. Unchallenged Affirmative Evidence Of Intent And Ability To Prepay Was Presented At Trial.

Eastwood presented affirmative testimonial evidence of Plaintiff's intent and ability to prepay at trial, a fact which garners zero attention in Defendant's Brief. As stated at trial by Mr. Robert Baker, Eastwood was ready and willing to prepay the mortgage on January 25, 2000, the property's 20-year anniversary date. (IV/867-68; s*ee also* PX 99)[1] The expert testimony presented at trial also demonstrates that Eastwood's ability to prepay the mortgage was more likely than not since prepayment was essential to a successful business plan. Dr. Karvel established that none of the Plaintiffs would be able even to recoup their initial investment in the properties absent the ability to prepay their FmHA mortgage. (I/352; s*ee also* VII/1559: "With the owners that I've met, and I believe that I've met with all of them for each of the 37 subject properties, the only thing I've heard consistently from them is that they want to prepay."). In

---

[1] As further proof of the partnership's plan to prepay the mortgage, Mr. Baker originally asked to prepay the mortgage in 1995, long before the twenty-year anniversary date, in order to convert Eastwood Apartments to a conventional type property. (IV/867; PX 96)

short, Dr. Karvel's economic analysis revealed that "[the property is] worth more than you paid for it if you had a market rent property, and it's worth less than you paid for it if you have a restricted rent property." (II/494) This evidence was not challenged at trial by the government, nor was it challenged during post-trial briefing.[2]

Since Eastwood's assertions and documents regarding its ability to prepay the mortgage were not challenged, there was little reason to delay proceedings to belabor the point. Without a challenge to the presented evidence, either explicitly or implicitly, the presentation of further evidence would have been duplicative and was not warranted. Indeed, Federal Rule of Evidence 403 expressly permits the exclusion of relevant evidence if its probative value is substantially outweighed by "…considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Where the sufficiency of the certain proof is ultimately questioned, however, additional relevant evidence *cannot* be excluded by Rule 403. Here, Eastwood was not put on notice that the sufficiency of its proffered evidence would be challenged until the Court acted on its own initiative prior to final judgment. Under the circumstances, and given that the partnership's trial evidence of its ability to prepay was undisputed by the government, Plaintiff submits that it would be fair and proper for the Court to consider additional, clarifying evidence by giving Plaintiff the opportunity to respond.[3]

---

[2] In fact, the government first asserts that Eastwood has not proved its capacity to prepay the mortgage in response to Plaintiff's motion to supplement the record.

[3] For example, when a court grants summary judgment *sua sponte*, notice is typically given to the party adversely affected so that a response may be offered. *Armour v. County of Beaver*, 271 F.3d 417, 434 (3rd Cir. 2001); *Massey v. Congress Life Ins. Co.*, 116 F.3d 1414 (11th Cir. 1994) (holding that district court's failure to give sufficient notice that it might grant summary judgment precluded summary judgment for breach of contract claim); *Hanson v. Polk County Land, Inc.*, 608 F.2d 129, 131 (5th Cir. 1979) (finding reversible error in trial court's grant of summary judgment *sua sponte* without proper notice). Similarly, *sua sponte* dismissal for failure to state a claim also requires notice and an opportunity to respond. *Futura Dev. of Puerto Rico, Inc. v. Estado Libre Asociado de Puerto Rico*, 144 F.3d 7 (1st Cir. 1998). For the same reasons,

**B. This Case Presents Similar Facts As *Gibson*.**

The Third Circuit has ruled that a court may reopen the record and admit new evidence in circumstances that greatly mirror Plaintiff's situation. *Gibson v. Mayor & Council of the City of Wilmington*, 355 F.3d 215, 229 (3rd Cir. 2003). In *Gibson*, the trial record was closed. *Id*. The evidence that was admitted was consistent, alternative proof of evidence presented at trial. Similarly, a final judgment also was not entered before the court permitted additional evidence to be admitted. Perhaps most significantly, the issue at point was not disputed until after the record was closed.[4] The Third Circuit held that the trial court did not abuse its discretion by admitting the evidence. This holding is consistent with common judicial practice of allowing a party to respond to an opponent's arguments in order to reach a fair decision based on all the relevant evidence.

In this case, the trial record is closed, but a final judgment has not been entered. The issue in dispute, Eastwood's ability to prepay its FmHA mortgage, was not disputed until after each side had rested its case. The evidence Eastwood seeks to admit is entirely consistent with the evidence and arguments presented at trial. Contrary to Defendant's brief, the supplemental evidence provides a clearer and more detailed picture of Eastwood's ability to prepay the FmHA mortgage. *See* Def. Brief at 3-4 ("Eastwood does not seek to offer the trier of fact a clearer

---

when a court uses its inherent power to issue sanctions *sua sponte*, the court should provide notice and afford the party time to respond. *See Goldin v. Bartholow*, 166 F.3d 710 (5th Cir. 1999); *Moates v. Barkley*, 147 F.3d 207 (2nd Cir. 1998) (per curiam); *Johnson v. Waddell & Reed, Inc.*, 74 F.3d 147 (7th Cir. 1996).

[4] In *Gibson*, a police officer claiming wrongful termination in a § 1983 suit challenged his ability to hear the underlying conversation during closing arguments. *Gibson*, 355 F.3d at 219. The argument consisted of an assertion that the audio (as presented by a video tape showing the audio tapes being played at a disciplinary hearing) was of such poor quality that actual collusion with job deception was not possible. *Id*. The terminated officer challenged the admission of the evidence, arguing that the court was permitting the adverse party to circumvent the arguments based on the record as presented. *Id*. The Third Circuit was not persuaded by this argument. *Id*.

version of evidence already in the record"). The record supports the Plaintiff's trial testimony, and provides more detail about the several options the partnership could have pursued if permitted by law to prepay without restrictions. Defendant's differentiation of *Gibson* relies on the faulty premise that no evidence has been produced on the issue of Eastwood's ability to prepay the FmHA mortgage. Considering the aforementioned trial testimony of Mr. Baker, as a partner of Plaintiff Eastwood, the expert testimony regarding prepayment as an economic necessity, and the contemporaneous documents indicating that the partnership sought action on a prepayment application, Defendant's attempt to distinguish *Gibson* fails.

The fact is that the profound gap in the evidence regarding the partnership's desire and ability to prepay lies on the government's side. Although the burden of persuasion rests with the Plaintiff on any given issue, at some point the Defendant's failure to produce evidence on its own behalf, or failure even to challenge the assertion, becomes noteworthy.[5] This fact takes on added importance when the government first raised the argument not at trial, or even in Defendant's post-trial briefs, but in response to Plaintiff's motion to supplement.

**C. The Motion To Supplement Record Is Solidly Within This Court's Discretion And Should Be Granted.**

The case law is clear that a trial court has the discretion to admit supplemental evidence. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 331 (1971). As with most uses of a court's discretion, equitable concerns dominate the analysis. *See e.g., Gibson v. Mayor & Council of the City of Wilmington*, 355 F.3d 215, 229 (3rd Cir. 2003); *Smith v. Rogers*

---

[5] *See, e.g., Sabatino v. Curtiss Nat'l Bank of Miami Springs*, 446 F.2d 1046, 1055 (5th Cir. 1971) (although the burden of proof never shifts, when a party having the burden of proof makes a prima facie case, the opposing party is required to "come forward with some evidence to rebut that prima facie case"); *Willingham v. Secretary of Health, Ed. & Welfare*, 377 F. Supp. 1254, 1257 (S.D. Fla. 1974) ("It is said that although a plaintiff always has the burden of persuasion, which never shifts, he may produce sufficient evidence that his opponent's failure to adduce contradictory proof either may lead to a decision for plaintiff, or must lead to such a ruling.").

*Galvanizing Co.*, 148 F.3d 1196, 1198 (10th Cir. 1998) ("Ultimately, 'fairness is the key criterion in determining whether to reopen.'") (citing *Blinzler v. Marriott Int'l, Inc.*, 81 F.3d 1160 (1st Cir. 1996)).[6] When considering equitable issues, an exploration of the factual context and history becomes necessary as legal standards are applied.

**1. Defendant Cites Nothing That Contradicts The Standard Of Fundamental Fairness.**

The only Federal Circuit case cited by Defendant stands for the proposition that a trial court does not abuse its discretion in denying a motion to reopen the record and admit new evidence when the new evidence allegedly contradicts the adversary's evidence, no explanation is offered for not producing it earlier, and the issue in question is essentially moot. *Enzo Biochem, Inc. v. Calgene, Inc.*, 188 F.3d 1362 (Fed. Cir. 1999). The government also cites cases from other circuits which merely stand for the unremarkable proposition that a court has discretion to deny reopening cases, particularly where the initial failure to introduce evidence was strictly for tactical purposes.[7]

[6] Defendant minimizes the equitable concerns and focuses on one possible factor a court may consider in deciding whether to reopen and submit additional evidence, specifically a reason for not producing the evidence earlier. Contrary to Defendant's claim, Plaintiff Eastwood's motion is dedicated to discussing why the documents were not produced and why this Court should admit the supplemental evidence. *See* Pl. Mot. In sum, the documents were not in the possession of the Plaintiff Eastwood, nor in the possession of its individual partners.

[7] (*See* Def. Brief at 3, n.3); *See also Continental Sand & Gravel, Inc. v. K & K Sand & Gravel, Inc.*, 755 F.2d 87, 92 (7th Cir. 1985) (holding trial court did not abuse its discretion for refusing to reopen plaintiff's case-in-chief and admit new evidence when court explicitly rejected trial testimony and evidence presented at trial conflicted); *Blytheville Cotton Oil Co. v. Kurn*, 155 F.2d 467, 470-1 (6th Cir. 1960) (Court did not abuse discretion for denying motion to reopen that was "equivalent to motion for a new trial"); *Armstrong v. Charlotte County Bd. of County Com'rs*, 273 F.Supp.2d 1312, 1316 n.1 (M.D. Fla. 2003) (awarding damages for plaintiff's lost benefits supported only by plaintiff's testimony, but denying motion to reopen for presentation of evidence regarding value of other lost benefits not testified to at trial); *Korea First Bank v. Lee*, 14 F.Supp.2d 530, 531 (S.D.N.Y. 1998) (denying motion to reopen when counsel deliberately chose to leave witness off list of potential witness, reopening trial would place a great burden by

Aside from the affirmation of this Court's discretionary powers, the government has failed to accurately state the applicable legal standard for considering a motion to reopen by confusing a Rule 60 motion with a motion made under Rule 59(e), and implying that the more stringent standards of rule 60 apply to the present case. RCFC 59(e); RCFC 60.[8] "A motion to reopen a case under Rule 59(e), though subject to much more stringent time limitations than a comparable motion under Rule 60(b), is not controlled by the same exacting substantive requirements." *Lavespere v. Niagra Mach. & Tool works, Inc.*, 910 F.2d 167, 173-174 (5th Cir. 1990), *reh'g denied*, 920 F.2d 259 (1990), *cert denied*, 510 U.S. 859 (1993). In *Lavespere*, the Fifth Circuit held that a court should consider a motion to reopen under Rule 59 since the party had challenged the summary judgment "well before the 10 days from the entry of the judgment had passed." *Id*. at 175. However, neither Rule 59 nor 60 is entirely on point for Plaintiff's situation since a final judgment has not been entered by this Court. Under the Rules of the Court of Federal Claims, any order or decision of the Court "is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all parties." RCFC 54(b); *see also Mendenhall v. Barber-Greene Co.*, 26 F.3d 1573, 1582 (Fed. Cir. 1994).

**2. Fundamental Fairness Dictates Reopening The Record.**

Considering the equities, this Court should reopen the record and admit the supplemental evidence. First, the motion to reopen and supplement the record was made in a timely fashion.

---

requiring opposing witness to return to United States from Korea, and where desired testimony would not change outcome).

[8] Defendant cites *Downey* for the proposition that it is an abuse of a court's discretion to reopen and submit evidence if the failure to admit evidence is attributable to attorney negligence or carelessness. (Def. Brief at 3); *See also Downey v. Denton County, Texas*, 119 F.3d 381 (5th Cir. 1997) (holding trial court did not abuse its discretion by refusing to allow counsel to redesignate rebuttal witnesses as case-in-chief witnesses when counsel earlier explained tardy witness list submission as witness list for rebuttal witnesses) (citing *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 173 (5th Cir. 1990). However, the case applies legal standards applicable to motions to reopen under Rule 60, not other rules. *Lavespere*, 910 F.2d at 172-175.

Indeed, the motion was made before entry of final judgment. As stated previously, courts are generally more lenient to allow supplemental evidence when offered in a timely fashion in order for courts to make conclusions based on all of the available facts. Second, the admission of the new evidence will not prejudice Defendant. The government would not be prejudiced by the admission of the supplemental evidence as indicated by its own actions. The government received similar documents for all the properties at issue in *Franconia*, and never questioned any plaintiff's ability to prepay at trial. Nor did defendant ever question any plaintiff's ability to prepay in its post-trial briefs. There is no reason to expect that Defendant would act any different if the material had been presented at trial. This is especially true when the supplemental evidence is entirely consistent with the testimony and documents offered at trial. In fact, the supplemental evidence is even consistent with all of the other plaintiffs, which highlights the fundamental importance of the prepayment right. As a result, Defendant's own actions support reopening the record and admitting the evidence. Third, the documents were not in the possession of the Plaintiff or its agents during trial. Finally, the supplemental evidence is material to the calculation of damages for Plaintiff. Omission of this evidence may lead to the unjust situation of identifying an injury, but denying any remedy.

**D. The Supplemental Evidence Was Held By The Bank At The Time Of Trial.**

In his declaration on behalf of Plaintiff's motion to supplement the record, Mr. Robert Baker states that the supplemental documents were not in his possession at the time of trial. (Baker Decl. ¶ 4) Defendant argues that Baker's declaration is incompetent evidence, and cites Federal Rules of Evidence 801 and 802. (Def. Brief at 4) Contrary to Defendant's assertions, the declaration does not contain inadmissible hearsay. First, the declaration of Mr. Baker has not been submitted to the Court for admission to the record. Plaintiff provides his declaration to aid

the Court in ruling on the admissibility of the exhibits attached to it. Thus, labeling the declaration inadmissible is irrelevant. Indeed, Federal Rule 1101(d)(1) explicitly states that this Court is not bound by the rules of evidence regarding the determination of preliminary questions of fact, such as those relating to the qualification of a person who is a witness. Thus, the government's invocation of Rules 801 and 802 is irrelevant. Finally, even if the Federal Rules of Evidence did apply to this Court's admissibility determination, the declaration's attachments satisfy the prerequisites of the business record exception to the hearsay rule. Fed. R. Evid. 803(6). Mr. Baker's declaration is relevant to the circumstances surrounding the document production and should be considered.

**E. The Supplemental Evidence Supports Plaintiff's Existing Evidence That It Could Prepay Its Mortgage.**

A fine-toothed examination of the existing record demonstrates that significant indications already exist that the financial status of the property or that of the partnership was such as to reasonably assume prepayment. (*Cf.* Order at 39). For example, at the time of the partnership's intended prepayment in January 2000, the outstanding balance of the agency's mortgage loan was $679,073. (PX 104 at 9) The audited Comparative Financial Statements of Eastwood Apartments for the year ended December 31, 1998, a full year *before* January 2000, indicates a property value (stated solely at cost) of $1,197,008. This existing evidence constitutes a clear indication that the Plaintiff's equity position in the complex – a full $517,935 – was favorable and fully supports the partnership's ability to prepay. (Order at 40) Thus, without any aid from the partners' personal finances, the partnership could prepay its FmHA mortgage loan and obtain a conventional loan from the value of the property itself.

In addition, Plaintiff has recently located, and offers as supplemental evidence, certain financial documents including: an IRA statement of Mr. Robert Baker from January 2000 (Ex.

A), a stock holdings statement for Mr. Robert Baker from early 2000 (Ex. B), and a financial statement of Mr. Robert Baker from March 1999 (Ex. C). One document shows that Mr. Baker had an IRA account valued at $455,713 in January 2000. (Ex. A) Mr. Baker also owned 2,257 shares of Exxon – Mobil Stock, worth $178,021 at that time. (Baker Decl. ¶ 9; Ex. B) These two sources alone total $633,734. In March 1999, shortly before the prepayment date, Mr. Baker's savings account balance was $127,251.91. (Ex. C) These records indicate Mr. Baker was able to personally cover, with a total of $760,986, the entire outstanding mortgage of $679,073 (PX 104 at 9).[9]

This evidence is consistent with and supports Mr. Baker's unchallenged trial testimony about the partnership's financial wherewithal to prepay its FmHA mortgage. The supplemental financial information of the partners simply adds to the available options the partnership could have taken to prepay the mortgage. When one looks at the entire financial situation of the partners and the partnership, Eastwood was able to obtain conventional financing in many different ways.

[9] Further, Mr. Baker has obtained a letter from Mr. Bill Pasek of B.P. Financial L.L.C. stating that he would have arranged funding for the partnership to prepay the FmHA mortgage based on his prior business experience with Mr. Baker, his review of the project's financial statements, and his knowledge of Mr. Baker's financial assets and the Mexico, Missouri area. Ex. D.

**CONCLUSION**

For the foregoing reasons, Plaintiff Eastwood respectfully requests that the Court grant it leave to supplement the record and admit the additional evidence cited herein or, in the alternative, that the Court hold that the evidence of record is sufficient to support Plaintiff's claim for damages.

Respectfully submitted,

Dated: December 6, 2004

**s/Jeff H. Eckland**

**Filed Electronically**

Mark J. Blando, Of Counsel
ECKLAND & BLANDO LLP
700 Lumber Exchange
10 South Fifth Street
Minneapolis, MN 55402
Telephone: (612) 305-4440
Facsimile: (612) 305-4439