IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| FRANCONIA ASSOCIATES, | ) | |
| | ) | |
| Plaintiff, | ) | No. 97-381C |
| | ) | (Judge Allegra) |
| v. | ) | |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S MOTION TO RECONSIDER AND AMEND JUDGMENT

Pursuant to Rule 59(d) of the Rules of the United States Court of Federal Claims, defendant respectfully requests that the Court reconsider and amend the December 31, 2004 judgment in this matter. The damages awarded in the judgment are based these upon the premise that plaintiff, Franconia Associates ("Franconia"), would not pay in full its loans under section 515(b) of the Housing Act of 1949 for the remainder of the applicable loan term – i.e., until 2025 in the case of Riverfront Apartments and until 2029 in the case of Sunrise River Apartments – and that, therefore, each of these properties would remain subject to the restrictions contained in the applicable loan documents throughout the remaining term of the loan. This premise, however, is contrary to undisputed evidence offered by the Government subsequent to the trial but prior to the issuance of the Court's decision, establishing that, subsequent to the trial, Franconia in fact paid the remaining balance of both of these loans, the Government issued satisfactions of liens with respect to these loans, and the properties were no longer in the section 515 program and are no longer subject to the restrictions contained in the loan documents.

## DEFENDANT'S BRIEF

### Statement of the Case

At trial, Franconia offered a calculation of damages based upon a "lost cash flow analysis," comparing the past and anticipated cash flows available to it from operating Riverfront Apartments and Sunrise River Apartments under the section 515 program with the past and anticipated cash flows that Franconia contended it would have received by operating these projects as conventional rental properties free of section 515 program restrictions. The calculations were based upon the premise that these properties would remain in the section 515 program and continue to be subject to the restrictions contained in the applicable loan documents for the remainder of the applicable loan term; accordingly, future lost cash flows were estimated for that entire period, i.e., until 2025 in the case of Riverfront Apartments, PX 26, 27, and until and until 2029 in the case of Sunrise River Apartments, PX 79, 80.

Because of post-trial events, the scenario upon which these calculations were based did not occur. On December 4, 2003, the Government filed a motion for leave to supplement the evidentiary record by adding certain documents evidencing these events. These documents consisted of the declaration of Jackie J. Morris, Multi-Family Housing Program Director for the United States Department of Agriculture ("USDA")-Rural Development in Minnesota, with attachments, including a copy of a screen print from the USDA's automated accounting system indicating the date of payment of the full outstanding loan balance, and a copy of the Satisfaction of Lien discharging the mortgage, for each of these properties. These documents establish that (1) the section 515 loans made to Franconia for Riverfront and for Sunrise River Apartments were paid on October 20, 2003 and July 25, 2003, respectively; (2) the Government

released the mortgages that secured these loans; and (3) Franconia terminated its participation in the section 515 program with respect to Riverfront Apartments and Sunrise River Apartments, with a requirement only to extend the then-current tenant leases for 180 days beyond the final loan payment date.

Franconia opposed our motion for leave to supplement the record with this evidence, but, significantly, it did not dispute that the events described above occurred. In an order dated March 5, 2004, the Court stated:

> Based on [the parties'] filings, the court is of the view that the record should be supplemented with the information defendant has identified. To avoid any problems, the parties are hereby ordered to attempt to enter into a stipulation that incorporates the cited information. . . . In the event that the parties cannot agree regarding this stipulation, the court will admit the information in the form it deems appropriate.

Order of March 5, 2004 (emphasis added). After the parties proved unable to reach agreement upon the terms of such a stipulation, the Court issued another order, stating:

> On May 24, 2004, a status conference was held in this matter regarding the stipulation requested by the court in its March 5, 2004, order. As a result of the discussions held at the status conference, the court has determined that it will treat as part of the trial record herein the declaration of Jackie J. Morris and the documents attached thereto, which accompanied defendant's December 4,2003, motion to supplement the record based on post-trial events. . . .

Order of May 24, 2004 (emphasis added).[1]

---

[1] The order also permitted Franconia to "file a counter-declaration of fact," and Franconia did so. The counter-declaration expressed a subjective lack of confidence that the projects were truly free of the program's restrictions, anxiety about pending and anticipated litigation with various third parties that might affect the interests of Franconia or of the declarant, and a litany of grievances concerning the history of Franconia's relationship with the Government under the section 515 program and the circumstances that gave rise to the payment of the loans in question. The counter-declaration did not, however, dispute that the Riverfront and Sunrise River loans (continued...)

In its August 30, 2004 opinion in this case, the Court ruled that adjustments were necessary for all of the damage calculations, including those for Riverfront Apartments and Sunrise River Apartments, based upon the Court's conclusions concerning the proper discount factors to be applied. Certain additional adjustments were found necessary for certain other projects. No adjustments were found necessary, however, to account for the fact that the Riverfront and Sunrise River loans had been paid.

The Court directed the parties to file a status report proposing the amount of judgment that should be entered for each project pursuant to the Court's determination of the issues, adding that "[t]his process shall not be employed to reargue or seek reconsideration of any of the points resolved by this court's findings and conclusions." Franconia Associates v. United States, 61 Fed. Cl. 718, 771 (2004). Accordingly, on October 29, 2004, the parties submitted a joint status report proposing judgment amounts, while expressly reserving "their right to appeal or otherwise seek relief from any judgment entered herein." These proposed amounts were incorporated in the Court's December 17, 2004 order directing entry of judgment effective December 31, 2004, and in the judgments entered pursuant to that order.

Although we believe that the amounts awarded to Franconia by the judgment in this case for the the Riverfront Apartments and Sunrise River Apartments is consistent with the Court's August 30, 2004 opinion, the judgment and the underlying decision should be reconsidered and amended to account for the fact that the section 515 loans for these projects were paid in full in 2003, by eliminating damages for all subsequent years.

---

[1](...continued)
had been paid in full, that the Government had released the mortgages securing those loans, and that Government was no longer imposing any section 515 requirements on these projects.

ARGUMENT

In a footnote contained in its August 30, 2004 opinion in this case, the Court obliquely referred to the payment of the Riverfront Apartments and Sunrise River Apartments loans as "certain post-trial events involving Franconia Associates that were the subject of a motion to supplement the record filed by defendant." 61 Fed. Cl. at 756 n.67. In the same footnote, the Court stated: "[A]t various points in this opinion, this court has relied upon subsequent events to validate assumptions employed in calculating cash flows here. Defendant, however, would have this court modify the stream of those flows based upon events that have not occurred and, in the court's estimation, are unlikely to occur." Id (emphasis added).

In making this statement, the Court appears to have overlooked the primary purpose for which the Government introduced evidence of the referenced post-trial events, and to have focused instead upon the secondary relevance of these events. The Court appears to have focused upon the relevance of these events to the validity of the assumptions employed in calculating cash flows for all of the projects addressed by the decision. In the case of projects other than Riverfront Apartments and Sunrise River Apartments, these are "events that have not occurred," and, although we believe the Court has underestimated the probability of similar events occurring with respect to other projects in the future, we recognize that this probability was an issue for the Court to determine. In the case of Riverfront Apartments and Sunrise River Apartments, however, these are events that have occurred.

To the extent that the Court considered the relevance of these events to damages for breach of the Riverfront and Sunrise River contracts, it appears that the Court did so only in terms of whether they constituted mitigating events that should have been credited to the

Government in Franconia's discounted cash flow calculation. Thus, in the text where the cited footnote appears, the Court observed:

> cases adopting the discounted cash flow method of calculating lost profits generally ignore events subsequent to the breach. As noted by one leading commentator, "[o]ne effect of a market damages measurements ... is to ignore later events, whether they are favorable to the plaintiff or unfavorable." Dobbs, § 3.8(2) at p. 379; see also id. at § 3.3(3); LaSalle [Talman Bank, FSB v. United States,], 317 F.3d [1363,] 1373 [Fed. Cir. 2003)](a " 'claim accrue[s] at once in the theory of the law and it does not inquire into later events' ") (quoting Southern Pacific Co. v. Darnell Taenzer Lumber Co., 245 U.S. 531, 533-34, 38 S.Ct. 186, 62 L.Ed. 451 (1918)). [Footnote omitted.] Accordingly, if, in the context of mitigation, it is unreasonable to assume that these options would be invoked, they simply fall out of the damages equation . . . .

61 Fed. Cl. at 756-57. The post-breach events in the cases cited, however, did not prevent damages from occurring; they merely produced arguably-offsetting cash flows for the non-breaching party, which were invoked as a basis for reducing the award for damages found to have occurred. In LaSalle, the Federal Circuit held that profits resulting from capital investments in the plaintiff corporation by a parent corporation, made for the purpose of a recapitalization that was necessary as a direct result of the breach, were properly credited against the plaintiff in mitigation, but that the same was not true of profits from subsequent capital investments made for reasons independent of the breach. In Southern Pacific, the Supreme Court held that the plaintiffs were entitled to recover from railroads the full amount that they were overcharged, despite the fact that the plaintiffs were able to pass on the cost of the overcharges to their customers. In both of these cases, the damages allowed were for losses actually sustained, although the losses were recouped as a result of separate transactions.

The post-trial events pertaining to Riverfront Apartments and Sunrise River Apartments did not merely mitigate damages; they terminated the source of the damages, and thus prevented

future damages. The damages claimed in connection with these projects were the lost cash flows resulting from the projects' having to remain in the section 515 program and continue to be subject to the program's restrictions. Damages were awarded for past lost cash flows as well as future lost cash flows, until 2025 in the case of Riverfront Apartments, PX 26, 27, and until and until 2029 in the case of Sunrise River Apartments, PX 79, 80, upon the premise that the projects would remain in th program until those dates. The undisputed fact is, however, that these projects are no longer in the section 515 program and are no longer subject to the restrictions contained in the loan documents.

Thus, the question here is not whether plaintiffs' compensation for future losses resulting from a breach should be reduced by gains from post-breach events. Rather, the question is whether plaintiffs should be compensated for non-existent losses – losses that post-trial, pre-judgment events have prevented from occurring at all. Neither precedent nor reason supports compensation for losses of the later kind.

Finally, to award damages to Franconia in connection with Riverfront Apartments and Sunrise River Apartments for years after 2003 would violate the cardinal principle that "the non-breaching party should not be placed in a better position through the award of damages than if there had been no breach." Bluebonnet Sav. Bank, FSB v. United States, 339F.3d 1341, 1345 (Fed. Cir. 2003). The award of damages granted to Franconia is the amount of additional profit that the Court determined Franconia would have earned from the date of breach until 2025 in the case of Riverfront and until and until 2029 in the case of Sunrise River, if there had been no breach and the projects were operated free of section 515 program restrictions. These damages should have been in lieu of the additional profits that, presumably, would actually have been earned in the market if there had been no breach. Yet, these projects are now free of section 515

program restrictions. As a result, if the damages award stands, Franconia will have its cake and eat it. Franconia will receive, through the damages award, the full amount of additional profit it claims these projects would have earned as unrestricted conventional rental properties for a period extending more than 20 years into the future, and, in addition, it is now free to earn whatever it can with these projects as the unrestricted conventional rental properties that they now are. This inappropriately places Franconia in a far better position through the award of damages than if there had been no breach.

## CONCLUSION

For the foregoing reasons, the judgment and the underlying decision should be reconsidered and amended to eliminate Franconia's damages for all years subsequent to 2003.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

**s/David M. Cohen**
DAVID M. COHEN
Director

**Filed electronically**

**s/Shalom Brilliant**
SHALOM BRILLIANT
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Telephone: (202) 305-7561
Facsimile: (202) 305-7643

Attorneys for Defendant

January 3, 2005