# In the United States Court of Federal Claims

Nos. 97-3812C, 97-3814C , 97-38124C, and 97-38128C

(Filed: January 10, 2005)

| | | |
|---|---|---|
| FRANCONIA ASSOCIATES, ET AL., | * | |
| | * | Motion to reopen record to receive "new" |
| Plaintiffs, | * | evidence following issuance of an |
| | * | opinion; Nature of motion to reopen; |
| v. | * | RCFC 59(a)(1); Evidence previously |
| | * | available within the meaning of RCFC |
| THE UNITED STATES, | * | 59(a)(1); Need for finality; Motion |
| | * | denied. |
| Defendant. | * | |

## ORDER

In these cases (and those consolidated herewith), owners of 41 properties entered into mortgage contracts with an agency of the United States in exchange for providing low- and moderate-income rural housing. On August 30, 2004, following trial, this court found that the United States had breached these mortgage contracts by significantly restricting the prepayment rights previously granted therein. While the court concluded that damages had been proven as to 37 of the properties at issue, it found that no damages were owed with respect to four housing complexes – Rolling Hills, Scenic Valley, Eastwood and Fox Ridge II – because the trial record was "essentially devoid of any indication that their owners had the capacity to prepay at any point prior to trial." *Franconia Associates v. United States*, 61 Fed. Cl. 718, 748 (2004). The court noted that such evidence had been provided with respect to each of the other properties involved here, observing that "the evidence produced as to the prepayment capacity of the other complexes only serves to highlight the failure of proof as to the four properties in question." *Id*. As to the latter properties, the court concluded that "the lost profits sought by plaintiffs were not proximately caused by this breach as insufficient evidence has been provided to demonstrate a capacity for prepayments." 61 Fed. Cl. at 769.

On October 30, 2004 – two months after this opinion was issued and sixteen months after trial was concluded – the plaintiff/owners of the four properties each filed a "Motion for Leave to Supplement the Record," seeking to supply evidence of their respective ability to prepay. Defendant has vigorously objected to these motions, claiming that these plaintiffs are not entitled to a second bite at the apple. It asseverates that the evidence in question was within plaintiff's control at the time of trial and is of the same sort that was introduced with respect to all the other properties. Defendant further contends that the admission of this evidence at this late date would require the reopening of trial to allow it to mount an appropriate response.

As a threshold matter, the court must reject several faulty premises upon which plaintiffs' motions proceed. Principal among these is the contention that plaintiffs were somehow caught off guard when the court rendered findings – in plaintiffs' words, "*sua sponte*" – as to their ability to prepay their mortgages. This claim can most charitably be described as fanciful. An essential aspect of proving that the loss of the prepayment right here proximately caused damages was to demonstrate the individual plaintiff's ability to prepay – as described in plaintiff's post-trial brief (at 39), "that each plaintiff would have exercised its termination option but for the defendant's repudiation." Plaintiffs certainly knew this was an issue in the case – or at least should have – as defendant, in its pretrial memorandum (at 45), asserted that plaintiff's claims were "based upon speculation not only concerning what would have happened if they had prepaid their loans, but also concerning whether and when they would have sought to prepay and ***whether they would have been able to do so***." (emphasis added). Responding to the latter challenge, for property after property – 37, in all – plaintiffs' counsel introduced specific testimony and documents relating to a given owner's ability to prepay; but, they did not do so for the four properties at issue. Accordingly, plaintiffs' trumpeting aside, this is not a case in which the court unexpectedly faulted plaintiffs' proof on grounds not foreseen.

Nor is the court persuaded by plaintiffs' efforts to demonstrate that its findings regarding the four properties at issue were erroneous. As detailed in this court's original opinion, there is essentially nothing in the record that supports plaintiffs' individualized claims regarding their ability to prepay. *Franconia*, 61 Fed. Cl. at 748. Contrary to plaintiffs' claims, the missing evidentiary link is not supplied by the somewhat cryptic statements made by one of its experts regarding the general ability of the plaintiffs, as a group, to prepay their mortgages. Those statements neither reference particular individuals nor any specific evidence related thereto, and, without more, most likely were based on the fact that the wide majority of the owners had the demonstrated capacity to prepay. They simply will not bear the evidentiary burden plaintiffs belatedly pile upon them.

It remains to determine whether plaintiffs should be allowed to supplement the record with evidence of their capacity to prepay. The parties – who agree on little else – all harken to the Supreme Court's opinion in *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 331 (1971), for the unremarkable proposition that a "motion to reopen proof" is addressed to the "sound discretion of the court." *See also Ammar v. United States*, 342 F.3d 133, 141 (2d Cir. 2003); *Yuba Natural Resources, Inc. v. United States*, 904 F.2d 1577, 1583 (Fed. Cir.1990). Conspicuously absent from their briefs, however, is any reference to a rule, applicable in this court, that would authorize the requested relief. Perhaps this omission is understandable or even purposeful, as research reveals that the decisional law regarding "motions to reopen proof" is somewhat unsettled, with various criteria being employed somewhat dependent upon when, during the course of proceedings, such a motion is filed.

The great majority of motions to reopen proof involve situations in which a party seeks to introduce additional proof after the close of its case, but before trial is completed, or after the fact-finder has the case under advisement, but before a decision is rendered. *See* James Wm.

Moore, Moore's Federal Practice ("Moore's"), § 59.13[3][c] (3d ed. 2004) ("a motion to reopen is most commonly made before the jury has returned its verdict, or while the judge has the case under advisement in nonjury actions."). In these circumstances, courts usually analyze such motions by reference to Rule 611(a) of the Federal Rules of Evidence, which requires the court to "exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence."[1] Where, however, the motion is made later, after proof is closed and fact findings rendered, courts tend to treat such motions to reopen as the equivalent of a motion for a new trial under Rule 59 of the Federal Rules of Civil Procedure.[2] Still other cases have held that a motion to reopen lies at the interstices of Rules 59 and 60 of the Federal Rules of Civil Procedure.[3] And, like the parties, more than a few cases have reviewed such motions without citing any rule, particularly appellate decisions simply applying an abuse of discretion standard to a trial court ruling. *See, e.g., Zenith Radio*, 401 U.S. at 332; *Ammar*, 342 F.3d at 141.

In the court's view, a motion to reopen proof filed after a final opinion has been rendered is best viewed, either directly or by analogy, as being controlled by RCFC 59(a)(1). That rule seemingly anticipates the situation *sub judice*, as it provides that the court may "take additional testimony" and "amend findings of fact" "for any of the reasons established by the rules of common law or equity applicable as between private parties in the courts of the United States."[4]

---

[1] *See, e.g., United States v Vinson*, 606 F. 2d 149, 155 (7th Cir. 1979); *United States v. McDonough*, 603 F.2d 19, 22 (7th Cir. 1979); Charles Alan Wright & Victor James Gold, Federal Practice and Procedure § 6164 (1993) (discussing numerous cases).

[2] *See B.V. Bureau Wijsmuller v. United States*, 702 F.2d 333, 341-42 (2d Cir. 1983); *Welch v. Grindle*, 251 F.2d 671, 676 (9th Cir. 1957); *Patterson v. Nat'l Life & Acc. Ins. Co.*, 183 F.2d 745, 747 (6th Cir. 1950); *Blytheville Cotton Oil Co. v. Kurn*, 155 F.2d 467, 470 (6th Cir. 1946); *see also Schoenholtz v. Doniger*, 112 F.R.D. 110, 112 (S.D.N.Y. 1986).

[3] *See Coal Processing Equip., Inc. v. Campbell,* 211 U.S.P.Q. 163, 164, 1981 WL 40540 (S.D. Ohio 1981) ("'motion to reopen' is not specifically contemplated by the Federal Rules of Civil Procedure, however it is well established in federal procedure and is generally considered to be an amalgamation of Rules 59 (new trial) and 60 (relief from judgment)."); *Caracci v. Brother Int'l Sewing Mach. Corp.*, 222 F. Supp. 769, 777 (E.D. La. 1963), *aff'd*, 341 F.2d 377 (5th Cir. 1965) (motion to reopen and take additional testimony is "cannibalization" of qualities found in Rules 59 and 60).

[4] While some authorities suggest that Rule 59 of the Federal Rules of Civil Procedure applies only after the entry of judgment, that view does not account for the language in Rule 59(a), as well as RCFC 59(a)(1), indicating that, in granting such a motion, the court may "open the judgment ***if one has been entered.***" (emphasis added). The latter clause would make no sense if this rule applied only after judgment. Indeed the Advisory Committee Notes to the 1995 amendments to Rule 59 suggest that such motions may be filed prior to the formal entry of judgment. Even before these comments, most courts applied the rule in this fashion. *See, e.g.,*

A motion may be granted under this rule where the movant shows "'either that: (a) an intervening change in the controlling law has occurred, (b) evidence not previously available has become available, or (c) that the motion is necessary to prevent manifest injustice.'" *Bannum, Inc. v. United States*, 59 Fed. Cl. 241, 243 (2003) (quoting *Citizens Fed. Bank, FSB v. United States*, 53 Fed. Cl. 793, 794 (2002)); *Bishop v. United States*, 26 Cl. Ct. 281, 286 (1992); *see also Independence Park Apartments v. United States*, 62 Fed. Cl. 684, 685-86 (2004). To benefit from the safe harbor concerning "evidence not previously available," the movant must show that the "failure to discover the evidence in time for the trial was not due to a lack of diligence on the part of the applicant." *Toledo Scale Co. v. Computing Scale Co.*, 261 U.S. 399, 419-22 (1922).[5]

In the instant case, plaintiffs' failure to present evidence regarding their ability to prepay is utterly without excuse. The evidence in question was not previously unavailable, but instead is financial information that, in advance of trial, either was within plaintiffs' possession or readily obtainable. Indeed, representatives of each of the affected plaintiffs certainly knew about these matters and could have been asked about them when they testified at trial – as other witnesses were.[6] Plaintiffs offer no real justification for not producing this evidence in either testimonial or documentary form at trial, other than the excuse – rejected above – that they did not know that such evidence was required. Even were the court convinced of plaintiffs' nescience – and it is not – that would merely constitute evidence of plaintiffs' lack of diligence in preparing its case and would not be exculpatory, but damning. Contrary to the implications in plaintiffs' briefs, it was not for this court, in advance of trial, to provide plaintiffs with a map revealing every contour of what they would need to prove in regards to causation in order to recover lost profits. Rather, it was incumbent upon plaintiffs to prove every element of their cases at trial – to know the law's requirements for proving liability and damages, and to marshal and offer the evidence necessary for that purpose. *See Westinghouse Elec. & Mfg. Co. v. Wagner Elec. & Mfg. Co.*, 225 U.S. 604, 616 (1912) (noting the "general proposition that the plaintiff must prove its case and

---

*Larez v. Los Angeles*, 946 F.2d 630, 636 (9th Cir. 1991); *Dunn v. Truck World, Inc.*, 929 F.2d 311, 313 (7th Cir. 1991). At all events, the court notes that the fact the motion here was made before the entry of judgment is serendipitous. Judgments reflecting the court's opinion as to the four properties in question were only inadvertently delayed, owing to the court's failure to issue a specific order requiring their dismissal.

[5] *See also Joseph v. Terminix Int'l Co .*, 17 F.3d 1282, 1285 (10th Cir.1994); *Gov't Financial Servs. One Ltd. P'ship v. Peyton Place*, 62 F.3d 767, 775 (5th Cir. 1995); Moore's, § 59.13[2][d][iii] ("movant must have been excusably ignorant of the facts at the time of the trial despite due diligence in an effort to learn about the facts of the case").

[6] Such testimony, for example, could have been supplied by Mr. Maki, for whom bank records allegedly were not available prior to trial. Nonetheless, given the diverse nature of the documents offered to prove the prepayment capacity of the plaintiffs which owned the other 37 properties, the court doubts that there were not other documents, readily available to plaintiff's counsel, that might have demonstrated Mr. Maki's capacity to prepay.

carry the burden imposed by law upon every person seeking to recover money or property from another"). Ultimately, then, the sockdolager is this: plaintiffs have not shown that the evidence in question was previously unavailable, that is, that their failure to produce this evidence in some form during trial was not attributable to a lack of diligence. *See Enzo Biochem, Inc. v. Calgene, Inc.*, 188 F.3d 1362, 1379-80 (Fed. Cir. 1999) (denying a motion to reopen finding that "the evidence was not newly discovered by Enzo, and Enzo offers no reason why it did not produce it at trial").

In a last ditch attempt to resurrect their cases, plaintiffs charge that the failure to grant their motions would result in injustice. To be sure, there is indication that the evidence plaintiffs offer could remedy the factual deficiencies previously identified by the court – that, however, is not a certainty, as, *inter alia*, defendant has not had a full opportunity to contradict this evidence. Nonetheless, the question here is not simply who wins or loses. Other important considerations are relevant, none the least of which is finality, a concept the Supreme Court has stated is "[o]ne of the law's very objects." *McClesky v. Zant*, 499 U.S. 467, 491 (1991). Granting plaintiffs' motions would be tantamount to holding that any plaintiff in this court could respond to adverse fact findings by supplying evidence designed to remedy the gaps in its prior proof. Such a rule – more munificent than a mulligan in duffers' golf – would have few theoretical limits. For one thing, tt would apply not just to plaintiffs, but to defendant, which presumably would be afforded a second opportunity to respond with evidence to "preliminary" findings establishing liability and damages. It would be as if every opinion were invisibly stamped with the word "DRAFT," with litigation protracted until all remedial rounds of evidence were received and the court had completed serial revisions to its findings. Such a cumbrous approach would not only strike at finality and make a mockery of this court's pretrial procedures, but also would undermine judicial efficiency and economy – interests that, at least in the circumstances of this case, counterbalance the possibility that a given plaintiff might lose when, if offered a second chance, it might prevail. As the Court of Claims long ago observed, "[t]he court has a right to know before it decides [the controversy at hand] whether the parties have anything further to present." *General Elec. Co. v. United States*, 416 F.2d 1320, 1322 (Ct. Cl. 1969); *see also Mega Constr. Co., Inc. v. United States*, 29 Fed. Cl. 396, 404 (1993).

While courts have not always agreed on how to analyze motions to reopen proceedings to receive additional evidence, they have uniformly denied such motions made after the entry of an opinion or a verdict, where, as here, the evidence offered was not newly-discovered or previously unavailable. *See, e.g., Ammar*, 342 F.3d at 141 (no abuse of discretion where court denied motion to reopen made after trial had concluded and the court had announced its liability findings, where party "had ample opportunity provide evidence during trial"); *Patterson v. Nat'l Life & Acc. Ins. Co.*, 183 F.2d at 747-48 (motion to reopen properly rejected where evidence was not new and motion was not made until "after the District Judge had given his oral ruling on the factual issue involved"); *Blytheville Cotton Oil*, 155 F.2d at 471 (affirming denial of motion filed after judgment entered in a bench trial, observing that defendant "could readily have submitted the subsequently proffered proofs at the trial"); *Korea First Bank v. Lee*, 14 F. Supp.2d 530, 531-32 (S.D.N.Y. 1998) (denying motion to reopen filed after bench trial and judgment, concluding

defendant "may not reopen the trial record simply because he wants another bite at the apple now that his trial strategy has resulted in defeat"). Indeed, in *Downey v. Denton County*, 119 F.3d 381, 387 (5th Cir. 1997), the Fifth Circuit, in upholding the denial of motion to reopen, went so far as to conclude that a contrary ruling would have been an abuse of discretion, stating that "if the failure of the party to submit the evidentiary materials in question is attributable solely to the negligence or carelessness of that party's attorney, then it would be an abuse of discretion for the court to reopen the case and consider the evidence." *Id*. at 387 (citations omitted).[7] The facts here do not warrant a different result.

Although often identified as rejecting the "sporting contest" theory of trials, Roscoe Pound once wrote, the "[a]dministration of justice according to law means administration according to standards, more or less fixed, which individuals may ascertain in advance of controversy and by which all are reasonably assured of receiving like treatment." Roscoe Pound, *Justice According to Law*, 13 Columbia L. Rev. 696, 705 (1913). One of the standards upon which "the litigation process rests" is "the assumption that both parties present their case once, to their best advantage." *Bishop v. United States*, 26 Cl. Ct. 281, 286 (1992). At trial, plaintiffs had a full and adequate opportunity to make evidentiary presentations and, at this late juncture, must live with the results. The four motions at issue for leave to supplement the record are all hereby **DENIED**. The Clerk shall dismiss the complaints in the four cases involved (Nos. 97-3812, 97-38124, 97-38128, 97-3814).[8]

**IT IS SO ORDERED.**

s/Francis M. Allegra
Francis M. Allegra
Judge

---

[7] *See also General Elec.*, 416 F.2d at 1321 ("where a party adversely affected by the court's decision on the issue has had fair notice that the question may well be in the case, has had a fair chance to present its position, has failed to do so, and gives no sufficient excuse for its failure, a demand for post-decision relief will normally be rejected"); *Seldovia Native Ass'n, Inc. v. United States*, 36 Fed. Cl. 593, 594 (1996) ("[M]otions for reconsideration should not be entertained upon 'the sole ground that one side or the other is dissatisfied with the conclusions reached by the court, otherwise the losing party would generally, if not always, try his case a second time, and litigation would be unnecessarily prolonged.'") (quoting *Roche v. District of Columbia*, 18 Ct. Cl. 289, 290, 1800 WL 1263 (1883)).

[8] In its prior opinion, the court had indicated that these cases should be dismissed because nominal damages may not be awarded against the United States, *Franconia*, 61 Fed. Cl. at 769, but no specific order was made to that effect and a review of the docket reveals that the dismissals were not effectuated.