**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

---

FRANCONIA ASSOCIATES,
a Limited Partnership, et al.,

Plaintiffs,

**Case No. 97-381C**
**Judge Francis M. Allegra**

v.

THE UNITED STATES

Defendant.

---

**PLAINTIFF FRANCONIA ASSOCIATES'S OPPOSITION TO MOTION TO RECONSIDER AND AMEND JUDGMENT**

---

Jeff H. Eckland
Attorney For Plaintiffs
ECKLAND & BLANDO LLP
700 Lumber Exchange
10 South Fifth Street
Minneapolis, MN 55402
612-305-4440

*Of Counsel*:
Mark J. Blando
ECKLAND & BLANDO LLP
700 Lumber Exchange
10 South Fifth Street
Minneapolis, MN 55402
612-305-4440

## TABLE OF CONTENTS


**Page**

**TABLE OF CONTENTS** ........................................................................... i

**TABLE OF AUTHORITIES** ........................................................................... iii

**INTRODUCTION**........................................................................... 1

**BACKGROUND**........................................................................... 2

**ARGUMENT**........................................................................... 4

I. Defendant's Motion Provides Nothing New That Would Warrant Upsetting Prior Decisions Of This Court .................... 5

II. Franconia Is Still Not Free Of The Injuries Caused By The Government's Repudiation ........................................ 7

A. The Agency's Foreclosure Of The Franconia Properties Violated FmHA Regulations And Does Not Reduce Damages Caused By The Government's Wrongful Repudiation Of Plaintiff's Contract.............................................. 8

B. The Tenants Can Enforce Agency Regulations As Third Party Beneficiaries Of The Contracts Created By Plaintiff And Defendant ............................................................ 10

C. The 2003 Foreclosure Proceedings Are Not Direct Consequences Of The Government's 1994 Breach, And Thus Cannot Be Considered As Mitigation ............................................ 11

D. The Government's Failure To Assert An Affirmative Defense Until After Trial, Even Though It Had Notice Of The Foreclosure Proceedings, Precludes Their Consideration As A Mitigating Factor ............................................................ 14

1. The Government Knew Of The Foreclosure, But Did Nothing At Trial ........................................ 14

2. The Government's Purpose In Foreclosing Is Questionable And Precludes The Government From Receiving The Benefit

Of Speculative Mitigation ........................................................ 15

3. Post Foreclosure Rents Do Not Compensate Franconia For Reduced Rents And Improperly Place The Assumption Of Risk On Franconia ............................................................ 16

E. Defendant Bears The Risk Of Any Uncertainties Caused By Its Repudiating Conduct ..................................................................... 17

**CONCLUSION** ............................................................................................ 17

## TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**


*Alder Terrace, Inc. v. United States*, 161 F.3d 1372 (Fed. Cir. 1998)....................... 11

*Ashton v. Pierce*, 716 F.2d 56 (D.C. Cir. 1983)....................................................... 11

*Benne v. IBM*, 87 F.3d 419 (10th Cir. 1996)........................................................... 4

*Bigelow v. RKO Radio Pictures, Inc.*, 327 U.S. 251 (1946)..................................... 17

*Bluebonnet Sav. Bank, F.S.B. v. United States*, 339 F.3d 1341 (Fed. Cir. 2003)…..... 16

*Commercial Fed. Bank, F.S.B. v. United States*, 59 Fed. Cl. 338 (2004).................. 17

*Franconia Assocs. v. United States*, 61 Fed. Cl. 718 (2004) .................................... 3

*Franklin Sav. Corp. v. United States*, 56 Fed. Cl. 720 (2003).................................. 5, 7

*Fru-Con Constr. Corp. v. United States,* 44 Fed. Cl. 298 (1999)............................. 4, 5

*Glendale Fed. Bank F.S.B. v. United States*, 239 F.3d 1374 (Fed. Cir. 2001)…........ 16

*Holbrook v. Pitt*, 643 F.2d 1261 (7th Cir. 1981)....................................................... 10, 11

*Hughes Comm. Galaxy, Inc. v. United States*, 271 F.3d 1060 (Fed. Cir. 2001)…… 17

*Innovative Home Health Care v. P.T.-O.T. Assocs.*,
141 F.3d 1284 (8th Cir. 1998) ........................................................................ 4

*In re Reese*, 91 F.3d 37 (7th Cir. 1996) .................................................................... 4

*LaSalle Talman Bank v. United States*, 317 F.3d 1363 (Fed. Cir. 2003) ............ 11, 12 17

*San Carlos Irrigation & Drainage Dist. v. United States*,
111 F.3d 1557 (Fed. Cir. 1997)………………………………………….…...... 16

*Seldovia Native Ass'n, Inc. v. United States,* 36 Fed. Cl. 593 (1996)....................... 4

*Southern Pacific Co. v. Darnell-Taenzer Lumber Co.*, 245 U.S. 531 (1918)............ 12, 17

*United States v. Andreas*, 216 F.3d 645 (7th Cir. 2000)............................................ 11

*Whitney Benefits, Inc. v. United States*, 926 F.2d 1169 (Fed. Cir. 1991) ................. 7

**FEDERAL STATUTES**


7 C.F.R. § 1955.15(d)(2)(v) .......... 8, 9

7 C.F.R. § 1955.15(f) .......... 9

7 C.F.R. § 1955.15(f)(2) .......... 9

7 C.F.R. § 1955.18 .......... 9

7 C.F.R. § 1965.85 .......... 8


**MISCELLANEOUS**


Rule 59 of the Rules of the United States Court of Federal Claims .......... 4

William Shakespeare, *Macbeth*, I, iii, 58 .......... 7

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

FRANCONIA ASSOCIATES,
a Limited Partnership, et al.,

Plaintiffs,

**Case No. 97-381C**
**Judge Francis M. Allegra**

v.

THE UNITED STATES

Defendant.

## INTRODUCTION

Plaintiff Franconia Associates opposes Defendant's motion to reconsider and amend judgment. By its motion, Defendant seeks to revoke this Court's judgment, effective December 31, 2004 pursuant to this Court's order of December 15, 2004, regarding Plaintiff's Riverfront and Sunrise River properties. Rule 59, however, requires a showing of extraordinary circumstances based upon a manifest error of law or fact, and Defendant has failed to identify either. Indeed, Defendant offers no additional support whatsoever regarding any of the issues previously decided by this Court.

It is hornbook law that any consideration of events subsequent to trial and not directly related to a Defendant's breach is irrelevant to determining damages. The alleged removal of Plaintiff's property from government supervision, contrary to agency regulations, is not directly related to Defendant's breach and involves a separate transaction altogether. Thus, any change in relationship between the parties subsequent to the close of the trial record is immaterial and, absent a further hearing into the circumstances surrounding that relationship change, would severely prejudice the Plaintiff. As demonstrated by Plaintiff, the future of the Franconia

properties is far from certain, with a probability that actual damages resulting from Defendant's breach will increase. Accordingly, Defendant's motion for reconsideration should be denied.

## BACKGROUND

The trial of this matter was held in June 2003. During the trial, Ms. Marge Alden and Mr. George Vitalis testified at length regarding Riverfront Apartments and Sunrise River Apartments, two of the properties at issue in this case. (Trial Tr. 936-1012.) Prior to the time of the trial – and in fact before discovery had concluded – the Agency had accelerated the loans on both properties and threatened to foreclose if the loans were not paid in full. (*See* Declaration of Marge Alden dated June 10, 2004 ("Alden Decl."), Ex. A (letters of December 31, 2002, declaring the entire indebtedness on both loans "immediately due and payable").) Mr. Vitalis and Ms. Alden anticipated that the partnership would lose its ownership rights during the foreclosure proceeding. (Alden Decl. ¶¶ 14, 18.) At trial, however, Defendant declined to introduce any evidence or elicit any testimony from plaintiffs' witnesses regarding these events. Damages models calculating the losses suffered by each of these two properties as a result of Defendant's actions were then introduced through Plaintiff's experts and admitted into evidence. (PX 26 at 8; PX 27; PX 79 at 9; PX 80.)

The parties then engaged in post-trial briefing through October 27, 2003. Thereafter, on December 4, 2003, Defendant moved to supplement the record based upon certain events that occurred following the close of the trial. In particular, Defendant sought permission to introduce into evidence documents purporting to show that the mortgage loans on Riverfront and Sunrise River properties were prepaid on October 20, 2003 and July 25, 2003, respectively. Plaintiffs opposed the motion on January 15, 2004, asserting that the documents should not be admitted into the record, and Defendant replied on January 22, 2004. The Court then issued an Order on

March 5, 2004 requesting that the parties attempt to enter into a stipulation regarding the new information offered by Defendant.

Plaintiff and Defendant were unable to agree upon the terms of the filing and Plaintiff submitted a separate statement as a result. (*See* Plaintiff's Status Report in Response to the Court's Order of March 5, 2004.) Defendant took exception to Plaintiff's status report and filed a motion to strike that was ultimately denied by the Court. (*See* Defendant's Motion to Strike Plaintiff's Status Report in Response to the Court's Order of March 5, 2004; *and* Order on Motion to Strike, May 21, 2004.) The exchange of briefs did not settle the issue regarding the admissibility of, and the weight to be given to, the Government's proffered post-trial evidence. The Court then held a status conference at the Court of Claims on May 24, 2004. Following oral argument, the Court ordered the Declaration of Jackie J. Morris and the attached documents to be treated as part of the trial record, while simultaneously permitting Plaintiff to file a counter-declaration of fact. (Order, May 24, 2004.) On June 18, 2004, Plaintiff filed a Declaration (dated June 10, 2004) describing the circumstances surrounding the post-trial events described by the Government.

Upon consideration of the series of briefs exchanged during the preceding year and the oral arguments presented by counsel, the Court determined, in its August 30, 2004 decision, the appropriate weight to give the post-trial evidence presented by both parties. The Court adopted well-settled principles of law directing courts to ignore events subsequent to the breach and discouraging wrongdoing parties from foisting benefits upon injured parties. *Franconia Assocs. v. United States*, 61 Fed. Cl. 718, 756-757 (2004). Nonetheless, Defendant has once again presented these issues to the Court.

## ARGUMENT

The Government has presented this Court with a motion, pursuant to Rule 59 of the Rules of the United States Court of Federal Claims, requesting reconsideration of its arguments and an amendment to the judgment effective December 31, 2004 in this matter. RCFC 59(a) provides, in pertinent part:

> A new trial or rehearing or reconsideration may be granted to all or any of the parties and on all or part of the issues, for any of the reasons established by the rules of common law or equity applicable as between private parties in the courts of the United States. On a motion under this rule, the court may open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and direct the entry of a new judgment.

"[M]otions for reconsideration should not be entertained upon 'the sole ground that one side or the other is dissatisfied with the conclusions reached by the court, otherwise the losing party would generally, if not always, try his case a second time, and litigation would unnecessarily be prolonged.'" *Seldovia Native Ass'n, Inc. v. United States*, 36 Fed. Cl. 593, 594 (1996), *aff'd*, 144 F.3d 769 (1998) (quoting *Roche v. District of Columbia*, 18 Ct. Cl. 289, 290 (1883)).[1] "When addressing such a motion, the court is directed 'to consider motions for rehearing [or reconsideration] with exceptional care.'" *Id.* at 594.

Motions for reconsideration must be supported "by a showing of extraordinary circumstances which justify relief." *Fru-Con Constr. Corp. v. United States*, 44 Fed. Cl. 298,

---

[1] *Accord Innovative Home Health Care v P.T.-O.T. Assocs.*, 141 F3d 1284 (8th Cir. 1998) (FRCP 59(e) motions cannot be used to introduce new evidence, tender new legal theories, or raise arguments which could have been offered or raised prior to entry of judgment); *Benne v IBM*, 87 F3d 419 (10th Cir. 1996) (FRCP 59(e) motion to reconsider should be granted only to correct manifest errors of law or to present newly discovered evidence); *In re Reese*, 91 F3d 37 (7th Cir. 1996) (Motion under FRCP 59(e) does not enable party to complete presenting his case after the court has ruled against him).

300 (1999), *aff'd*, 250 F.3d 762 (Fed. Cir. 2000) (citation omitted). This showing of extraordinary circumstances "must be based upon manifest error of law, or mistake of fact, and is not intended to give an unhappy litigant an additional chance to sway the court." *Franklin Sav. Corp. v. United States*, 56 Fed. Cl. 720, 735 (2003), *aff'd*, 97 Fed. Appx. 331 (Fed. Cir. 2004) (citation and internal quotation omitted). The party seeking reconsideration of a judgment must show either (1) that an intervening change in the controlling law has occurred; (2) that previously unavailable evidence is now available; or (3) that the motion is necessary to prevent manifest injustice. *See Fru-con Constr. Co.*, 44 Fed. Cl. at 301 (1998); *accord* Order, Jan. 10, 2005, at 4 (applying Rule 59 analysis). Satisfying this standard "is a very difficult test to pass." *Franklin Sav. Corp.*, 56 Fed. Cl. at 735.

**I. Defendant's Motion Provides Nothing New That Would Warrant Upsetting Prior Decisions Of This Court.**

The Defendant did not raise the possibility of prepayment without restrictions during the trial, even though the Government's foreclosure actions were pending at that time.[2] Since trial, however, the Defendant has filed a series of papers in its attempt to reduce damages as a result of agency action that allegedly expelled Franconia's properties from the section 515 program. The Government has once again requested the Court to limit its liability because, it argues, "[t]he damages awarded in the judgment are based these [sic] upon the premise that plaintiff, Franconia Associates ("Franconia"), would not pay in full its loan under section 515(b) of the Housing Act of 1949 for the remainder of the applicable loan term." (Def. Mot. at 1.)[3]

[2] One proper course of action for the Defendant to follow would have been to request a stay of the pending actions regarding the subject properties. By moving to reduce Defendant's liability post-judgment, the Government effectively seeks to evade the legal consequences of its wrongful breach and impose its own remedy on Plaintiff.

[3] *See also* Defendant's Motion For Leave To Supplement Record Based Upon Post-Trial Events, at 1, Dec. 3, 2003 ("plaintiffs' calculation of damages in connection with these properties is

Defendant acknowledges that the Court disagreed with its conclusions, finding that "[n]o adjustments were found necessary [by the Court] to account for the fact that the Riverfront and Sunrise River loans have been paid." (Def. Mot. at 4 (citing this Court's Aug. 30, 2004 Opinion).) Nonetheless, Defendant now seeks reconsideration of the damages awarded even though the Defendant "believe[s] that the amounts awarded to Franconia by the judgment in this case for the the [sic] Riverfront Apartments and Sunrise River Apartments is consistent with the Court's August 30, 2004 opinion." (Def. Mot. at 4.) Defendant offers nothing new, but instead relies on the following passage to argue that the Court was mistaken by not modifying the damage award in accord with Defendant's prior requests:

> At various points in this opinion, this court has relied upon subsequent events to validate assumptions employed in calculating cash flows here. Defendant, however, would have this court modify the stream of those flows based upon events that have not occurred and, in the court's estimation, are unlikely to occur.

(Def. Mot. at 5 (quoting *Franconia*, 61 Fed. Cl. at 756 n.67) (emphasis in original).) Defendant then argues:

> In the case of Riverfront Apartments and Sunrise River Apartments, however, these are events that have occurred.

(Def. Mot. at 5 (emphasis in original).)

Defendant's confusion in this regard could be due to different interpretations of the word "events." Defendant assumes that "event" necessarily means "prepayment." This interpretation must fail since the mere prepayment of the mortgage does not eliminate the injury to Plaintiff.

---

based upon the premise that … these properties would remain in the section 515 program and continue to be subject to the restrictions contained in the applicable loan documents for the remainder of the applicable loan term"); Defendant's Motion To Strike Plaintiff's Status Report In Response To Court's Order of March 5, 2004, at 3, May 3, 2004 ("plaintiffs' calculation of damages in connection with these properties was based upon the premise that the loans would not be fully paid until the end of the applicable loan term, and that, as a result, these properties would remain in and continue to be subject to the restrictions imposed by the section 515 program").

(*See infra* Part II.) Further, there is serious doubt that Franconia will be able to retain unencumbered possession of the properties (Alden Decl. ¶¶ 2, 4, 12-13, 27, 30), which is likely among the type of events alluded to by the Court in its order. Franconia is not in the position in which it would have been if the Government had simply honored its contract with Franconia, and Defendant's proffered post-trial evidence does not change that. By its actions, the Government has chosen to relent in its regulatory oversight rather than compensate Franconia for its loss. However, once the claim accrues, the choice of remedy is not left in the hands of the breaching party. *See Whitney Benefits, Inc. v. United States*, 926 F.2d 1169, 1175 (Fed. Cir. 1991). Defendant has not demonstrated that the extraordinary circumstances required for a motion for reconsideration exists. By reiterating arguments made over a year ago, Defendant has failed to support its conclusion that this Court's decision is "based upon manifest error of law, or a mistake of fact." *See Franklin Sav. Corp.*, 56 Fed. Cl. at 735. Defendant's actions simply reflect the desire to take another proverbial bite of the apple.

## II. Franconia Is Still Not Free Of The Injuries Caused By The Government's Repudiation.

> "If you can look into the seeds of time, and say which grain will grow and which will not, Speak." William Shakespeare, *Macbeth*, I, iii, 58.

Defendant waited until after trial in order to present the Court with its overly simplistic view of the situation facing Franconia. Defendant asserts that Franconia cannot possibly be injured any further by the Government's actions. However, the Government action does not constitute a belated compliance with the original deal; the government initiated *foreclosure* proceedings on Franconia's two properties. Foreclosure is qualitatively different than owning a property in fee simple because the ownership interest in that property may be terminated altogether. In the many briefs on this issue filed over the last fourteen months, the Government

has offered: 1) no response to ownership concerns directly implicated by the Government's alleged "removal" of the subject properties from the Section 515 program; 2) no response to the removal of restrictions in violation of FmHA regulations; 3) no explanation for failing to raise its affirmative defense at trial; and 4) no response to tenants' rights to enforce FmHA regulations. The Government acknowledged these concerns in a footnote, but failed to respond to them even though Plaintiff has demonstrated that the future of Franconia's properties are far from certain. (Def. Mot. at 3, n.1.) Looking at the entire record, this Court's decision is clearly supported by the evidence and the Government, as the breaching party, should continue to bear the risk of its wrongful conduct.

**A. The Agency's Foreclosure Of The Franconia Properties Violated FmHA Regulations And Does Not Reduce Damages Caused By The Government's Wrongful Repudiation Of Plaintiff's Contract.**

It appears that the evidence supporting the Government's motion to alter or reconsider the judgment was improperly generated by the Agency in contravention of its own regulations.[4] The Agency's regulations provide that "[l]iquidation, whether by voluntary conveyance or foreclosure, will be handled in strict accordance with the provisions of subpart A of part 1955…." 7 C.F.R. § 1965.85. Section 1955.15, in turn, sets forth the foreclosure process, providing that:

> For MFH loans, the acceleration notice will advise the borrower of all applicable "prepayment" requirements, in accordance with subpart E of part 1965 of this chapter. The requirements include the application of restrictive-use provisions to loans made on or after December 21, 1979, prepaid in response to acceleration notices and all tenant and agency notifications…
>
> If the borrower wishes to prepay the project in response to acceleration *<u>and</u> FmHA or its successor agency under Public Law 103-354 makes a determination that the housing is no longer needed*, a minimum of 180 days' notice to tenants is

[4] Defendant has failed to address the apparent violation of Agency regulations even though this issue was discussed in Plaintiff's earlier briefs.

> required before the project can be removed from the FmHA or its successor agency under Public Law 103-354 program.

7 C.F.R. § 1955.15(d)(2)(v) (emphasis added); *see also* 7 C.F.R. § 1955.15(f)(2) ("For MFH loans, the advertisement will state the restrictive-use provisions which will be included in any deed used to transfer title."). Thus, an owner can be released from the program and maintain its property after foreclosure *only if* the Agency determines that the housing is no longer needed in any event.

In the absence of such a "no need" determination, the Agency's foreclosure regulations require it to put the property up for sale and place its own bid on the property. Through any resulting sale, the restrictions on the use of the property must be maintained. *See*, *e.g.*, 7 C.F.R. § 1955.15(f)(2). The Agency's regulations also detail the foreclosure proceeding that the Agency needs to go through in completing any such sale, including specifications for noticing the foreclosure sale, regulations relating to the amount of the Government's bid, the bidding process, and certain Agency reporting requirements pertaining to the foreclosure sale. *See* 7 C.F.R. § 1955.15(f). The regulations also set forth the actions that the Agency must take after acquisition of the property through foreclosure. 7 C.F.R. § 1955.18.

Here, the Agency never made a determination that the projects were not needed in the communities where they were located. To the contrary, Plaintiff introduced evidence at trial showing that the Agency was not able to make a "no need" determination regarding these two projects.[5] Thus, according to the Agency's own regulations, the Agency never should have

[5] On behalf of both of the properties at issue here, Franconia submitted formal requests to prepay, and the Agency made clear that neither property could prepay without restrictions. In fact, after confirming that it desired to prepay without restrictions, the owner conveyed to the Agency its understanding that the Agency had determined that a "no need" designation could not be made for either property. (PX 19; PX 69.) The partners also requested that the Agency notify them immediately if their understanding was incorrect, so that they could prepay without

permitted the partnership to short-circuit the foreclosure process by prepaying without restrictions. Certainly, the Agency never should have brought pressure to bear upon Ms. Alden to prepay without restrictions (as quickly as possible) during the foreclosure proceedings. (Alden Decl. ¶ 8.) Indeed, on January 2, 2003 – pursuant to Agency regulations – the Acting MFH Program Director properly directed personnel not to accept any further payments on these properties "unless the reasons for acceleration are cured or the loan will be paid in full subject to any restrictive-use provisions." (Alden Decl. Ex. B.)

Since the Agency failed to follow its own regulations, it is patently unclear whether the Agency action will stand. (Alden Decl. ¶¶ 2, 12-13, 27.) Had the Agency continued to follow proper procedures in foreclosing on the two properties at issue, the owner would actually stand in a worse position today than assumed in Plaintiff's damage models. Specifically, if the government had sold the properties to a third party or purchased them itself through the foreclosure process, as required by the Agency's regulations, then the subject owner would have lost possession of the properties altogether. In that scenario, the owners would lose not only the opportunity to earn market rents through prepayment, but would also lose the ability to obtain even the modest annual return permitted under the program.

**B. The Tenants Can Enforce Agency Regulations As Third Party Beneficiaries Of The Contracts Created By Plaintiff And Defendant.**

Plaintiff's injuries may well continue because tenants have the right to bring suit against the owners and the Government for any violations of the Agency's regulations. *See Holbrook v.*

---

restrictions if possible. (*Id*.) On Riverfront Apartments, the owners received no further word from the Agency, confirming their understanding that, given the continued demand for affordable housing, it would not be possible for a "no need" determination to be made. (Trial Tr. 988.) With regard to Sunrise River Apartments, the Agency went a step further and expressly confirmed that it had already determined that a "no need" determination could not be made, and that, as a result, the property could only be prepaid subject to restrictions. (PX 827.)

*Pitt*, 643 F.2d 1261 (7th Cir. 1981) (holding building tenants can enforce HUD contracts when contract made for their direct benefit); *see also Ashton v. Pierce*, 716 F.2d 56 (D.C. Cir. 1983) (affirming summary judgment motion for tenants who challenged HUD's failure to monitor and enforce compliance with regulations by local housing authority). "A contract creates a right in a third-party beneficiary if recognition of that right effectuates the intent of the parties and the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance." *United States v. Andreas*, 216 F.3d 645, 663 (7th Cir. 2000) (citations and internal quotations omitted); *see also Holbrook*, 643 F.2d at 1270. Case law is replete with examples of affordable housing owners who improperly have been permitted to prepay their mortgage loans, only to be forced back into their respective affordable housing programs after lengthy litigation brought by such entities as tenant-rights organizations. *See, e.g.*, *Alder Terrace v. United States*, 161 F.3d 1372 (Fed. Cir. 1998).

Here, too, there can be no certainty as to whether the Agency's decision to direct the owners to prepay will not be successfully challenged in court. (Alden Decl. ¶¶ 2, 13.) Indeed, the properties at issue have already been involved in at least two lawsuits that require a refutation of the allegations that serve as the core of the Government's foreclosure proceedings. (Alden Decl. ¶¶ 7, 9.) The Government simply cannot dictate that foreclosures will end the matter because the Government cannot control whether the tenants will assert their rights.

**C. The 2003 Foreclosure Proceedings Are Not Direct Consequences Of The Government's 1994 Breach, And Thus Cannot Be Considered As Mitigation.**

A review of the cases cited by the Defendant further supports the view that prepayment within a foreclosure context should not offset damages. The relevant issue in the case law is not whether there was mitigation; rather, it is whether the alleged mitigation results from direct consequences of the breach or from remote or unrelated activities. As stated in *LaSalle Talman*,

"[a]lthough we conclude that the Court of Federal [C]laims was correct in crediting actual profits after the breach, in mitigation of the injury caused by the breach, we also conclude that the court erred in including remote or <u>unrelated activities</u> and profits thereon as contributing to the mitigation." *LaSalle Talman Bank v. United States*, 317 F.3d 1363, 1371 (Fed. Cir. 2003) (emphasis added). Summarizing this precept later in the same case, the court noted that "precedent distinguishes between remote consequences of contract breach, whether favorable or unfavorable to the non-breaching party, and those directly related to the direct consequences of the breach." *Id*. at 1373.

As an independent test for identifying mitigation, the Supreme Court held in *Southern Pacific* that subsequent profits were not mitigation because there was a lack of privity between the parties and the transactions. *Southern Pacific Co. v. Darnell-Taenzer Lumber Co.*, 245 U.S. 531, 534 (1918) ("it is enough to reply that the unity in this case is not sufficient to entitle the purchaser to recover, any more than the ultimate consumer who in turn paid an increased price….[h]e has no privity with the carrier) (citing cases). Although the standards for identifying unrelated activities, or for disentangling privity among transactions, are difficult to implement, this Court can find some guidance in the principle that "when damages are hard to estimate, the burden of imprecision does not fall on the innocent party." *LaSalle Talman*, 317 F.3d at 1374.

Defendant has failed to provide any reasonable explanation for how the foreclosure proceedings are "directly related" to the Agency's decision to preclude Franconia from prepaying without restrictions since 1994. In this case, prepayment did not involve a belated compliance with the original loan documents; rather, prepayment was permitted only in the context of a foreclosure proceeding. Because commencing foreclosure proceedings is significantly different than following through on original contractual promises made by the

Government, Franconia faces additional legal consequences that the Plaintiff had no occasion or opportunity to address at trial.[6]

As described in M. Alden's Declaration dated June 10, 2004, there remains a significant risk that Franconia Associates "will never be able to get out of the program and raise the rents to market levels – at least not until the full original mortgage terms on the properties expire." (Alden Decl. ¶ 2.) Indeed, as a result of the foreclosure proceedings, Plaintiff may well suffer other damages which are not accounted for in the Court's order of August 30, 2004. This case properly falls into that line of cases which permits full recovery of damages to the Plaintiff where the purported mitigation arises from a separate transaction. Further, Plaintiff's source of the damages was not eliminated upon prepayment within the foreclosure context. Damages began in August 1994.[7] Foreclosing upon Plaintiff's properties nearly ten years after the Government's denial of prepayment by no means comes close to curing continuing damages that commenced in 1994. As yet another hurdle for the Government's claims, the breach at issue arose from an act of Congress while it was the Agency that initiated the foreclosure proceedings. Following the clear precedent set forth above, a lack of relatedness precludes consideration of the foreclosure proceedings, whether ultimately harmful or beneficial to Plaintiff, as a mitigation to damages. As a result, this Court properly concluded that any alleged benefit of the foreclosure proceeding should not be used to reduce the damages flowing from Defendant's breach.

---

[6] Absent an actual prepayment, the consequences of the foreclosure proceedings were not relevant at the time of trial since they had little bearing on liability, and did not aid the Court in determining damages. (*See, generally infra* Part II; Alden Decl. ¶ 23.) However, if the issue had been raised by the Defendant, Plaintiff would have been able to introduce evidence on rebuttal of the adverse legal consequences of a Government-induced prepayment pursuant to foreclosure.

[7] Plaintiff alleged that the breach occurred in 1992; however, the Court ruled that the damages period began in August 1994. (*See* Order, Aug. 30, 2004 at 38.)

**D. The Government's Failure To Assert An Affirmative Defense Until After Trial, Even Though It Had Notice Of The Foreclosure Proceedings, Precludes Their Consideration As A Mitigating Factor.**

Even with notice of foreclosure proceedings, the Government failed to raise its arguments at trial. Had the issue been presented, the Plaintiff would have been able to introduce evidence that the circumstances surrounding the foreclosure proceedings likely would preclude the Franconia properties from achieving market-rate rents. Further, the foreclosures do not cure ongoing injuries beginning in 1994.

*1. The Government Knew Of The Foreclosures, But Did Nothing At Trial.*

The Defendant has failed to offer any justifiable reason for waiting nearly six months after the close of trial, and weeks after the submission of its post-trial briefs, to request leave to submit evidence of the foreclosure proceedings.[8] The Government was aware of this allegedly "new evidence" well before the actual trial took place. For example, in letters dated December 31, 2002, the government notified the owner, Franconia Associates, of its intent to accelerate the loans. (Alden Decl. Ex. A.) This decision was confirmed by a USDA memorandum dated January 2, 2003, wherein Agency personnel were directed not to accept further payments "unless the reasons for acceleration are cured or the loan will be paid in full subject to any restrictive use provisions." (Alden Decl. Ex. B.) This decision was confirmed yet again in a letter from the Agency dated February 13, 2003. (Alden Decl. Ex. C.) There can be no reasonable dispute that

[8] The Government rested its case on June 26, 2003. The parties submitted post-trial briefs on August 27, 2003 and responsive briefs on October 27, 2003. The Government first mentioned the foreclosure proceedings in its Motion for Leave to Supplement the Record on December 3, 2003. The Government has now reiterated its arguments over a year later in its pending January 3, 2005 motion.

the Government had knowledge of these basic facts relating to the pending foreclosures months before trial.[9]

Moreover, Ms. Marge Alden testified at trial as to the background facts relating to the alleged violations that had resulted in the loan accelerations and ultimate foreclosures. (*See* Trial Tr. At 967-969.) The Government could have cross-examined Ms. Alden on these subjects and could have further explored the facts underlying the accelerations and foreclosures, but chose not to do so. At the very least, the Government should have addressed these issues in the significant post-trial briefing completed by the parties.[10]

*2. The Government's Purpose In Foreclosing Is Questionable And Precludes The Government from Receiving The Benefit Of Speculative Mitigation.*

It remains a mystery why, after thwarting Plaintiff Franconia Associates' attempts to prepay for over a decade, Agency employees suddenly ordered Ms. Alden to prepay without restrictions following the trial in this matter.[11] Considering the contentious history between Agency representatives and Plaintiff, the Court should be reluctant to accept the government's actions uncritically. (Alden Decl. ¶ 20.) As discussed in the supporting Declaration of Ms. Alden, Plaintiff Franconia Associates believes that the Agency deliberately permitted it to prepay said loans after the trial in an attempt to jeopardize its right to recover compensatory damages in this action. (Alden Decl. ¶ 21.) Thus, without the opportunity to explore the issues concerning

---

[9] Indeed, the Agency's primary witness at trial, Mr. Larry Anderson, is quoted in an internal USDA document dated February 22, 2002 as stating, about the two properties at issue, that a foreclosure prepayment would require a sale listing to a non-profit during the acceleration period. (Alden Decl. Exs. R, WW at 2.)

[10] The foreclosure payment on the Sunrise River property occurred on July 25, 2003 – before commencement of post-trial briefing. The foreclosure payment on the Riverfront property occurred on October 20, 2003, prior to the close of post-trial briefing in this matter.

[11] If provided the opportunity, Plaintiff would establish that foreclosure proceedings brought by the Agency are very rare, and those that result in unrestricted prepayments by owners who have unsuccessfully tried to prepay for over ten years even more rare.

the Agency's motivations for its actions and whether it violated applicable regulations, the cited information cannot be afforded any serious consideration. If, for example, it can be established that the Government has attempted to manufacture evidence in an attempt to lessen Plaintiff's damages, certainly that evidence could not be relied upon by the Court.

*3. Post Foreclosure Rents Do Not Compensate Franconia For Reduced Rents And Improperly Place The Assumption Of Risk On Franconia.*

The purpose of a damages award is to put non-breaching parties in as good a position as they would have been if there had been no breach, *Bluebonnet Sav. Bank, F.S.B. v. United States*, 339 F.3d 1341, 1344-1345 (Fed. Cir. 2003) (citing *Mass. Bay Transp. Auth. V. United States*, 129 F.3d 1226, 1232 (Fed. Cir. 1997); *San Carlos Irrigation & Drainage Dist. v. United States*, 111 F.3d 1557, 1562-63 (Fed. Cir. 1997), in other words, to give injured parties "the benefits [they] expected to receive had the breach not occurred." *Glendale Fed. Bank FSB v. United States*, 239 F.3d 1374, 1380 (Fed. Cir. 2001) (citing Restatement (Second) of Contracts § 344(a)). Thus, the award of damages is intended to put Franconia in the position in which it would have been if the Government had not repudiated its contractual promise in 1994. The foreclosure proceedings, however, are based on alleged conduct that occurred long after 1994. As a result of the foreclosure proceedings, Plaintiff is still unable to obtain market rents for the properties. (Alden Decl. ¶¶ 2, 27.) Indeed, Franconia's partner faces both pending and potential lawsuits based on the Government's foreclosure actions which charge managerial misconduct. (Alden Decl. ¶¶ 2, 7-13, 28-30.) Considering the goal of placing Franconia in the position it would have been if Franconia had been able to prepay the mortgage and exit the program in 1994, the Government argument that equates foreclosures in 2003 to the unrestrained use of market properties from 1994 onward is simply without merit.

In short, great uncertainty surrounds the ultimate status of the Franconia properties. Indeed, it is precisely because of such uncertainties as to future events that the law recognizes "the endlessness and futility of the effort to follow every transaction to its ultimate result." *Southern Pacific*, 245 U.S. at 534; *Hughes Comm. Galaxy, Inc. v. United States,* 271 F.3d 1060, 1072 (Fed. Cir. 2001). In contravention of well established legal principles, the Government is attempting simultaneously to obtain a benefit from its breach, *i.e.* lower damages, and shift the risk of recovery onto the innocent party.

**E. Defendant Bears The Risk Of Any Uncertainties Caused By Its Repudiating Conduct.**

Under standard legal principles, a defendant is presumed to have assumed the risk of its own improper conduct. "The most elementary conceptions of justice and public policy require that the wrongdoer shall bear the risk of the uncertainty which his own wrong has created." *Bigelow v. RKO Radio Pictures, Inc.*, 327 U.S. 251, 264 (1946); *see also LaSalle Talman*, 317 F.3d at 1374 ("when damages are hard to estimate, the burden of imprecision does not fall on the innocent party"); *Commercial Federal Bank, F.S.B. v. United States*, 59 Fed. Cl. 338, 351 (2004). Certainly, Plaintiff would not be permitted to increase its damages when faced by events that, at least temporarily, appear to move in its favor. By the same token, Defendant cannot be permitted to decrease Plaintiff's damages as a result of its own questionable conduct. Taking such offsets into account would inappropriately shoulder Plaintiff with additional risks which may occur even further in the future. Under the circumstances, it is equitable only for the Defendant to bear the risk of its own wrongful conduct.

## CONCLUSION

Defendant's motion for reconsideration should fail for two main reasons. First, the Government has not presented the Court with anything that would meet the standards imposed

by Rule 59. There are no new facts, legal arguments, or changes in precedent which suggest this Court's decision was based upon a "manifest error of law or fact." The Government's current motion for reconsideration simply regurgitates its earlier motion. Second, the Government's conclusions are not supported by the law or the facts. Even a cursory review of the relevant law, including those cases cited by Defendant, reveals that subsequent events not directly related to the breach are simply immaterial. The Government offers no evidence linking the foreclosure proceedings to the breach in 1994. Although the Government indicates the properties were prepaid, it wholly ignores the implications of its own conduct during the foreclosure of the Franconia properties. Upon examination of the entire record, and in consideration of the legal consequences of the described foreclosure proceedings, the title to the Franconia properties remains clouded. As a matter of equity, as described by precedent, the breaching party – not Plaintiff – should bear the risk of this uncertainty. For all the foregoing reasons, and because the injury caused by the Government has not been cured by its foreclosure proceedings, Defendant's motion to alter the judgment herein should be denied.

Respectfully Submitted,

Dated: March 9, 2005

**s/Jeff H. Eckland**

**Filed Electronically**

Jeff. H. Eckland
Mark J. Blando, Of Counsel
ECKLAND & BLANDO LLP
700 Lumber Exchange
10 South Fifth Street
Minneapolis, MN 55402
Telephone: 612-305-4444
Facsimile: 612-305-4439