IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| FRANCONIA ASSOCIATES, | ) | |
| | ) | |
| Plaintiff, | ) | No. 97-381C |
| | ) | (Judge Allegra) |
| v. | ) | |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S REPLY TO
PLAINTIFF FRANCONIA ASSOCIATES'S OPPOSITION TO
DEFENDANT'S MOTION TO RECONSIDER AND AMEND JUDGMENT

## INTRODUCTION

In support of our request to reconsider and amend the December 31, 2004 judgment awarded to plaintiff, Franconia Associates ("Franconia"), we demonstrated that the damages awarded toFranconia were based upon a premise that was contrary to undisputed evidence admitted into the record subsequent to the trial. The premise was that Franconia would not pay in full its loans under section 515(b) of the Housing Act of 1949 for the remainder of the applicable loan term – i.e., until 2025 in the case of Riverfront Apartments and until 2029 in the case of Sunrise River Apartments – and that, therefore, each of these properties would remain subject to the restrictions contained in the applicable loan documents throughout the remaining term of the loan. The post-trial evidence established, however, that, subsequent to the trial, Franconia in fact paid the remaining balance of both of these loans, the Government issued satisfactions of liens with respect to these loans, and the properties were no longer in the section 515 program and are no longer subject to the restrictions contained in the loan documents.

In its opposition to our motion, Franconia does not dispute any of this. Instead, it raises various ancillary circumstances as reasons for pretending that events did not transpire as they did.

In particular, Franconia argues, in effect, that because it's release from the section 515 program occured at a different time and in a different manner than it should have, this release should be treated as not having occured at all. None of the circumstances and arguments presented by Franconia justifies this pretense.

ARGUMENT

I. The Fact That the Franconia Paid its Section 515 Loans Was Not Addressed in the Court's August 30, 2004 Opinion

Franconia first argues that the Court, in its August 30, 2004 opinion, considered and rejected the argument underlying our request for reconsideration. Franconia states: "Defendant acknowledges that the Court disagreed with its conclusions, finding that '[n]o adjustments were found necessary [by the Court] to account for the fact that the Riverfront and Sunrise River loans had been paid.'" Pl. Opp. 6, quoting Def. Mot. 4.[1] In so stating, Franconia misreads both our brief and the Court's opinion.

In its opinion, the Court did not discuss the fact that the Riverfront and Sunrise River loans had been paid; thus, the Court made no explicit finding at all concerning this matter. The absence of such a finding is not tantamount to a holding that this fact did not warrant an adjustment. It is, rather, an indication that this fact was not sufficiently considered. Indeed, as we noted in our moving brief, the only allusion to this fact contained in the opinion is an oblique reference, in a footnote, to "certain post-trial events involving Franconia Associates that were the

[1] Franconia also argues that we "did not raise the possibility of prepayment without restrictions during the trial, even though the Government's foreclosure actions were pending at that time." Pl. Opp. 5. Our request for reconsideration, however, is not based upon a "possibility of prepayment" that existed during the trial, but upon the actual prepayments that occured after the trial.

subject of a motion to supplement the record filed by defendant." Franconia Associates v. United States, 61 Fed. Cl. 718, 756 n.67 (2004). In the same footnote, the Court acknowledged that "at various points [the Court had] relied upon subsequent events to validate assumptions employed in calculating cash flows," but distinguished what it perceived to be the Government's argument by stating that the Government "would have this court modify the stream of those flows based upon events that have not occurred and, in the court's estimation, are unlikely to occur." Id (emphasis added). The latter statement appears to concern the application of the referenced post-trial events to the cash flows of the projects addressed by the decision in general, not those of Riverfront and Sunrise River in particular – the projects where these events in fact did occur.[2]

II. The Alleged Defects in the Foreclosure Proceedings That Led to the Payment of Franconia's Loans Are Not a Basis for Ignoring These Payments in Calculating Future Damages

Franconia argues that the foreclosure proceedings that led to the acceleration and payment of the loans in question were inconsistent with the applicable regulations, and that, therefore, "it is patently unclear whether the Agency action will stand." Pl. Opp. 10.[3] Franconia cites no statute or regulation providing for the undoing of the payment and the cancellation of the release

---

[2] Franconia further argues: "Defendant assumes that 'event' necessarily means 'prepayment.' This interpretation must fail since the mere prepayment of the mortgage does not eliminate the injury to Plaintiff." Pl. Opp. 6. We make no assumption, however, concerning the specific events that the Court contemplated in referring to "events that have not occurred and . . . are unlikely to occur." We rely, rather, upon the fact that the Riverfront and Sunrise River loans were in fact paid. Nor have we argued that this payment eliminated the injury to Franconia. Rather, we rely upon the incontrovertible fact that this payment eliminated any injury that would have resulted from a continued prevention of prepayment for the remaining term of these loans. That continued prevention, which was assumed in Franconia's damages calculations, did not occur.

[3] We do not address the merits of Franconia's claim that the foreclosure proceedings were not fully in accord with the applicable regulations. To litigate that claim here would be to let the tail wag the dog.

of the Government's liens on the projects. Nor does Franconia cite any authority casting doubt upon "whether the Agency action will stand." Franconia cites the subjective doubts expressed by its general partner and managing agent in a declaration filed in June 2004, consisting primarily of a fear that tenants might sue to challege the agency's action. Franconia does not claim that any such suit has in fact been brought, nor does it suggest how such a suit could result in forcing Franconia to take back the loan it paid or in the revival of a released mortgage upon a fully paid loan.

Franconia asserts that "[c]ase law is replete with examples of affordable housing owners who improperly have been permitted to prepay their mortgage loans, only to be forced back into their respective affordable housing programs after lengthy litigation brought by such entities as tenant-rights organizations." Pl. Opp. 11, citing Alder Terrace v. United States, 161 F.3d 1372 (Fed. Cir. 1998). Alder Terrace, however, is the only example Franconia cites, and it is inapposite. The tenant suit mentioned in that case[4] did not involve payment of the loan in question and release of the mortgage; it involved the nullification of the Depatment of Housing and Urban Development's termination of mortgage insurance. That nullification had the effect of restoring the restrictions contained in the applicable regulatory agreement. The underlying loan, however, had not been prepaid at all. See id. at 1376, citing Neufeld v. HUD, No. CY-90-3057-FVS (E.D.Wa. Oct. 6, 1992).

Franconia also argues that tenants can enforce the section 515 regulatory restrictions as third party beneficiaries of the contracts between Franconia and the Government. However, the

[4] Alder Terrace was a project owner's breach of contract and taking suit against the Government, not a tenant suit. However, the opinion makes reference to an earlier unpublished district court decision concerning a tentant suit.

central premise of Franconia's breach of contract claims in this case – and of the judgment in Franconia's favor – is that the contract in question granted Franconia an unfettered right to prepay its loans, and that the contract's affordability restrictions apply only as long as an unpaid loan balance remains outstanding.[5] And, although the parties have disagreed concerning the nature of the prepayment right, no party has ever argued that the contract prohibited prepayment or imposed affordability restrictions extending beyond prepayment. Thus, even assuming that tenants can sue to enforce the contract as third party beneficiaries, Franconia has identified no relevant contract rights that tenants could sue to enforce.

Even assuming, moreover, that there is a possible chain of events that could somehow lead to Riverfront and Sunrise River again becoming subject to section 515 program restrictions, Franconia is not entitled to recover damages based upon the assumption that such a chain of events will occur. Although Franconia argues that that "'the wrongdoer [should] bear the risk of the uncertainty which his own wrong has created,'" Pl. Opp. 17, quoting Bigelow v. RKO Radio Pictures, 327 U.S. 251, 264 (1946), neither Bigelow nor any other authority cited by Franconia supports the notion that a plaintiff is entitled to recover damages for all conceivable future harm, no matter how unlikely and remote. Rather, as this Court stated in its opinion in this case, to recover damages "[p]laintiffs must first show that defendant's breach produced damage 'inevitably and naturally, not possibly or probably.' " 61 Fed.Cl. at 747, quoting Ramsey v. United States, 121 Ct. Cl. 426, 101 F. Supp. 353, 357 (1951). As this Court further observed:

[5] Franconia assumed the section 515 requirements and restrictions through the Regulatory Covenants section of the loan agreements for the projects in question. Each agreement provided that the regulatory covenants are apply "[s]o long as the loan obligations remain unsatisfied . . . ." PX 3/4, 44/5.

> To recover lost profits for breach of contract, the plaintiff must establish by a preponderance of the evidence that: "(1) the loss was the proximate result of the breach; (2) the loss of profits caused by the breach was within the contemplation of the parties because the loss was foreseeable or because the defaulting party had knowledge of special circumstances at the time of contracting; and (3) a sufficient basis exists for estimating the amount of lost profits with reasonable certainty."

61 Fed.Cl. at 747, quoting Energy Capital Corp. v. United States, 302 F.3d 1314, 1325 (Fed. Cir. 2002).

The Court's award of lost profits in this case was based upon the Court's finding "that, in most instances, plaintiffs' lost profits were the direct result of defendant's failure to permit them to exercise their prepayment option, preventing them from converting their properties to commercial use." 61 Fed.Cl. at 747. This reasoning supported an award to Franconia for, at most, the period of time during which Franconia was prevented from exercising its prepayment option and converting their properties to commercial use. After Franconia prepaid its loans in 2003, however, the Government was no longer preventing Franconia from doing anything. Franconia does not appear to contend otherwise, nor does it assert that it has not in fact converted Riverfront and Sunrise River to commercial use, or that the rents it has charged at these projects since the loans were paid have been restricted by the Government.[6] Franconia speculates that someone may do something in the future to restore these projects to the restrictions of the section 515 program, thus causing additional losses. But, this prospect is at best a remote possibility, which – even if it were to be realized – could not be characterized as having been proved by "a

[6] Franconia does claim that "[a]s a result of the foreclosure proceedings, Plaintiff is still unable to obtain market rents for the properties." Pl. Opp. 16. We do not know whether or not Franconia can obtain market rents at these properties, and, if it cannot, whether this is a result of the foreclosure proceedings. It is clear, however, that any such inability is not the result of any refusal by the Government to accept prepayment.

preponderance of the evidence," as being "the proximate result of the breach," or as resulting "inevitably and naturally" from the breach.[7]

Finally, the fact that Franconia's loans have been paid should not, as Franconia urges, be disregarded for equitable reasons relating to the circumstances of the foreclosure proceedings that led to the payment. First, there is simply no equity in ignoring material and incontrovertible facts. Second, the equitable concerns raised by Franconia are illusory. For instance, Franconia notes "the contentious history between Agency representatives and Plaintiff," Pl. Opp. 15, speculates "that the Agency deliberately permitted it to pay said loans in an attempt to jeopardize its right to recover compensatory damages in this action," id., and argues that this is a reason not to consider the fact that the loans were paid. Yet, the Government had no greater interest in reducing or avoiding damages with respect to Franconia than with respect to any other plaintiff in this litigation. This fact, coupled with the "contentious history" to which Franconia alludes, indicates that the foreclosure proceedings were based upon circumstances specific to Franconia, and not upon litigation in which Franconia is only one of numerous plaintiffs. And, in any event, it is both perverse and logically circular to attribute sinister motives to actions terminating the retrictions to which damages are attributed, and to argue that, precisely because the termination may have been aimed at decreasing the damages that would otherwise be incurred, the termination should be disregarded in calculating damages.

---

[7] Even more remote from the breach are the vague allegations of harm that Franconia attributes to the foreclosure proceedings themselves. Franconia itself insists that these proceedings were not direct consequences of or directly related to the breach. Pl. Opp. 11, 12. Franconia cannot at the same time argue that the alleged harm from these proceedings was an inevitable and natural result of the breach. If there was a flaw in these proceedings and if this caused harm to Franconia, the remedy is not breach of contract damages in this action.

III. The Request for Reconsideration Does Not Depend upon a Mitigaton Defense

Franconia offers several variations upon the theme that the defense of mitigation is not available as a basis for reducing Franconia's damages. See, e.g., Pl. Opp. 11 ("C. The 2003 Foreclosure Proceedings Are Not Direct Consequences Of The Government's 1994 Breach, And Thus Cannot Be Considered As Mitigation"); 14 ("D. The Government's Failure To Assert An Affirmative Defense Until After Trial, Even Though It Had Notice Of The Foreclosure Proceedings, Precludes Their Consideration As A Mitigating Factor"). These arguments miss the point. As we demonstrated in our moving brief, the basis for decreasing the damages awarded to Franconia is not mitigation. Our argument is not that post trial events produced gains that should offset losses incurred by Franconia, but that post trial events prevented the occurrence of post trial losses predicted in Franconia's damages calculations, and that the award of damages should be limited to the losses actually incurred. See Def. Mot. 6-7. To do otherwise is to permit a windfall recovery.

Franconia fails to address this point, except to state: "Plaintiff's source of the damages was not eliminated upon prepayment within the foreclosure context. Damages began in August 1994. Foreclosing upon Plaintiff's properties nearly ten years after the Government's denial of prepayment by no means comes close to curing continuing damages that commenced in 1994." Pl. Opp. 13 (footnote omitted). Our request for reconsideration, however, does not pertain to the damages awarded for the period from 1994 to 2003; it pertains only to the damages awarded for the period subsequent to the payment of the loans in 2003. And, despite the fact that this payment resulted from acceleration of the loans in foreclosure proceedings, the payment incontrovertibly did prevent continuing damages of the kind to which the Court held Franconia to be entitled: "lost

profits [that] were the direct result of defendant's failure to permit [plaintiffs] to exercise their prepayment option, preventing them from converting their properties to commercial use." 61 Fed. Cl. at 747. There is no longer an outstanding loan balance or mortgage under the section 515 program with respect to Riverfront and Sunrise River, and no section 515 program restrictions preventing Franconia from converting their properties to commercial use.

CONCLUSION

For the foregoing reasons, and for the reasons stated in our moving brief, the judgment and the underlying decision should be reconsidered and amended to eliminate Franconia's damages for all years subsequent to 2003.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

**s/David M. Cohen**
DAVID M. COHEN
Director

**Filed electronically**

**s/Shalom Brilliant**
SHALOM BRILLIANT
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Telephone: (202) 305-7561
Facsimile: (202) 305-7643

Attorneys for Defendant

March 18, 2005