# In the United States Court of Federal Claims

Nos. 97-381C & 97-3812C through 97-38129C

(Filed: April 21, 2005 )

---

| | | |
|---|---|---|
| FRANCONIA ASSOCIATES, ET AL, | | * |
| | | * |
| | Plaintiffs, | * |
| | | * |
| v. | | * |
| | | * |
| THE UNITED STATES, | | * |
| | | * |
| | Defendant. | * |
| | | * |

---

**ORDER**

---

**ALLEGRA, Judge:**

On August 30, 2004, this court issued a lengthy opinion in this matter, *Franconia v. United States*, 61 Fed. Cl. 718 (2004). It withheld entry of judgments to allow the parties "to submit computations pursuant to the court's determination of the issues, showing the correct amount of the judgments to be entered in the particular cases." 61 Fed. Cl. at 771. The parties subsequently submitted computations which led the court, on December 30, 2004, to enter 37 judgments in this matter. On January 3, 2005, defendant filed a motion to reconsider and amend one of those judgments under RCFC 59(d) – in fact, this motion appears to be under RFC 59(a) and is considered as such herein. In particular, defendant seeks reconsideration of the judgment entered in favor of plaintiff Franconia Associates as being "contrary to undisputed evidence offered by the Government subsequent to the trial but prior to the issuance of the Court's decision." On March 9, 2005, pursuant to an order issued under RCFC 59(b), plaintiff filed its opposition to defendant's motion. On March 18, 2005, defendant submitted a reply brief, which, though not authorized by the rules, the court filed by its leave.

RCFC 59(a)(1) permits, on motion by a party, reconsideration of any issue "for any of the reasons established by the rules of common law or equity applicable as between private parties in the courts of the United States." On reconsideration of an issue, "the court may . . . amend findings of fact and conclusions of law or make new findings and conclusions, and direct the entry of a new judgment." RCFC 59(a)(1). The "decision whether to grant reconsideration lies largely within the discretion of the [trial] court." *Yuba Natural Res., Inc. v. United States*, 904 F.2d 1577, 1583 (Fed. Cir. 1990). A motion for reconsideration should be considered with

"exceptional care." *Fru-Con Constr. Corp. v. United States*, 44 Fed. Cl. 298, 300 (1999) (citations and quotations omitted). This court has stated that such a motion "'must be based on a manifest error of law or mistake of fact and must show either: (1) that an intervening change in the controlling law has occurred; (2) that previously unavailable evidence is now available; or (3) that the motion is necessary to prevent manifest injustice.'" *Griswold v. United States*, 61 Fed. Cl. 458, 460-61 (2004) (quoting *First Fed. Lincoln Bank v. United States*, 60 Fed. Cl. 501, 502 (2004); *see also Keeton Corr., Inc. v. United States*, 60 Fed. Cl. 251, 253 (2004) (same); *Bannum, Inc. v. United States*, 59 Fed. Cl. 241, 243 (2003) (same).

In its August 30, 2004, opinion, this court held that the enactment of the Emergency Low Income Housing Preservation Act of 1987 (ELIHPA), Pub. L. No. 100-242, tit. II, 101 Stat. 1877 (1988), as well as the Housing and Community Development Act of 1992, Pub. L. No. 102-550, 106 Stat. 3672 (1992), placed permanent restrictions upon prepayment of certain Farmers' Home Administration (FmHA) loans and constituted a repudiation of the loan agreements, which contained unrestricted prepayment provisions. 61 Fed. Cl. at 730-33. The court further held that this repudiation ripened into a breach of contract either at the time a request for prepayment was made and not honored, or, at the latest, when suit was brought by the property owners. *Id*. at 733. In addition, it held that the so-called unmistakability doctrine did not shield defendant from liability for breach of contract, *id*. at 733-37, and it rejected, in various shades, defendant's claim that the incentives provided in ELIHPA significantly mitigated any damages owed to the plaintiffs, *id*. at 740-46. Nonetheless, for four properties, the court found that the lost profits sought by the respective plaintiffs were not proximately caused by this breach. *Id*. at 748. As to the remaining thirty-seven properties, including those owned by the plaintiff here, the court found that the lost profits sought on account of the breaches were proximately caused by the breach, were foreseeable and could be calculated with reasonable certainty. *Id*. at 754-68. As to these properties, however, the court made various adjustments to the formulae employed by plaintiff to calculate the damages owed. *Id*. at 754-68.

In its motion for reconsideration, defendant asserts that this court failed properly to consider the import of evidence admitted after trial, but before the opinion and judgments were entered, *to wit*, documents establishing that plaintiff had paid off the mortgages on two properties – Riverfront and Sunrise River – and that the properties had been terminated from the section 515 program. Defendant asseverates that this evidence contradicts "one of the assumptions made in plaintiff's [damages] analyses for the two properties" – that "these properties would remain in the section 515 program and continue to be subject to the restrictions contained in the applicable loan documents for the remainder of the applicable loan term." Based on the evidence supplied, defendant contends that the restrictions on plaintiff's properties terminated no later than July 25, 2003, in the case of Sunrise River, and October 20, 2003, in the case of Riverfront, eliminating damages subsequent to these dates. For its part, plaintiff does not dispute that its FmHA loans were prepaid in 2003 and that the two properties involved were terminated from the section 515 program in that year. Instead, it remonstrates that there remains a significant potential that a lawsuit could be filed by the tenants at the subject property seeking to overturn plaintiff's withdrawal from the program.

In its prior opinion, this court discounted, albeit glancingly, the evidence of plaintiff's withdrawal from the program, stating, *inter alia*, that "cases adopting the discounted cash flow method of calculating lost profits generally ignore events subsequent to the breach," 61 Fed. Cl. at 756, and noting that "[t]his rule particularly holds true where the event that occurs is unrelated to the wrong causing the injury," *id.* at 756 n. 67. However, as applied to the terminations, this analysis is heavily in tension with the court's treatment of the damages associated with certain other plaintiffs who, prior to trial, had elected one or more of the incentives available under ELIHPA. As to those plaintiffs, the court concluded that the damage calculation had to account for the economic impact, if any, of the incentives, reasoning:

> But, what of the plaintiffs who actually received incentives in exchange for extending their housing agreements? As noted, defendant has not argued that these actions amounted to a rescission; nor does this court view the fact that a few individuals elected these incentives as indicating that the plaintiffs who did not were unreasonable. Nonetheless, the net value, if any, attributable to these incentives must be subtracted from the damages owed to these individuals to the extent it lessens the amount of the actual loss here. *See LaSalle Tallman Bank, FSB v. United States*, 317 F.3d 1363, 1372 (Fed. Cir. 2003) (damages must be reduced by loss avoided as result of substitute transaction); *United States v. City of Twin Falls*, 806 F.2d 862, 873-74 (9th Cir. 1986) (contract damages to non-breaching party are properly offset by gains after breach because contract damages seek only to "fairly compensate the injured party for his loss"). This result derives not from the rule of ***avoidable*** consequences, mind you, but rather of consequences ***avoided*** – as the Restatement observed, "[i]f [the injured party] arranges a substitute transaction that he would not have been expected to do under the rules on avoidability . . . , his damages are similarly limited by the loss so avoided." Restatement, § 347, cmt. e; *see also* 3 Dan B. Dobbs, Law of Remedies: Damages, Equity, Restitution (hereinafter "Dobbs") § 12.62(2) (2d ed. 1993).

61 Fed. Cl. 745-46 (footnote omitted; emphasis in original). Defendant asserts that the situation here is the same – in other words, that plaintiff should not obtain damages for "consequences avoided."

Defendant is correct. While the court adheres fully to its earlier views regarding mitigation, and the inadequacy under that doctrine of the incentives offered under ELIHPA, it now finds, consistent with the analysis in the above-quoted passage, that adjustments must be made in the calculation of damages for the two properties at issue to reflect the events that actually occurred prior to the entry of the opinion and judgment, which events plainly prevented certain damages from proximately occurring. Specifically, it appears that the terminus for the damage calculations as to the two properties at issue should be adjusted to correspond to the respective dates the properties were terminated from the section 515 program. This adjustment is consistent with the basic theory of liability adopted by this court – that the property owners

should be compensated for the period of time during which they were prevented from exercising their prepayment options. Simply put, that period ended for the Riverfront and Sunrise River properties when they were terminated from the program in 2003.

Plaintiff has neither cited any statute or regulation nor provided any evidence (beyond the subjective doubts of several individuals involved with the properties) suggesting that there is any real likelihood that a tenant suit will be brought that would reverse the terminations. Indeed, given that the terminations occurred more than a year and a half ago, it is reasonable to assume, particularly in the absence of any contrary evidence, that had the tenants intended to file such a suit or suits, they would have done so by now. Nor has plaintiff requested an opportunity to provide further evidence on these points via an evidentiary hearing, suggesting that whatever evidence the court has is all there is. Accordingly, the court sees no reason it should not give full evidentiary effect to the terminations.

In the court's view, the unusual circumstances underlying defendant's motion fully meet the requirements for reconsideration under RCFC 59(a)(1). To be clear, in the court's view, its prior ruling with respect to these two properties was based upon a manifest error of law, which, if not corrected, would result in manifest injustice in the form of windfall damages. Nonetheless, the court must stress the limits of this ruling: The foregoing analysis should not be read as an open invitation to seek to have the court consider events that occurred subsequent to the entry of judgment here – no matter who they benefit. As noted previously, the discounted cash flow method used for calculating damages here is necessarily a projection, involving many variables – while the court, in the circumstances presented, must consider facts that occurred prior to the entry of judgment, that does not mean the cash flow method should be recalibrated constantly to take into account how the events captured in the various variables therein actually occurred. If nothing else, such an approach would risk the finality of any judgment rendered herein and leave the property owners (and the United States) potentially in a perpetual state of litigation. Such an approach is not envisioned under RCFC 59(a)(1), RCFC 60(b) or any other rule.

To reflect the foregoing, on or before May 16, 2005, the parties shall file a status report proposing the amount of the judgment to be entered in the *Franconia* case, No. 97-381. Should the parties disagree as to that amount, they shall set forth in the joint status report their respective positions (including a specific dollar value). As before, agreeing to the entry of such judgment neither signifies agreement with this court's findings and conclusions nor waives any arguments or rights the parties might otherwise have, nor, in particular, impacts upon any party's right to an appeal. For this purpose, it should be assumed that the judgment would be entered on May 27, 2005. Also, as before, this process shall not be employed to reargue or seek reconsideration of any of the points resolved by this court's findings and conclusions, as modified by the foregoing ruling.

**IT IS SO ORDERED**.

s/ Francis M. Allegra
Judge